1  Gregory P. Goonan (Cal. Bar #119821)
   **The Affinity Law Group APC**
2  600 West Broadway, Suite 400
   San Diego, CA 92101
3  Tel: 619-702-4335
   Fax: 619-243-0088
4
   Attorneys for Plaintiff
5  Marketing Information Masters, Inc.

6

7

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 Marketing Information Masters, Inc., a       Case No. 06 CV 1682 JAH (JMA)
   California corporation,
13
                   Plaintiff,
14                                              **PLAINTIFF'S MEMORANDUM OF**
                                                **POINTS AND AUTHORITIES IN**
15        vs.                                   **OPPOSITION TO MOTION TO DISMISS**
                                                **BY DEFENDANT BOARD OF TRUSTEES**
16 The Board of Trustees of the California State **AND JOINDER IN MOTION TO DISMISS**
   University System, a public entity acting    **BY DEFENDANT RAUCH**
17 through its subdivision San Diego State
   University; and Robert A. Rauch, an
18 individual,                                   Date: November 16, 2006
                                                Time: 3:00 p.m.
19                 Defendants.                   Court: 11 (Hon. John A. Houston)

20

21

22

23

24

25

26

27

28
   _____
   *PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'*
   *MOTION TO DISMISS*
   - 1 -

Dockets.Justia.com

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . 6

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.   SDSU's FRCP 12(b)(1) Motion Should Be Denied
        Because MIMI Has Complied With The
        Copyright Act Jurisdiction Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.   SDSU Is Not Immune From Being Sued For
        Copyright Infringement In This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1. Congress Expressed in "Unmistakably Clear"
            Language that the CRCA Abrogated State Immunity
            Under the Eleventh Amendment for Copyright
            Infringement Lawsuits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2. The CRCA is a Constitutional Exercise of
            Congress' Authority Pursuant to the Enforcement
            Clause of the Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                a. The CRCA was enacted in response
                to substantial evidence of copyright
                infringement by the States and
                their instrumentalities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                b. Congress determined there were no
                available state remedies for copyright
                infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                c. Congress tailored the remedy to be
                provided by the CRCA to the magnitude
                of the harm to be prevented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            3. The Supreme Court Decision in *Florida Prepaid*
            Does Not Support a Finding that the CRCA
            is Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.     Rauch Is Not Entitled To Any Relief Pursuant To His Supposed "Joinder" . . . . . 20

         1. Rauch Does Not Enjoy Any Immunity Here  . . . . . . . . . . . . . . . . . . . . . . . . . . 21

         2. MIMI's State Law Claims Against Rauch Are Not Preempted . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**

Cases:

*American Tobacco Co. v. Werckmeister*, 207 U.S. 284 (1907) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Apple Barrel Products, Inc. v. Beard*, 730 F.2d 384 (5th Cir. 1984) . . . . . .. . . . . . . . . . . . . . . 10

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brush Creek Media, Inc. v. Boujakian*, 2002 WL 1906620 (N.D. Cal. 2002) . . . . . . . . . . . . . 11

*Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Boerne v. Flores*, 521 U.S. 507 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16

*Dielsi v. Falk*, 916 F. Supp. 985 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 13, 20

*Florida Prepaid Postsecondary Educational Expense Bd. v. College Savings Bank*, 527 U.S. 627 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Foraste v. Brown University*, 248 F. Supp. 2d 71 (D. R.I. 2003) . . . . . . . . . . . . . . . . . . . . I0, 11

*Frankel v. Stein & Day, Inc.*, 470 F. Supp. 209 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . 11

*Haan Crafts Corp. v. Craft Masters, Inc.*, 683 F. Supp. 1234 (N.D. Ind. 1988) . . . . . . . . . . . . 11

*Havens v. Time Warner, Inc.*, 896 F. Supp 141 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . 11

*Iconbazaar, LLC v. America Online, Inc.*, 308 F. Supp. 2d 630 (M.D. N. Car. 2004) . . . . . . . . 10

*International Kitchen Exhaust Cleaning Ass'n v. Power Washers of North America*, 81 F. Supp. 2d 70 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1308 (N.D. Ill. 1990) . . . . . . . . . . . . . . 11

*Katzenbach v. Morgan*, 384 U.S. 641 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990) . . . . . . . . . . . . . 11

*New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

---

*New Star Lasers, Inc. v. Regents of the University of California*,
63 F. Supp. 2d 1240 (E.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Parks School of Business, Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . 21

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004) . . . . . . . . 11

*Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . .21

*Roth v. Pritikin*, 710 F.2d 934 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ryan v. Carl Corp.*, 1998 WL 320817 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Well-Made Toy Manufacturing Corp. v. Goffa International Corp.*,
210 F. Supp. 2d 147 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal 2003) . . . . . . . . . . . . . . . . . . 12


Constitution, Statutes and Rules:

U.S. CONST. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. CONST. amend. XIV, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

17 U.S.C. § 301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17 U.S.C. § 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17 U.S.C. § 409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17 U.S.C. § 410(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

17 U.S.C. § 411(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

17 U.S.C. § 501(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

17 U.S.C. § 511(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Fed.R.Civ.P. 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Other Authorities:

2 *Nimmer on Copyright*, § 7.16[B][1][a]  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Defendant Board of Trustees of the California State University System, acting through and representing its subdivision San Diego State University (hereinafter "SDSU") has filed a motion to dismiss the complaint of plaintiff Marketing Information Masters, Inc. ("MIMI") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The individual defendant Robert A Rauch ("Rauch") has joined SDSU's motion. MIMI hereby respectfully submits this memorandum of points and authorities in combined opposition to SDSU's motion and Rauch's joinder in such motion.

I.    PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

This is an action for copyright infringement, conversion, misappropriation and unfair business practices under federal and California law. As alleged in MIMI's complaint in this matter, for a number of years MIMI and its owner Michael Casinelli performed economic impact studies for the San Diego Holiday Bowl committee and provided the Holiday Bowl with a written report setting forth and discussing MIMI's analysis and conclusions about the Holiday Bowl's economic impact on the San Diego region. The written report at issue in this case is MIMI's 2003 economic impact report (the "2003 Report"), which is a work registered under and protected by the copyright laws of the United States.

As alleged in MIMI's complaint, at least for the 2004 Holiday Bowl (and possibly for subsequent games), the Holiday Bowl committee retained the Center for Hospitality and Tourism Research at SDSU (the "SDSU Center for Hospitality and Tourism Research") to conduct the study of the economic impact of the 2004 game. Defendant Rauch was the individual with primary responsibility for the project.

Unfortunately, Rauch and SDSU did not develop their own methodology, practices or analysis framework to conduct the 2004 study, analyze the data obtained therefrom, or reach conclusions from such data as they were required to do under the applicable laws. Instead, as explained in MIMI's complaint, Rauch and SDSU obtained a copy of the 2003 Report and then

simply (and illegally) misappropriated MIMI's ideas, methodologies, practices and analytical framework to conduct the 2004 study. To further compound their wrongdoing, Rauch and SDSU blatantly and intentionally copied and plagiarized the copyrighted 2003 Report to generate a written report for the Holiday Bowl regarding the 2004 study.

The actions of Rauch and SDSU were intentional copyright infringement in the extreme, and also constituted the conversion and misappropriation of MIMI's property not covered by the copyright on the 2003 Report.[1] Indeed, as alleged in MIMI's complaint, MIMI is informed and believes that SDSU conducted an internal investigation about this matter and itself concluded that Rauch was guilty of plagiarism and copyright infringement.

Notwithstanding the overwhelming evidence of its guilt – including the results of its own internal investigation – SDSU now asks the Court to dismiss MIMI's complaint against it in its entirety. As will be discussed herein, however, none of the arguments that SDSU makes has any merit:

1. SDSU first seeks dismissal under FRCP 12(b)(1) on the ground that the Court supposedly does not have subject matter jurisdiction under 17 U.S.C. § 411(a) because MIMI allegedly commenced this action before obtaining a certificate of copyright registration. Such argument is without merit. As alleged in MIMI's complaint, MIMI complied with the requirements of Section 411(a) as that statute has been interpreted by the overwhelming majority of federal courts because MIMI complied with all requirements for registration prior to filing suit and has in fact obtained a copyright registration for the 2003 Report whose effective date predates the filing of this action. Consequently, this Court has subject matter jurisdiction in this action and

---

[1]  To make the wrongdoing of Rauch and SDSU even worse, the data and statistics presented by Rauch and the SDSU Center for Hospitality and Tourism Research to the Holiday Bowl were false, distorted and over-inflated, and did not accurately reflect the true economic impact of the 2004 Holiday Bowl on the San Diego community. Such falsification and distortion of the economic data was caused in large part by the fact that Rauch and the SDSU Center for Hospitality and Tourism Research simply copied MIMI's 2003 Economic Impact Report rather than independently performing a legitimate economic impact study and then independently writing a report about such study.  [Complaint ¶ 11.]

1    SDSU's motion to dismiss pursuant to FRCP 12(b)(1) should be denied.

2         2.    SDSU also seeks dismissal pursuant to FRCP 12(b)(6) because SDSU claims it is

3    entitled to sovereign immunity from suits for copyright infringement in federal court.[2]  The

4    problem for SDSU in making such argument, however, is that Section 501(a) of the Copyright

5    Act, 17 U.S.C. § 501(a), expressly provides that states and their instrumentalities (like SDSU) can

6    be sued for copyright infringement just like any other person or entity.  To make things even more

7    clear, Section 511(a) of the Copyright Act, 17 U.S.C. § 501(a), expressly provides that the States

8    and their instrumentalities (like SDSU) do not enjoy sovereign immunity from copyright

9    infringement lawsuits.

10        So, in seeking a dismissal pursuant to FRCP 12(b)(6) on grounds of alleged sovereign

11   immunity, SDSU in effect asks this Court to override the express and clearly stated intent of

12   Congress and find unconstitutional the two express statutes passed by Congress to make crystal

13   clear that bodies like SDSU could in fact be sued for copyright infringement.  As SDSU readily

14   admits, the Ninth Circuit has never found that States enjoy sovereign immunity from copyright

15   infringement lawsuits.  Consequently, in making such argument, SDSU must rely on a Fifth

16   Circuit case which, as we will explain below, was wrongly decided and should not be followed by

17   this Court.

18        Instead, as we will discuss below, Congress validly exercised its powers under the

19   Enforcement Clause of the Fourteenth Amendment in enacting Sections 501(a) and 511 of the

20   Copyright Act.[3]  Accordingly, given the express language of Sections 501(a) and 511 of the

---

2    As this Court undoubtedly knows, the federal courts have exclusive jurisdiction over copyright
infringement suits so any and all such suits must be brought in federal court.  So, in raising its
claim of supposed sovereign immunity, SDSU essentially takes the position that it can engage in
copyright infringement with impunity, yet never be sued for such infringement because it
allegedly enjoys sovereign immunity.  Fortunately for MIMI and other copyright owners,
Congress has found to the contrary and passed legislation which expressly allows copyright
infringement lawsuits against states and their instrumentalities like SDSU.

3    In its moving papers, SDSU cites the Supreme Court decision in *Seminole Tribe of Florida v.*
*Florida*, 517 U.S. 44 (1995) and argues that Congress may not abrogate the States' sovereign
immunity pursuant to Congress' Article I powers.  While that may be correct, such argument
completely misses the point.  The Court does not even need to engage in the Article I analysis here
since, as will be shown, Sections 501(a) and 511 are valid under Congress' authority pursuant to
the Fourteenth Amendment (which SDSU does not even address in its moving papers).

Copyright Act, SDSU does not enjoy any sovereign immunity which precludes this lawsuit, and its request for dismissal under FRCP 12(b)(6) based on such non-existent immunity should be denied.

3. SDSU also seeks dismissal of MIMI's state law claims against it on the ground that the Court cannot exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims. Prior to the hearing on the present motion, MIMI will file an amended complaint withdrawing such claims against SDSU, and will refile such claims in state court.

4. Rauch "joins" in SDSU's motion in its entirety on the ground that he was an employee of SDSU and thus allegedly enjoys the same defenses as SDSU. That is not correct. In the first place, MIMI's complaint indicates that MIMI does not know if Rauch was an employee or independent contractor. [Complaint ¶ 20.] Moreover, MIMI has sued Rauch both in his individual capacity (making this lawsuit a so-called "personal capacity suit") as well as in his potential role as a SDSU employee. Because this is a 12(b) motion, MIMI's allegations must be accepted as true and Rauch cannot introduce extrinsic evidence n support of the motion. Because the Complaint does not establish the essential premise of Rauch's joinder, that he was an employee of SDSU, Rauch cannot obtain any relief by his joinder.

In any event, as will be shown below, even if SDSU enjoys sovereign immunity which precludes this suit, such immunity does not shield Rauch from liability for committing copyright infringement himself or for inducing and aiding and abetting SDSU to commit copyright infringement.[4] Consequently, Rauch is not entitled to any relief for this additional reason.

---

[4] Of course, even if SDSU is immune (which it is not), that does not mean SDSU did not infringe MIMI's copyright. All it means is that SDSU cannot be sued in federal court for such infringement.

## II.    ARGUMENT

### A.    SDSU's FRCP 12(b)(1) Motion Should Be Denied Because MIMI Has Complied With The Copyright Act Jurisdiction Requirement

SDSU first argues that MIMI's copyright infringement claim should be dismissed because the Court supposedly lacks subject matter jurisdiction over such claim. In making such argument, SDSU relies on Section 411(a) of the Copyright Act, 17 U.S.C. § 411(a), which provides that a copyright infringement action shall not be instituted until "registration of the copyright claim has been made." Citing two decisions from the Northern District of California that, with all respect, have been roundly criticized, are not consistent with the weight of federal authority and do not even reflect the current state of the law in the Northern District, SDSU seeks dismissal under FRCP 12(b)(1). SDSU is not entitled to the relief it seeks.

There is no dispute that Section 411(a) requires federal copyright registration as a prerequisite to an infringement action. The issue, however, is what does a copyright plaintiff need to do before filing suit in order to comply with Section 411(a).

Under the Copyright Act, a party registers a copyright by submitting an application, copies of the work to be registered and the required fee to the Copyright Office. [17 U.S.C. §§ 408-410.] The effective date of a copyright registration is the date when the required materials are received by the Copyright Office, even though the formal registration certificate may not issue until a later date. [17 U.S.C. § 410(d).]

Contrary to the argument made by SDSU, the overwhelming weight of federal authority provides that a copyright plaintiff only needs to submit the required materials to the Copyright Office prior to filing suit, even though the actual formal registration certificate is not received until after suit is filed. [*See*, *e.g.*, *Apple Barrel Products, Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir. 1984); *Iconbazaar, LLC v. America Online, Inc.*, 308 F. Supp. 2d 630 (M.D. N. Car. 2004); *Foraste v. Brown University*, 248 F. Supp. 2d 71, 76-78 (D. R.I. 2003); *Well-Made Toy Manufacturing Corp. v. Goffa International Corp.*, 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002); *International Kitchen Exhaust Cleaning Ass'n v. Power Washers of North America*, 81 F. Supp. 2d 70 (D.D.C. 2000); *Dielsi v. Falk*, 916 F. Supp. 985, 994 n.6 (C.D. Cal. 1996); *Havens v. Time*

1  _Warner, Inc._, 896 F. Supp 141, 142-43 (S.D.N.Y. 1995).]  The rationale for such cases is that

2  copyright registration occurs on the day the Copyright Office receives all of the necessary

3  application materials, so a copyright plaintiff satisfies Section 411 by submitting such materials to

4  the Copyright Office.  [_See Foraste v. Brown University_, 248 F. Supp. 2d at 77.]

5       Indeed, Professor Nimmer, the leading copyright expert in the United States, endorses this

6  approach describing it as the "better point of view."  [_See_ 2 _Nimmer on Copyright_, §

7  7.16[B][1][a].]

8       Some courts are more strict in interpreting Section 411 to require an issued registration

9  certificate before an infringement suit is allowed to go forward.  But even the majority of those

10  courts consider the lack of an issued registration certificate to be a technical defect.  So, such

11  courts allow the copyright plaintiff to obtain the registration certificate during the pendency of the

12  infringement lawsuit, and then amend its complaint to allege issuance of the registration

13  certificate.  [_See, e.g., Positive Black Talk, Inc. v. Cash Money Records, Inc._, 394 F.3d 357 (5th

14  Cir. 2004); _M.G.B. Homes, Inc. v. Ameron Homes, Inc._, 903 F.2d 1486, 1488-89 (11th Cir. 1990);

15  _ISC-Bunker Ramo Corp. v. Altech, Inc._, 765 F. Supp. 1308, 1309 (N.D. Ill. 1990); _Haan Crafts_

16  _Corp. v. Craft Masters, Inc._, 683 F. Supp. 1234, 1242 (N.D. Ind. 1988); _Frankel v. Stein & Day,_

17  _Inc._, 470 F. Supp. 209, 212 (S.D.N.Y. 1979).]  As the Fifth Circuit recently explained in the

18  _Positive Black Talk_ case, "the notion that the [amended complaint] cures the technical defect,

19  notwithstanding the clear language of § 411, is consistent with the principle that technicalities

20  should not prevent litigants having their cases heard on the merits."  [_Positive Black Talk,_ 394

21  F.3d at 357.]

22       Obviously, as can be seen, the two Northern District cases cited by SDSU in support of its

23  motion are contrary to the overwhelming weight of federal authority that has considered the

24  requirements of Section 411.  It also is critical to note that the _Brush Creek_ case on which SDSU

25  places principal reliance only "reluctantly" granted dismissal and even itself seemed to agree that a

26  copyright plaintiff could amend its complaint to allege registration once a registration certificate is

27  issued.  [_See Brush Creek,_ 2002 WL 1906620 at *2-*4.]  In any event, both of SDSU's cases --

28  _Brush Creek_ and _Ryan_ have been criticized as being against the "wealth of authority" (_see Foraste_

*v. Brown University, supra*, 248 F. Supp. 2d at 77) and even are contrary to more recent

pronouncements on this issue from the Northern District. [*See Zito v. Steeplechase Films, Inc.*,

267 F. Supp. 2d 1022, 1025 (N.D. Cal 2003) (allowing copyright action to proceed where

registration certificate obtained during pendency of lawsuit and amended complaint filed).]

Here, MIMI's Complaint alleges that MIMI has complied with the requirements of Section

410 and Section 411 of the Copyright Act. [Complaint ¶ 16.] Such allegation is based on the fact

that MIMI submitted an application, filing fee and deposit copy with the Copyright Office on

August 10, 2006, over a week before filing this action (this action was filed on August 18, 2006).

[See MIMI Copyright Registration, Exhibit 1 hereto.][5] As the Court will see when it reviews

Exhibit 1, the Copyright Office issued a registration certificate for the 2003 Report which was

effective August 10, 2006, before this action was filed. MIMI will file an amended complaint

before the scheduled hearing on this motion to allege the existence of federal registration and the

issuance of the registration certificate submitted as Exhibit 1.

In summary, MIMI filed its registration application, filing fee and deposit materials for the

2003 Report before commencing this action. The Copyright Office has issued a copyright

registration for the 2003 Report which is effective August 10, 2006, before this lawsuit is filed.

MIMI will file an amended complaint to reflect registration. Consequently, in accordance with the

overwhelming weight of authority as discussed herein, MIMI submits that it has complied with

Section 411 of the Copyright Act. The Court consequently has subject matter jurisdiction in this

matter and SDSU's motion pursuant to FRCP 12(b)(1) should be denied.

B.     SDSU Is Not Immune From Being Sued For Copyright Infringement In This Court

SDSU also seeks dismissal pursuant to FRCP 12(b)(6) on the grounds that it is immune

pursuant to the Eleventh Amendment from being sued for copyright infringement in federal courts

like this one. Although SDSU barely devotes two pages in its moving brief to this topic, in reality

the question of state sovereign immunity against copyright infringement claims is a complicated

_____

[5]   Exhibit 1 to this opposition memorandum is a true and correct copy of the federal copyright
registration issued for the 2003 Report.

1  issue to which MIMI easily could devote 50 pages to brief.  Given the page limitations under the
2  Court's local rules, MIMI will explain to the Court as concisely as possible why SDSU in fact
3  does not enjoy the immunity it asserts.  If the Court believes that it requires more detailed briefing,
4  MIMI stands ready upon notice from the Court to submit briefing that more extensively deals with
5  the issue of state immunity from copyright infringement lawsuits.

6       There can be no dispute that, as a general proposition of law, States and their
7  instrumentalities are immune from suit in federal courts unless there has been consent to suit.  But
8  such immunity is not absolute.  On the contrary, the law is well-settled that Congress has the
9  authority to abrogate state sovereign immunity by passing appropriate legislation so long as
10  Congress satisfies two requirements.  First, Congress must express in "unmistakably clear"
11  language in the language of the legislation itself its intention to abrogate the state's immunity.  In
12  addition, Congress must act pursuant to a constitutional grant of power authorizing it to enact the
13  abrogating statute.  [*See*, *e.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *City of Boerne v. Flores*,
14  521 U.S. 507, 519-20 (1997); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1995).]

15       In 1985, the Supreme Court issued its decision in *Atascadero State Hospital v. Scanlon*,
16  473 U.S. 234 (1985), by which the Supreme Court appeared to expand the situations where States
17  could be found immune from suit in federal court.  In the 100 years before the *Atascadero*
18  decision, there were only four published federal decisions in copyright infringement cases
19  involving Eleventh Amendment immunity.  However, in the three years following *Atascadero*, six
20  such suits arose and were all dismissed by the district courts on Eleventh Amendment grounds.  In
21  all such cases, the defendant states asserted complete immunity from damages under the federal
22  copyright law, leaving the copyright holders without any remedy for the states' infringement given
23  exclusive federal jurisdiction for copyright infringement cases.  [*See* Copyright Remedy
24  Clarification Act and Copyright Office Report on Copyright Liability of States: Hearings on H.R.
25  1131 Before the Subcommittee on Courts, Intellectual Property and the Administration of Justice
26  of the Committee on the Judiciary (the "House Hearings"), 101st Congress 51 (1989).]

27       Given this untenable situation, Congress decided that remedial legislation was needed to
28  make crystal clear that the States were in fact subject to copyright infringement lawsuits in federal

1  courts and were not immune from such suits under the Eleventh Amendment. [*See* The Copyright

2  Clarification Act: Hearing on S. 497 Before the Subcommittee on Patents, Copyrights and

3  Trademarks of the Committee on the Judiciary (the "Senate Hearing"), 101st Congress 1, 10, 52,

4  54, 61.] The result was the passage in 1990 of the Copyright Remedy Clarification Act

5  (sometimes referred to as the "CRCA"), P.L. 101-553, 104 Stat.2749.

6  Critically for purposes of the present motion, the CRCA modified and amended the

7  language of Section 501(a) of the Copyright Act (17 U.S.C. § 501(a)), the statute that creates a

8  federal cause of action for copyright infringement, to make express and absolutely clear that the

9  States and their instrumentalities were subject to federal court copyright infringement lawsuits just

10 like all other persons and entities in the United States. Likewise, the CRCA added Section 511 to

11 the Copyright Act, which plainly and unambiguously provides that the States and their

12 instrumentalities are not immune from suit for copyright infringement under the Eleventh

13 Amendment.

14 The language of Sections 501(a) and 511 of the Copyright Act subjecting the States and

15 their instrumentalities like SDSU to copyright infringement lawsuits in federal court remains a

16 part of the statutory language of the Copyright Act as of the filing of this opposition. So, in order

17 to prevail on its FRCP 12(b)(6) motion, SDSU must convince this Court to override the will and

18 legislative authority of the United States Congress and declare unconstitutional the relevant

19 portions of Sections 501(a) and 511 of the Copyright Act.[6]

20 As discussed herein, there is no basis for this Court to override the considered judgment of

21 the legislative branch and declare the CRCA unconstitutional.[7] On the contrary, in enacting the

---

[6]  As SDSU correctly notes in its moving papers, the Ninth Circuit has not yet issued any opinion addressing the constitutionality of the CRCA. SDSU cites the decision in *New Star Lasers, Inc. v. Regents of the University of California*, 63 F. Supp. 2d 1240 (E.D. Cal. 1999) for the proposition that the States' sovereign immunity may not be abrogated under Article I. In the first place, the *New Star Lasers* decision is a district court decision, not a decision by the Ninth Circuit. In any event, it cannot be disputed after the Supreme Court decision in *Seminole Tribe* that Article I does not empower Congress to abrogate state sovereign immunity.

[7]  In *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000), the Fifth Circuit found that the CRCA was not a valid exercise of Congressional power. For the reasons discussed herein, MIMI submits that *Chavez* was wrongly decided and should not be followed by this Court.

CRCA, Congress complied in full with the requirements for the abrogation of the States'
immunity under the Eleventh Amendment as explained in the well-settled Supreme Court
precedents preceding the CRCA. Congress clearly and expressly abrogated whatever immunity
may have existed in favor of the States for copyright infringement lawsuits in federal court.
Congress also validly acted pursuant to its power under the Enforcement Clause of the Fourteenth
Amendment in enacting the CRCA.

Because passage of the CRCA was a valid and lawful exercise of Congress' legislative
authority, SDSU does not have any sovereign immunity from the present suit since such
immunity, to the extent it ever existed at all, has been plainly and expressly abrogated by Sections
501(a) and 511 of the Copyright Act. SDSU's request for dismissal pursuant to FRCP 12(b)(6) on
the grounds of sovereign immunity consequently must be denied

    1.    <u>Congress Expressed in "Unmistakably Clear" Language that the CRCA</u>
            <u>Abrogated State Immunity Under the Eleventh Amendment for Copyright</u>
            <u>Infringement Lawsuits.</u>

As discussed above, the first step in the inquiry whether legislation passed by Congress
abrogating state immunity is a constitutional exercise of Congressional power is Congress
expressed in "unmistakably clear" language in the legislation itself its intention to abrogate the
state's immunity. Here, there cannot be any question or legitimate dispute that the CRCA satisfies
this prong of the constitutional inquiry. Section 501(a) of the Copyright Act has long provided
that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer
of the copyright . . ." Section 501(b) provides the aggrieved copyright owner may commence a
copyright infringement lawsuit against such copyright infringer.

In enacting the CRCA, Congress amended Section 501(a) of the Copyright Act to
expressly provide that the term "anyone" in Section 501(a) includes any State and any
instrumentality of the State, to the same extent as any nongovernmental entity. Likewise, in
enacting the CRCA, Congress added Section 511 to the Copyright Act. To the extent that there
may have been any doubt whether Congress' amendment of Section 501(a) abrogated state
immunity, Section 511(a) expressly provides that the States and the instrumentalities of the State

"shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity" from a copyright infringement lawsuit in federal court.

Given the foregoing, the key inquiry in the analysis of the constitutionality of the CRCA is whether Congress acted pursuant to a constitutional grant of power authorizing it to enact the CRCA. As discussed below, Congress most certainly did so.

        2.     The CRCA is a Constitutional Exercise of Congress' Authority Pursuant to the Enforcement Clause of the Fourteenth Amendment

As SDSU correctly explains in its moving papers, the Supreme Court held in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1995) that Congress did not have the power pursuant to Article I of the Constitution. But such argument completely misses the point, because the CRCA was passed and survives constitutional scrutiny as a valid exercise of Congress' power under the Enforcement Clause of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 5.

It has long been settled that Congress has the power under the Enforcement Clause to abrogate state immunity. [*See*, *e.g. City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997) (Congress has "wide latitude" under Enforcement Clause to enact appropriate legislation to protect Fourteenth Amendment rights); *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966) (Enforcement Clause authorizes Congress to "exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment").]

Among the guarantees of the Fourteenth Amendment are that no State shall deprive any of its citizens of life, liberty or property without due process of law. The exclusive rights created by and protected under the Copyright Act are "property" rights. [*See American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 291 (1907); *Roth v. Pritikin*, 710 F.2d 934, 939 (2d Cir. 1983); *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). Consequently, Congress was empowered under the Enforcement Clause to enact the CRCA to protect copyright owners against the taking of their property, i.e., copyright infringement, by the States.

The Supreme Court decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997) is the critical

case to the Court's analysis of whether the CRCA was a valid exercise of Congressional power under the Enforcement Clause.  As the court explained in *Boerne*, Congress' power under the Enforcement Clause is "remedial" in nature, and Congress does not have the power under the Enforcement Clause to create new rights.  [521 U.S. at 519.]  But the court also recognized that "the line between measures that remedy . . . and measures that make a substantive change in the governing law is not easy to discern [so] Congress <u>must be given wide latitude</u> [under the Enforcement Clause]."  [*Id.* at 519-20 (emphasis added).]

The *Boerne* decision sets forth the analytical framework that federal courts must employ to determine if a statute is sustainable under the Enforcement Clause.  As the Supreme Court explained in *Boerne*, "there must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  [*Id.*]  To apply this somewhat amorphous principle, the Supreme Court explained that for Congress to invoke the Enforcement Clause, it must identify conduct transgressing the Fourteenth Amendment's protections, and must tailor its legislative scheme to remedying or preventing such conduct.  [*Id.*]

The Enforcement Clause analysis required under *Boerne* focuses on three particular issues: (1) the nature of the injury to be remedied; (2) whether there are adequate state remedies to address the injury; and (3) the coverage of the legislation.  [*See Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000).  As discussed below, the CRCA passes muster under all three of these factors so the CRCA was a valid exercise of Congress' power under the Enforcement Clause.

        a.    <u>The CRCA was enacted in response to substantial evidence of copyright infringement by the States and their instrumentalities</u>

As the Court might expect, Congress held substantial hearings regarding the need for and scope of the CRCA before its passage.  The evidence presented to Congress during such hearings unfortunately showed widespread and growing trend of copyright infringement by the States and their instrumentalities (like colleges and universities).  For example, one witness testified that problems "are clearly widespread and they are clearly increasing."  [Senate Hearings at pp. 106, 109.]  A number of witnesses testified about the problems they had enforcing their copyrights

against state universities. [Senate Hearings at pp. 82, 90-91 (addressing illegal copying of copyrighted materials by universities and losses caused thereby); p. 109 (discussing devices created by universities to override copy protections on computer products); House Hearings at p. 146 (discussing curious situation where universities typically do not buy multiple copies of computer software as required by copyright law); Senate Hearing at p. 82; House Hearings at pp. 104, 106, 148 (discussing illegal university photocopying of copyrighted course books); Senate Hearing at pp. 95, 102.).]

Witnesses also testified that copyright infringement problems by the states only increased as the well-publicized budget problems of various states became more severe. [See House Hearings at p. 92.] Congress also heard how state agencies increasingly were refusing to license copyrighted works like software and performance works because of the States' perceived Eleventh Amendment immunity. [See Senate Hearing at pp. 69-70, 77; p. 152; pp. 95, 102.] Even state university representatives themselves admitted that the widespread evidence of state copyright infringement and invalid assertions of Eleventh Amendment immunity as such circumstances existed at the time of the hearings about the CRCA could justify abrogation. [See Senate Hearing at p. 131; House Hearings at p 179.]

Simply put, Congress had more than ample evidence of widespread and increasing copyright infringement and improper assertions of Eleventh Amendment immunity by the States that Congress believed needed to be remedied by the enactment of the CRCA. Congress more than amply satisfied the first *Boerne* factor in enacting the CRCA.

     b.  <u>Congress determined there were no available state remedies for</u>

       <u>copyright infringement</u>

Congress carefully considered the availability of state remedies for copyright infringement as part of its deliberations about the CRCA. Congress concluded that there was not a single state that had any remedy for copyright infringement. This is no surprising giving the fact that the federal courts have exclusive jurisdiction over copyright infringement lawsuits pursuant to 28 U.S.C. 1338(a). [See Senate Hearing at pp. 7, 66; House Hearings at p. 79.] Moreover, as previously discussed, following the Supreme Court's decision in *Atascadero Hospital*, there was

1  an explosion of copyright litigation whereby states had infringed copyrights but attempted to avoid

2  liability on the basis of alleged Eleventh Amendment immunity.

3       As can be seen, at the time it enacted the CRCA, Congress was faced with a situation

4  where there was no remedy available whatsoever to copyright owners whose copyrights had been

5  infringed by states or their instrumentalities.  Congress consequently reasonably exercised its

6  power under the Enforcement Clause to abrogate state immunity in order to create a remedy

7  against states who deprive their citizens of their property without due process by engaging in

8  copyright infringement.

9          c.     Congress tailored the remedy to be provided by the CRCA to the

10                magnitude of the harm to be prevented

11       In enacting the CRCA, Congress did nothing more than extend the remedies already

12  available under the Copyright Act against private and non-governmental parties to the States and

13  their instrumentalities.  In enacting the CRCA, Congress did not create any type of new or

14  enhanced right against the States or rights against the States that were different or greater than the

15  rights against private parties.  Moreover, because of the nature of copyright infringement, i.e., the

16  unlawful use of copyrighted materials, Congress did not create any remedy that was esoteric or

17  difficult to understand.

18       In summary, Congress, in the exercise of the discretion and wide latitude granted to it to

19  enforce the protections of the Fourteenth Amendment, found that making damages remedies

20  available against the States was necessary to remedy state copyright infringement.  [See H. Rep.

21  No. 101-282(I) at pp. 8-9.]  Such exercise of its discretion was amply and fully supported by fact

22  and the evidence adduced by Congress during its hearings on the CRCA, and is eminently

23  constitutional.

24          3.    The Supreme Court Decision in *Florida Prepaid* Does Not Support a

25                Finding that the CRCA is Unconstitutional

26       In *Florida Prepaid Postsecondary Educational Expense Bd. v. College Savings Bank*, 527

27  U.S. 627 (1999), the Supreme Court found that an amendment to the Patent and Plant Variety Act

28  called the "Patent Remedy Act" that was enacted by Congress to abrogate state immunity under

1    such statute was not a valid exercise of Congress' authority under the Fourteenth Amendment.

2    Such decision does not mandate that the Court likewise invalidate the CRCA and grant SDSU's

3    motion to dismiss.

4         This is so because, as discussed in detail above, in passing the CRCA Congress did

5    everything that the _Florida Prepaid_ court found lacking when it invalidated the Patent Remedy

6    Act.  As discussed herein, unlike the situation with the Patent Remedy Act, Congress identified a

7    widespread and increasing pattern of state copyright infringement.  Congress considered the

8    availability of recourse under state law (which, as discussed was totally non-existent), and it

9    tailored the CRCA to remedy the specific problem of state copyright infringement it identified.

10        Simply put, in enacting the CRCA, Congress acted at least as prudently and carefully – if

11   not more prudently and carefully – as it has in the past in enacting legislation ultimately found by

12   the Supreme Court to be valid exercises of Congress' power under the Enforcement Clause.  [_See,_

13   _e.g., Fitzpatrick v. Bitzer,_ 427 U.S. 445 (1976); _Katzenbach v. Morgan,_ 384 U.S. 641 (1966).]

14   Thus, the decision in _Florida Prepaid_ does not provide any basis or reason for this Court to

15   invalidate the CRCA.[8]

16        C.    Rauch Is Not Entitled To Any Relief Pursuant To His Supposed "Joinder"

17        As made clear by his filing, the sole basis for Rauch's "joinder" is that he supposedly was

18   an employee of SDSU who was working in his capacity as such at all times relevant to the

19   underlying action.[9]  As the Court knows, to the extent Rauch's purported joinder is made pursuant

20   to FRCP 12(b)(6), the Court must accept as true all material allegations in MIMI's Complaint, as

21   well as all reasonable inferences therefrom.  [_Pareto v. FDIC,_ 139 F.3d 696, 699 (9th Cir. 1998).]

22   The Complaint must be construed in the light most favorable to MIMI, and dismissal may not be

_____

[8]   Indeed, in his dissent in _Florida Prepaid,_ Justice Stevens specifically commented that the
CRCA was different that the Patent Remedy Act at issue in _Florida Prepaid_ because of the
evidence adduced by Congress during its deliberations about the CRCA, and consequently
concluded that the CRCA was appropriate legislation under the Enforcement Clause.  [_See Florida
Prepaid,_ 527 U.S at 659 n.9 (Stevens, J., dissenting).]

[9]   To the extent Rauch also is claiming by his joinder that the copyright infringement claim
against him should be dismissed pursuant to FRCP 12(b)(1) based on the registration certificate
issue, such arguments fails for the same reasons discussed in connection with SDSU's motion on
the same grounds.

1 granted unless it appears "beyond doubt" that MIMI can prove no set of facts in support of its

2 claims. [*See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).]

3     Applying these standards, it is clear that Rauch is not entitled to any relief pursuant to his

4 joinder:

5               1.     Rauch Does Not Enjoy Any Immunity Here

6     MIMI's Complaint alleges that MIMI does not know if Rauch was an employee or

7 independent contractor of SDSU. [Complaint ¶ 20.] Moreover, MIMI has sued Rauch both in his

8 individual capacity (making this lawsuit a so-called "personal capacity suit") as well as in his

9 potential role as a SDSU employee. [Complaint ¶ 21.] Because this is a 12(b)(6) motion, MIMI's

10 allegations must be accepted as true and Rauch cannot introduce extrinsic evidence n support of

11 the motion.[10] Because the Complaint does not establish the essential premise of Rauch's joinder,

12 that he was an employee of SDSU, Rauch cannot obtain any relief by his joinder.

13     In any event, even if SDSU enjoys sovereign immunity which precludes this suit, such

14 immunity does not shield Rauch from personal liability for committing copyright infringement

15 himself or for inducing and aiding and abetting SDSU to commit copyright infringement.[11] The

16 decision in *Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988) is squarely on

17 point in such regard.

18     In *Richard Anderson Photography*, the plaintiff sued Radford University, an educational

19 instrumentality of the Commonwealth of Virginia, and Deborah Brown, Radford's director of

20 public information and relations, for copyright infringement for making unauthorized use of the

21 plaintiff's copyrighted photographs. Given that the lawsuit was filed before passage of the CRCA,

22 the court found that Radford was entitled to immunity from such suit.

23     The claims against Brown were against her in her official capacity as well as in her

24 individual capacity. The court found that Brown was not entitled to any immunity for acts of

25 _____

26 [10] Rauch's work status with SDSU will be a matter of proof in this case that cannot be decided on a FRCP 12(b)(6) motion.

27 [11] For the reasons discussed herein, SDSU is not immune from this suit. Rauch consequently likewise enjoys no immunity for acts taken in his official capacity (if any) for the same reasons.

28 _____

copyright infringement taken in her individual capacity, even if such copyright infringement was done in the course and scope of Brown's employment. [*See* 852 F.2d at 122.] In so holding, the Fourth Circuit explained, in language squarely on point here, that "the mere fact that [Brown's] conduct was undertaken in the course of her state employment does not of course relieve her of individual liability, even if her employer could not be sued for it [because of immunity]. <u>A state may no more than an individual principal give its agent authority to commit torts without civil recourse</u> . . . Brown is therefore amenable to suit in her individual capacity for the claimed copyright violation." [*Id.* (emphasis added).]

Just as was true in *Richard Anderson Photography*, Rauch cannot claim and is not entitled to any immunity for acts of copyright infringement taken in his individual capacity, even if such acts of copyright infringement were done in the course of Rauch's employment by SDSU. MIMI's Complaint specifically and expressly alleges claims against Rauch against Rauch in his individual capacity. [Complaint ¶ 21.] Consequently, just as was done in *Richard Anderson Photography*, this Court should reject any claim of immunity by Rauch.

2.     <u>MIMI's State Law Claims Against Rauch Are Not Preempted.</u>

It is not clear from Rauch's joinder whether he also claims that MIMI's state law claims against him are preempted. To the extent Rauch is in fact making such a claim, it must fail in the context of this motion.

The preemption argument made in SDSU's motion and potentially bootstrapped by Rauch is based on a fundamental misinterpretation of the nature and basis of MIMI's state law claims. As SDSU correctly explains in its motion, preemption exists only as state law claims based upon rights that are the equivalent to the exclusive copyright rights protected under the Copyright Act. [17 U.S.C. § 301(a).]

Here, MIMI's state law claims against Rauch are based on the misappropriation and conversion by Rauch of things such as MIMI's methodologies for evaluating the economic impact of sporting events, questionnaires developed by MIMI to evaluate the impact of the Holiday Bowl, work papers generated by MIMI when it did economic impact studies for the Holiday Bowl, and other intangible property and ideas. [Complaint ¶¶ 58-59, 64-68, 74-78.]

So, reduced to their essence, MIMI's allegations are that Rauch stole two separate and distinct types of property from MIMI. First, Rauch pirated and misappropriated MIMI's copyrighted 2003 Report to create the infringing 2004 economic impact study. Such wrongful conduct clearly falls within the exclusive jurisdiction of the Copyright Act and Is not addressed by MIMI's state law claims.

But as alleged in MIMI's Complaint, Rauch also stole and misappropriated MIMI's methodologies for evaluating the economic impact of sporting events, questionnaires developed by MIMI to evaluate the impact of the Holiday Bowl, work papers generated by MIMI when it did economic impact studies for the Holiday Bowl, and other intangible property and ideas. None of this property is the subject of copyright protection. Indeed, unlike the situation in the _Berge_ case cited in SDSU's motion, the property stolen and misappropriated by Rauch that is not covered by copyright is not simply the "ideas" embodied in the copyrighted work, but actually property that is separate and distinct from the copyrighted content in the 2003 Report.

Simply put, because the property that is the subject of MIMI's state law claims against Rauch is not property that is the "equivalent" of rights protected under the Copyright Act, there is no preemption.

It also must be remembered that Rauch is raising his preemption defense in the context of a FRCP 12(b)(6) motion. Obviously, the identity and nature of the property that is the subject of MIMI's state law claims will be the subject of substantial discovery and proof by evidence. At this stage of this case, the Court must accept as true MIMI's characterization of the property that is addressed by MIMI's ate law claims. If, after discovery, Rauch still believes preemption exists, he can bring a summary judgment motion. But for now, accepting the allegations of MIMI's Complaint as true and drawing all favorable inferences from such allegations in favor of MIMI as the Court must in the context of a FRCP 12(b)(6) motion, Rauch's preemption argument must be rejected.

In the event the Court believes that MIMI's Compliant does not show clearly enough why the state law claims are not preempted, MIMI requests leave to file an amended complaint to provide more detailed allegations about the nature of the property addressed by the state law

claims, and more detailed allegations showing why there is no preemption.

DATED: November 2, 2006                    THE AFFINITY LAW GROUP APC


                                           By:  ___/s/ Gregory P. Goonan_____
                                                Gregory P. Goonan
                                                Attorneys for Plaintiff
                                                Marketing Information Masters, Inc.


## Certificate of Service

The undersigned hereby certifies that on this 2nd day of November 2006, a true and accurate copy of the attached document was electronically filed with the Court, to be served by operation of the Court's electronic filing system, upon the following:

    Jonathan S. Pink, Esq.
    Lewis Brisbois Bisgaard & Smith LLP
    650 Town Center Drive, Suite 1400
    Costa Mesa, CA  92626
    Attorneys for Defendants



                                             _/s/ Gregory P. Goonan_