**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN PINK, SB# 179685
650 Town Center Drive
Suite 1400
Costa Mesa, California 92626
Telephone: (714) 545-9200
Facsimile: (714) 850-1030
Email: pink@lbbslaw.com

Attorneys for Defendant The Board of Trustees
of the California State University

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETING INFORMATION MASTERS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, WHICH IS THE STATE OF CALIFORNIA ACTING IN ITS HIGHER EDUCATION CAPACITY (erroneously sued herein as THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY SYSTEM, A PUBLIC ENTITY ACTING THROUGH ITS SUBDIVISION SAN DIEGO STATE UNIVERSITY); and ROBERT A. RAUCH, an individual,<br><br>Defendants. | CASE NO. 06CV 1682 JAH JMA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>[Filed concurrently with the Declaration of Robert Rauch]<br><br>ACTION FILED: August 18, 2006<br><br>Hearing Date: November 16, 2006<br>Time: 3:00 p.m.<br>Dept: 11 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY NOTE REGARDING THE AMENDED COMPLAINT**

Plaintiff Marketing Information Masters, Inc. ("MIM") filed an Amended Complaint approximately <u>three hours</u> *before* defendants the Board of Trustees of the California State University ("Trustees") and Robert Rauch ("Rauch") filed this Reply.

4842-7475-3025.1

-1-

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's last minute effort to render this Motion moot should have no effect. While an amended complaint supersedes the prior complaint as a pleading, and thus the court will usually treat the motion to dismiss as mooted, it may nonetheless proceed with the motion if the amendment does not cure the defect that exists in the original. *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 9-D 9b.(3)(b) [9:262].

Here, a comparison between plaintiff's original and amended complaint shows that the only difference between them is plaintiff's subsequent inclusion of its copyright registration certificate. As such, nothing about that amendment corrects the defects in the original. Thus plaintiff's amendment has not mooted defendants' original Motion; the issues and argument set forth in this Motion remain applicable to plaintiff's *amended* complaint.

## II. INTRODUCTION

Plaintiff's opposition is narrowly focused on asking this Court to adopt a rule of law that has never been followed by a single reported case. It asks this Court to hold a State agency and its employee liable for copyright infringement. This Court should not be the first to adopt such a rule, especially in light of persuasive Supreme Court authority and the express language of the Eleventh Amendment to the Constitution.

## III. NO COURT HAS *EVER* UPHELD A COPYRIGHT INFRINGEMENT CLAIM AGAINST A STATE; THIS COURT SHOULD NOT BE THE FIRST.

Plaintiff correctly notes that in 1990, Congress passed the Copyright Remedy Clarification Act ("CRCA") which amended the Copyright Act to permit states to be sued for copyright infringement. Despite this, however, no court has ever upheld a copyright infringement suit as against a state. This Court should not be the first. The law as it currently stands is clear: states are not amenable to suit for copyright infringement based on the principal of state sovereign immunity under the Eleventh Amendment to the United States Constitution.

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

As discussed in the underlying motion, the Trustees constitutes an arm of the State of California. So does their employee, Robert A. Rauch. (Rauch Decl., ¶2.) Thus, both the Trustees and Mr. Rauch may stake claim to Eleventh Amendment immunity. In light of this, the Compliant should be dismissed in its entirety. *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend is properly denied "where the amendment would be futile").

### A. The Supreme Court's decision in *Seminole Tribe of Florida* Disposed of the CRCA.

The Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), sounded a death knell to the CRCA. It also conclusively disposed of the notion that states could be subject to suit for copyright infringement.

In *Seminole*, the Supreme Court held that Congress can <u>only</u> authorize suits against the states pursuant to § 5 of the Fourteenth Amendment and <u>not</u> under any other constitutional grant of power. This includes the powers enumerated in Article I of the Constitution. *Seminole Tribe*, 517 U.S. at 73. *Seminole Tribe* is particularly significant because it expressly overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989) (holding that Congress may override the Eleventh Amendment and authorize suits against states under any of its constitutional powers). *Pennsylvania* is the case upon which Congress relied when it passed the CRCA. As such, the Court's holding in *Seminole* disposes of the notion that Congress may override the Eleventh Amendment to authorize copyright lawsuits against a state.

This issue is expressly addressed by Professor David Nimmer in *Nimmer on Copyright* § 12.01. *Nimmer* canvasses the history of the CRCA, stating that the Register of Copyrights suggested to Congress in 1988 that it await the Supreme Court's ruling in *United States (Pennsylvania) v. Union Gas Co.*, 832 F.2d 1343 (3d Cir. 1987) before enacting the CRCA. If the Supreme Court validated Congress's authority to abrogate sovereign immunity, the Register recommended that Congress amend the Copyright Act to permit states to be sued. The Court handed down its

4842-7475-3025.1 -3-
**REPLY IN SUPPORT OF MOTION TO DISMISS**

ruling in *Pennsylvania v. Union Gas Co.,* and the following year Congress passed the CRCA under its Article I power to legislate in the field of copyright. The Supreme's Court's ruling in *Seminole Tribe* followed, and – in overruling *Pennsylvania* – was intended to put this issue to rest.

Congress's power to legislate in the copyright arena is grounded squarely in Article I of Constitution. It was pursuant to this authority that Congress acted when it amended the Copyright Act to permit states to be sued for copyright infringement. However, according to the Supreme Court's holding in *Seminole Tribe*, it is now beyond dispute that the CRCR – as an exercise of Congress's Article I power – does not and can not survive constitutional scrutiny. Therefore, despite plaintiff's effort to raise the dead, the Supreme Court's decision in *Seminole Tribe of Florida* effectively laid the CRCA to rest. MIM is prohibited from suing the State (or its agent) for copyright infringement, and thus this Court should dismiss the Compliant in its entirety.

**B.     This Court Should Reject Plaintiff's Attempt to Recast Settled Law as a Fourteenth Amendment Issue.**

Plaintiff argues that the CRCA "survives constitutional scrutiny" pursuant to § 5 to the Fourteenth Amendment. No court has ever found this to be true.

It is well established law that the only permissible source of power under which Congress may abrogate state sovereign immunity is § 5 to the Fourteenth Amendment. The Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), however tightly constrained the reach of Congress's § 5 powers and further sealed the fate of copyright claims brought against the states. In *Boerne*, the Supreme Court held that Congress validly acts pursuant to § 5 only when it crafts legislation that enforces the provisions of the Fourteenth Amendment. *Id.* at 519. Thus, Congress's power under § 5 is remedial and cannot be used to expand the scope of, or create new, rights. Further, for any law passed under § 5, "there must be a congruence and proportionality between the injury to be prevented or remedied and

-4-

the means adopted to that end," *i.e.*, the law must be narrowly tailored to prevent or remedy constitutional violations recognized by the courts. *Id.* at 520.

Since *Boerne*, the Supreme Court has applied *Seminole Tribe* and *Boerne* to Congressional statutes that purport to subject states to suit on four occasions. It has applied *Seminole* to its holdings in: (1) *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank* 527 U.S. 507 (1999); (2) *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund*, 527 U.S. 666 (1999); (3) *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), and in *Alabama v. Garret*, 531 U.S. 356 (2001).

The holdings in *Florida Prepaid* and in *College Savings Bank* are particularly instructive because those cases involved the invalidating of a "Remedy Clarification Act" pursuant to Congress's Article I powers that were similar to the CRCA. In *Florida Prepaid*, the Supreme Court invalidated the Patent and Plaint Protection Remedy Clarification Act under both Congress's Article I powers *and* § 5 of the Fourteenth Amendment. The Court invalidated the Trademark Remedy Clarification Act in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund* on the same basis. Judicial consistency mandates that courts treat copyrights – and the CRCA – similarly.

While not as directly on point, *Kimel v. Florida Board of Regents* and *Alabama v. Garret* are also instructive. In *Kimel*, the Court held that that portion of the Age Discrimination and Employment Act which permitted a plaintiff to sue a state was not a valid exercise of Congressional power under § 5 of the Fourteenth Amendment. Similarly, in *Alabama*, the Court held that Title I of the Americans with Disabilities Act exceeded Congress's scope of power under § 5 of the Fourteenth Amendment where it permitted an individual to sue the state for discrimination.

It is clear from the foregoing cases that the shrinking scope of § 5 of the Fourteenth Amendment does not provide Congress with a valid basis to hold the

states liable in suit for copyright infringement irrespective of the CRCA. The Fifth Circuit, in *Rodriguez v. Texas Commission on the Arts*, 199 F.3d 279 (5th Cir. 2000) and *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000) expressly held that this was the case. At issue in *Rodriguez* was whether Congress abrogated state sovereign immunity in accordance with a valid exercise of power when it enacted the CRCA The court, in reliance on *Florida Prepaid*, noted that just as the Patent and Plant Variety Protection Remedy Clarification Act ("PRCA") "cannot be sustained as legislation enacted to enforce the guarantees of the Fourteenth Amendment's Due Process Clause," the CRCA was likewise invalid. *Rodriguez*, 199 F.3d at 218. In reaching this decision, the court reasoned that the same result should obtain with respect to copyright because the "interests Congress sought to protect in each statute are substantially the same and the language and the language of the respective abrogation provisions are virtually identical." *Id*.

The ruling in *Rodriguez* is not unique. A number of United States District Courts have similarly recognized that a suit for copyright infringement cannot be upheld against a state. *See Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352, 356 (S.D.N.Y. 2001); *Rainey v. Waine State University*, 26 F. Supp. 2d 973, 976 (E.D. Mich. 1998). Contrary to plaintiff's recasting of the facts, such rulings are the "mainstream." Defendants are aware of no court having reached a contrary ruling, yet this is precisely what MIM asks this Court to do in this case. This Court should reject plaintiff's request.

While MIM claims that the CRCA was passed pursuant to the enforcement clause of the Fourteenth Amendment, such an argument strains credulity. The history and timing of the CRCA make clear that it was intended to be an exercise of Congress's Article I powers. Indeed, the legislative history of the CRCA makes this manifest. *See* H.R. Rep. No. 101-305, 101st Cong., 2d Sess. 8 (1990) ("The recent decision in *United States v. Union Gas Co.*, affirmatively answered the question that Congress does have the power to abrogate when it legislates under the Commerce

Clause. The same reasoning applies to the Copyright Clause that also grants Congress plenary power to enact Federal Legislation."). There is no evidence that the CRCA was specifically tailored to remedy past constitutional violations of the states as a means of Congress enforcing the guarantees of the Fourteenth Amendment. Even Professor Nimmer notes that while "the legislative history of for the CRCA documents a few more instances of copyright infringement than the PRCA legislative history did of patent violations," the CRCA itself "exhibits similar deficiencies." *Nimmer on Copyright* § 12.01, fn. 272.1

Therefore, this Court should reject plaintiff's attempt to portray the issue of sovereign immunity as an issue to be decided pursuant to the Fourteenth Amendment. This matter has been adjudicated and decided at <u>every</u> level of the Federal judiciary. The CRCA does not pass constitutional muster under the enforcement clause of the Fourteenth Amendment, pure and simple, and this Court should not tamper with such settled law.

### C. The Policy of Not Permitting States to Be Sued for Copyright Infringement Is Consistent with the United States Intellectual Property System.

While MIM claims that the Trustees are asking this Court to "override the considered judgment of the legislative branch and declare unconstitutional" the CRCA, the Trustees position is more nuanced than that. The Trustees, are asking this Court to interpret the Copyright Act consistent with the United States Constitution, Supreme Court jurisprudence, federal decisional authority, and the law unique to intellectual property matters. As indicated above, there is every reason to expect that the CRCA would be declared an invalid exercise of Congressional power – even under § 5 of the Fourteenth Amendment – were that express issue to come before the Court. Certainly, from a policy perspective such a ruling would make sense given that the Supreme Court has already invalidated Congress's efforts to subject states to suit for patent and trademark infringement, and the need for

uniformity in our intellectual property laws. *See Florida Prepaid Postsecondary Education, supra* and *College Savings Bank, supra.* Defendants respectfully submit that this Court's ruling should likewise maintain that consistency. As such, this Court should dismiss the Compliant in its entirety.

### IV. RAUCH, AS AN EMPLOYEE OF THE STATE WORKING IN HIS OFFICIAL CAPACITY, IS IMMUNE UNDER THE ELEVENTH AMENDMENT.

The Supreme Court held in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), that "the Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." Further, the Supreme Court held in *Ford Motor Co. v. Department of Treasury*, that the Eleventh Amendment bars an award of damages – to be recovered from state treasury – even when the individual officer is named the defendant in a lawsuit. 323 U.S. 459, 464 (1945). The Ninth Circuit has expressly adopted the Supreme Court's reasoning and held that the "Eleventh Amendment prevents recovery against the state or against state officers in their official capacity for retroactive money damages." *D'Angelo v. Crofts*, 162 Fed. Appx. 728, 729 (9th Cir. 2006).[1]

Here, Rauch is a state officer who was acting in his official capacity. At all relevant times herein, Rauch was the Director of San Diego State University's ("SDSU") Center for Hospitality and Tourism Management ("Center"). (Rauch Decl., ¶2; *see also* Complaint ¶¶ 9, 20, 21.) The Center is part of SDSU's College of Professional Studies and Fine Arts. (Rauch Decl., ¶2; *see also* Complaint ¶¶ 18, 19.) As such, the Center is an agency of the state, and its Director is an officer of the

---

[1] A motion under Rule 12(b)(6) should be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. *Patrick W. v. Lemahieu*, 165 F.Supp.2d 1144, 1146 (D.Hawai'i, 2001). The issue of Eleventh Amendment sovereign immunity issue presents just such a bar to relief that this Court must resolve before reaching the merits of this case. *See Edelman v. Jordan*, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 873 n. 2 (9th Cir. 1987).

4842-7475-3025.1 -8-
REPLY IN SUPPORT OF MOTION TO DISMISS

state. *See AIDS Healthcare Foundation v. Belshe*, 1998 WL 1157405 (CD Cal. 1998) (director of California Department of Health Services deemed to be an officer of the state).

In his capacity as Director of the Center, Rauch oversaw the preparation of the "Estimated Economic Impact on San Diego Due to the 2004 Holiday Bowl" (the "Survey"). (*See* Complaint ¶¶ 9, 20.) There is no legitimate dispute that the Survey was prepared by the Center, as opposed to by Rauch individually. (*See* Complaint ¶¶ 8, 9, 20, 21.) That is, while MIM alleges that Rauch "engaged in the wrongful acts alleged in his individual capacity as a public employee" it also alleges that "to the extent Mr. Rauch was an employee of San Diego State University" he engaged in the wrongful acts alleged in *that* capacity. (*See* Complaint ¶ 21.) As set forth in the accompanying Declaration of Robert Rauch, Rauch *was* an employee of the school at all times relevant to this lawsuit. (Rauch Decl., ¶¶ 2, 3, 4.) Thus, he was acting in his official capacity as an employee of the state when engaging in the acts alleged.

This fact is highlighted by plaintiff's own pleadings. There is no delineation in the complaint as to where -- or how -- Rauch engaged in any "wrongful act" in his *individual* capacity. The claims against Rauch are duplicative of those asserted against the Trustees. MIM makes no claim <u>exclusively</u> against Rauch in <u>any</u> capacity. This shows that the real party in interest is the Trustees, albeit acting through their employee Rauch. Further, there is no dispute that the Holiday Bowl commissioned the Center -- and not Rauch -- to prepare the Study, and that the Center is part of SDSU (which is an arm of the state). (*See* Complaint ¶¶ 9, 20.) As such, just because MIM alleges that Rauch performed any work in connection with the Survey in an individual capacity does not make it so. Rausch was performing in his <u>official</u> capacity for the benefit of the Trustees. Thus, Rauch must be entitled to protection pursuant to the Eleventh Amendment.

## V. THE SUPPLEMENTAL STATE LAW CLAIMS MUST BE DISMISSED.

The Supreme Court has held that Federal Courts are barred by the Eleventh Amendment from enjoining state officers acting within the scope of their employment from violations of state law. *Pennhurst* 465 U.S. at 121. The Ninth Circuit has expressly recognized this limit on the Federal judicial power and has held that supplemental claims asserted against non-consenting state defendants are barred by the Eleventh Amendment. *Cholla Ready Mix, Inc., v. Civish*, 382 F.3d 969, 973-74 (9th Cir. 2004). Pursuant to that holding, Rauch as Director of the Center is entitled to Eleventh Amendment protection from MIM's state claims.

MIM claims that Rauch "stole and misappropriated . . . methodologies for evaluating the economic impact of sporting events, questionnaires developed . . . to evaluate the impact of the Holiday Bowl, work papers generated by [MIM] . . . and other intangible property and ideas." "Methodologies" and other "intangible property and ideas" are preempted by Federal Copyright Law as set forth in the underlying motion. Further, any papers that the Holiday Bowl intentionally and voluntarily provided to Rauch so the Center could prepare the Survey cannot give rise to a conversion claim against Rauch by MIM. If MIM objects to the Holiday Bowl's conduct in this regard, it must look to that entity for redress.

## VI. CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice in its entirety.

DATED: November 8, 2006           Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By_____
Jonathan Pink
Member of Lewis Brisbois Bisgaard & Smith LLP
Attorneys for Defendant Board of Trustees of the
California State University

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN PINK, SB# 179685
650 Town Center Drive
Suite 1400
Costa Mesa, California 92626
Telephone: (714) 545-9200
Facsimile: (714) 850-1030
Email: pink@lbbslaw.com

Attorneys for Defendant, The Board of Trustees of the California State University System, a public entity acting through its subdivision San Diego State University; and Robert A. Rauch, an individual

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETING INFORMATION MASTERS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY SYSTEM, a public entity acting through its subdivision SAN DIEGO STATE UNIVERSITY; and ROBERT A RAUCH, an individual,<br><br>Defendants. | CASE NO. 06CV 1682 JAH JMA<br><br>**DECLARATION OF ROBERT A. RAUCH IN SUPPORT OF MOTION TO DISMISS**<br><br>ACTION FILED: August 18, 2006<br><br>Hearing Date: November 16, 2006<br>Time: 3:00 p.m.<br>Dept: 11 |

4837-5026-8161.1

-1-

DECLARATION OF ROBERT A. RAUCH

# DECLARATION OF ROBERT A. RAUCH

I, Robert A. Rauch, declare as follows:

1. I am a defendant in this action, and have personal knowledge of the facts set forth herein. If called upon as a witness to testify thereto, I could competently and truthfully do so.

2. At all times relevant to the facts alleged in the complaint, I was the Director of the Center for Hospitality and Tourism Management (the "Center") at San Diego State University ("SDSU"). The Center is part of the College of Professional Studies and Fine Arts at SDSU. As the Director of the Center, I was an employee of the State of California.

3. At all times relevant herein, the work I performed at the Center, including the work giving rise to this lawsuit, was done in course and scope of my employment as Director of the Center.

4. Specifically, with respect to my involvement in the creation of the "Estimated Economic Impact on San Diego Due to the 2004 Holiday Bowl" (the "Survey") the work I performed was entirely done pursuant to my employment at SDSU. I had no individual involvement in the creation of that Survey outside the scope of my employment at SDSU.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on November 8, 2006 at San Diego, California.

*[signature]*
Robert A. Rauch

4837-5026-8161.1