**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN PINK, SB# 179685
650 Town Center Drive
Suite 1400
Costa Mesa, California 92626
Telephone: (714) 545-9200
Facsimile: (714) 850-1030
Email: pink@lbbslaw.com

Attorneys for Defendant The Board of Trustees of
the California State University and Robert A. Rauch

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETING INFORMATION MASTERS, INC., a California corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, which is the State of California acting in its higher education capacity (erroneously sued as The Board of Trustees of the California State University); and ROBERT A. RAUCH, an individual,<br><br>        Defendants. | CASE NO. 06CV1682 JAH/JMA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Filed concurrently with Notice of Motion and Motion; Declarations of Robert Rauch and Kathy LaMaster]<br><br>ACTION FILED: August 18, 2006<br><br>DATE: January 18, 2007<br>TIME: 3:00 p.m.<br>DEPT. 11<br>Hon. John A. Houston |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

Dockets.Justia.com

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Brief Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  THE COMPLAINT IS BARRED IN ITS ENTIRETY BY THE
    PRINCIPLE OF STATE SOVEREIGN IMMUNITY, AND
    THEREFORE, IT MUST BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Trustees and Rauch May Stake Claim to Eleventh
        Amendment Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   MIM's claim for copyright infringement is barred by the
        Eleventh Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   Congress Has Not Effectively Abrogated State Sovereign
            Immunity with Respect to Claims of Copyright
            Infringement Against a State under Article I of the
            Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.   Plaintiff Cannot Prevail on its Claims Because the CRCA
            Cannot Pass Constitutional Muster under § 5 of the
            Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.   Plaintiff's supplemental state law claims are also barred by
        the Eleventh Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.   28 U.S.C. § 1367 Does Not Provide an Appropriate Basis
            to Assert State Law Claims Against the State in this Court . . 13

        2.   Supplemental State law claims may not be brought against
            a state officers for actions performed in their official
            capacity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. MIM'S STATE LAW CLAIMS MUST BE DISMISSED BECAUSE
    THEY ARE PREEMPTED BY FEDERAL COPYRIGHT LAW. . . . . . . 15

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Federal Cases**

*AIDS Healthcare Foundation v. Belshe,*
    1998 WL 1157405 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Alabama v. Garret,*
    531 U.S. 356 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Chavez v. Arte Publico Press,*
    204 F.3d 601 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cholla Ready Mix, Inc. v. Civish,*
    382, F.3d 969, 973-74 (9th Cir. 2040) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense*
    *Fund,* 527 U.S. 666 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*D'Angelo v. Crofts,*
    162 Fed. Appx. 728,729 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Edemol Entertainment vs. 20th Television,*
    48 U.S.P.Q. 2d1524 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Florida Prepaid Postsecondary Education Expense Board v. College*
    *Savings Bank,* 527 U.S. 507 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Ford Motor Co. v. Department of Treasury,*
    323 U.S. 459 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Jackson v. Hayakawa,*
    682 F.2d 1344 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kimel v. Florida Board of Regents,*
    528 U.S. 62 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*Pennhurst State School and Hospital v. Halderman,*
    465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 14

*Pennsylvania v. Union Gas Co.,*
    491 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Rainey v. Wayne State University,*
    26 F. Supp. 2d 973 (E.D. Mich. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rodriguez v. Texas Commission on the Arts,*
    199 F.3d 279 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Salerno v. City University of N.Y.,*
    191 F. Supp. 2d 352 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1  *Seminole Tribe of Florida v. Florida,*
       517 U.S. 44 (1996) ............................................. 7, 8

2

3  *Stanley v. Trustees of the California State University,*
       433 F.3d 1129 (9th Cir. 2006) ................................... 13

4  *U.S. Ex Rel. Berge vs. Trustees of the University of Alabama,*
       104 F.3d 1453 (4th Cir. 1997) ............................... 15, 16

5

6  *United States (Pennsylvania) v. Union Gas Co.,*
       832 F.2d 1343 (3d Cir. 1987) ................................. 7, 8

7  **Federal Statutes**

8  17 U.S.C. § 301(a) .......................................... 15, 16

9  17 U.S.C. § 102(a) .......................................... 15, 16

10 28 U.S.C. § 1367 ............................................ 1, 13

11 28 U.S.C.§ 1367(a) ......................................... 13, 14

12 42 U.S.C. § 1983 .............................................. 4

13 Fed. R. Civ. P. 12(b)(6) .................................. 4, 14, 16

14 H.R. Rep. No. 101-305, 101st Cong., 2d Sess. 8 (1990) .......... 7

15 U.S. Const. Amend. XI ......................................... 2

16 U.S. Const. Amend. XIV § 5 ................................ 8, 9, 11

17 **State Statutes**

18 Cal. Bus. & Prof. Code §§ 17200 et seq ..................... 13, 14

19 **Other Authorities**

20 Americans with Disabilities Act, Title 1 ..................... 11

21 Erwin Chemerinsky, Constitutional Law, Principals & Policies, §3.7 ........... 8, 14

22 Nimmer on Copyright § 12.01[E][2][b] .......................... 7

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. Brief Statement.

This motion follows an earlier Motion to Dismiss that was rendered moot when Plaintiff Marketing Information Masters, Inc. ("plaintiff" or "MIM") filed an amended complaint.

The timing of plaintiff's filing of an amended complaint should raise some eyebrows. Rather than filing it when plaintiff first learned that defendants intended to file a Motion to Dismiss, and rather than filing it in lieu of an Opposition brief, plaintiff waited until the very day defendants' reply was due and filed it then.

Plaintiff's delay was pure gamesmanship. It was also a colossal waste of time and money for both parties. Moreover, it gained plaintiff nothing. The amended complaint is nearly identical to the original and did not cure the fundamental and fatal defect contained in the original. Nor could it because, try as it may, plaintiff cannot draft a complaint that will permit it to sue the State of California for copyright infringement.

Like the original, plaintiff's First Amended Compliant calls on this Court to ignore established authority and adopt a rule of law that permits plaintiff to sue the State for infringement. It does this despite the centuries-old principle of sovereign immunity as embodied in the Eleventh Amendment to the United States Constitution, and despite the fact that no other court has ever reached such a holding. The Eleventh Amendment is very clear. It provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

Simply put, this Court should decline plaintiff's invitation to be the first court to permit a copyright infringement case be brought against the State. This is especially so because to adopt such a rule would require this Court to contravene the

1  express language of the Constitution and decisional authority of the United States
2  Supreme Court. Therefore, and as set forth below, this Court should find that
3  plaintiff's amended complaint is as futile as its original, and should dismiss this case
4  with prejudice in its entirety.

## B.  Statement of the Facts.

6  MIM is a company that specializes in market research and analysis. (First
7  Amended Complaint ["FAC"], ¶2.) For several years prior to 2003, the Pacific Life
8  Holiday Bowl (the "PLHB") retained MIM to conduct studies assessing the
9  economic impact of the annual Holiday Bowl on San Diego's economy. (FAC, ¶4.)
10  PLHB paid MIM $15,000 for each such survey.

11  In November 2004, MIM informed PLHB that it could not prepare the 2004
12  report for this same price. (FAC, ¶7.) MIM stated it would have to charge PLHB
13  the "market rate" for all future surveys. (FAC, ¶8.) While not entirely clear, it
14  appears that this translated to a three-fold increase in price. Given that increase,
15  PLHB elected not to engage MIM to prepare the 2004 report. Rather, PLHB hired
16  San Diego State University's ("SDSU") Center for Hospitality and Tourism Research
17  (the "Center") to create the "Estimated Economic Impact on San Diego Due to the
18  2004 Holiday Bowl" (the "2004 Survey"). (FAC, ¶8.) To this end, the Center and
19  PLHB entered into a written contract, pursuant to which the Center was to reference
20  "previous Holiday Bowl reports" when analyzing "the total economic impact of the
21  Holiday Bowl" on San Diego.

22  The Center completed the 2004 Survey in May 2005 under the direction of
23  professor (and co-defendant) Robert Rauch. Shortly after the Center presented its
24  report to PLHB, MIM's principal, Michael Casinelli, contacted SDSU and alleged
25  that Mr. Rauch had copied large textual portions from MIM's 2003 Holiday Bowl
26  survey (the "2003 Survey"). SDSU launched an internal academic inquiry, and
27  ultimately issued two formal letters of reprimand to Mr. Rauch. Those letters stated
28  that Mr. Rauch's had violated the academic standards expected of university

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1  employees by "plagiarizing" portions of MIM's 2003 survey. Based on the forgoing,

2  MIM filed the instant lawsuit against Mr. Rauch and defendant the Board of Trustees

3  of the California State University (the "Trustees").

4  **II.  THE COMPLAINT IS BARRED IN ITS ENTIRETY BY THE**

5  **PRINCIPLE OF STATE SOVEREIGN IMMUNITY, AND**

6  **THEREFORE, IT MUST BE DISMISSED.**

7      Fed. R. Civ. P. 12(b)(6) allows for summary dismissal where the plaintiff is

8  legally precluded from stating a claim for which relief may be granted. That is

9  precisely the case here because the Trustees and Rauch are entitled to sovereign

10 immunity as a matter of law. Accordingly, plaintiff's First Amended Complaint fails

11 to state a single cognizable claim against these defendants and therefore should be

12 dismissed in its entirety.

13     **A.  The Trustees and Rauch May Stake Claim to Eleventh Amendment**

14     **Immunity.**

15     Well-established principles of Supreme Court and Ninth Circuit jurisprudence

16 provide that both the Trustees and Rauch may stake a claim to sovereign immunity.

17 *See Jackson v. Hayakawa*, 682. F.2d 1344 (9th Cir. 1982). Indeed, after the Ninth

18 Circuit's ruling in *Jackson v. Hayakawa*, there can be no question that such is the

19 case with respect to the Trustees. In affirming the district court's dismissal of a 42

20 U.S.C. § 1983 claim against San Francisco State University, the *Jackson* court

21 specifically held that the California State University constituted an arm of the state,

22 and as such was entitled to immunity for purposes of the Eleventh Amendment. *Id.*

23 at 1350-51.

24     The Supreme Court's holdings in *Ford Motor Co. v. Department of Treasury*,

25 323 U.S. 459 (1945) and *Pennhurst State School and Hospital v. Halderman*, 465

26 U.S. 89 (1984) dictate that the same result applies with respect to Rauch. In *Ford*

27 *Motor Co.*, the Court held that "when the action is in essence one for recovery of

28 money from the state the state is the real, substantial party in interest and is entitled

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1  to invoke its sovereign immunity from suit even though individual officials are

2  nominal defendants." *Ford Motor Co.*, 323 U.S. at 464. In *Pennhurst*, the Supreme

3  Court reaffirmed its holding in *Ford Motor Co.* and further held that "as when the

4  State itself is named as the defendant, a suit against state officials that is in fact a suit

5  against a state is barred regardless of whether it seeks damages or injunctive relief.

6  *Pennhurst*, 465 U.S. at 101-02.

7       The Ninth Circuit has expressly adopted the Supreme Court's reasoning in

8  *Pennhurst*. Citing to *Pennhurst*, it recently held that the "Eleventh Amendment

9  prevents recovery against the state or against state officers in their official capacity

10  for retroactive money damages." *D'Angelo v. Crofts*, 162 Fed. Appx. 728,729 (9th

11  Cir. 2006).

12       Applying the principles enunciated by both the U.S. Supreme Court and the

13  Ninth Circuit, this Court should find that Eleventh Amendment immunity inures to

14  the benefit of Rauch. This is because, as MIM's First Amended Complaint

15  demonstrates, the real defendant is the Trustees, *not* Rauch. Moreover, as set forth in

16  the accompanying Declarations of Robert Rauch and Kathy LaMaster, the Associate

17  Dean of the College of Professional Studies and Fine Arts, Rauch was a state officer

18  who was acting in his official capacity at all times relevant to this lawsuit. (Rauch

19  Decl., ¶¶ 2, 3, 4; LaMaster Decl., ¶¶ 2, 3.) Specifically, at all relevant times, Rauch

20  was the Director of the Center, which is part of SDSU's College of Professional

21  Studies and Fine Arts. (Rauch Decl., ¶2; LaMaster Decl., ¶2; *see also* FAC ¶¶ 9, 18,

22  19, 20, 21.) As such, the Center is an agency of the state, and its Director is an

23  officer/employee of the state. *See AIDS Healthcare Foundation v. Belshe*, 1998 WL

24  1157405 (C.D. Cal. 1998) (director of California Department of Health Services

25  deemed to be an officer of the state). Therefore, to the extent Rauch oversaw the

26  2004 Survey in his capacity as Director, he was acting as a state employee and is thus

27  entitled to sovereign immunity.

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1       There is no dispute that Rauch oversaw the preparation of the 2004 Survey in

2   his capacity as Director of the Center. (*See* FAC ¶¶ 9, 20.) There also is no dispute

3   that the 2004 Survey was prepared by the Center, as opposed to by Rauch

4   individually. (*See* FAC ¶¶ 8, 9, 20, 21.) Indeed, while MIM alleges that Rauch

5   "engaged in the wrongful acts alleged in his individual capacity," it simultaneously

6   alleges "to the extent Mr. Rauch was an employee of San Diego State University," he

7   engaged in the wrongful acts alleged in his capacity as public employee. (*See* FAC

8   21; Rauch Decl., ¶¶ 2, 3, 4; LaMaster Decl., ¶¶ 2, 3.) Plaintiff makes no distinction

9   between the Trustees and Rauch as to the alleged "wrongful acts," and indeed there is

10  none. Certainly MIM fails to elucidate when, where or how Rauch engaged in any

11  "wrongful act" in his individual capacity. The claims against Rauch are merely

12  duplicative of those asserted against the Trustees. This makes manifest that the real

13  party in interest is the Trustees, albeit acting through their employee Rauch.

14      Further, there can be no dispute that the Holiday Bowl commissioned the

15  Center - and not Rauch – to prepare the 2004 Study, and that the Center is part of

16  SDSU (which is an arm of the State). (*See* FAC ¶¶ 9, 20.) As such, just because

17  Rauch, as Director of the Center, performed work in connection with the 2004

18  Survey does not transform it into work done in his individual capacity. The

19  allegations themselves make clear that Rauch was performing in his official capacity

20  for the benefit of the Trustees. Thus, pursuant to the holdings in *Ford Motor Co.,*

21  *Pennhurst,* and *D'Angelo,* Rauch must be entitled to Eleventh Amendment

22  protection.

23  / / /

24  / / /

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

**B.**     **MIM's claim for copyright infringement is barred by the Eleventh Amendment.**

    **1.**     **Congress Has Not Effectively Abrogated State Sovereign Immunity with Respect to Claims of Copyright Infringement Against a State under Article I of the Constitution.**

MIM's claim for copyright infringement is barred by the Eleventh Amendment. While Congress attempted to circumvent this result by enacting an amendment to the Copyright Act, its amendment did not effectively abrogated state sovereign immunity and thus does not permit plaintiff to proceed with this lawsuit.

In 1990, Congress passed the Copyright Remedy Clarification Act ("CRCA"), which amended the Copyright Act to permit states to be sued for copyright infringement. It did so based on the Supreme Court's ruling in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989).[1] However, several years later, the Supreme Court revisited its holding in *Union Gas*, and expressly overruled it. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66 (1996). The Court's ruling in *Seminole Tribe*, sounded the death knell for the CRCA and the notion that states would be subject to suit for copyright infringement.

In *Seminole Tribe*, the Supreme Court held that Congress may not authorize suits against the states under any of its constitutional grants of power, save § 5 of the Fourteenth Amendment. *Seminole Tribe*, 517 U.S. at 73. This includes Congress's power to legislate in the copyright domain, along with the other powers expressly

---

[1]     The history and the timing of the CRCA bears this out. *See* H.R. Rep. No. 101-305, 101st Cong., 2d Sess. 8 (1990) ("The recent decision in *United States v. Union Gas Co.*, affirmatively answered the question that Congress does have the power to abrogate when it legislates under the Commerce Clause. The same reasoning applies to the Copyright Clause that also grants Congress plenary power to enact Federal Legislation."); *See also* Nimmer on Copyright § 12.01[E][2][b] (notings that in 1988, the Register of Copyrights recommended Congress enact legislation subjecting state to suit if the Supreme Court validated Congress's authority to abrogate sovereign immunity in *United States (Pennsylvania) v. Union Gas Co.*, 832 F.2d 1343 (3d Cir. 1987). In 1989 the Court handed down its ruling in *Pennsylvania v. Union Gas Co.*, and the following year, Congress passed the CRCA.).

enumerated in Article I of the Constitution. In other words, after holding in *Union Gas* that Congress could override the Eleventh Amendment and authorize suits against states under any of its constitutional powers, the Supreme Court in *Seminole Tribe,* the Court held that *Union Gas* has been wrongly decided. *Seminole Tribe*, 517 U.S. at 66 ("We feel bound to conclude that Union Gas was wrongly decided and that it should be, and now is, overruled."). Writing for the Court, Chief Justice Rehnquist emphasized that *Pennsylvania v. Union Gas Co.* "was an unprecedented expansion in Congress's power to authorize suits against state government." *See* Erwin Chemerinsky, Constitutional Law, Principles and Policies, § 3.7. The Chief Justice noted that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole Tribe*, 517 U.S. at 72-73.

If plaintiff is to prevail on this Motion, this Court - in effect - will have to overrule *Seminole Tribe*. It should not do so. There can be no dispute that Congress's power to legislate in the copyright arena is grounded squarely in Article I. Indeed, it was pursuant to this authority that Congress acted when it amended the Copyright Act to permit states to be sued for copyright infringement. However, following the ruling in *Seminole Tribe*, it is now clear that the CRCA - as an exercise of Congress's Article I power - does not and cannot survive constitutional scrutiny. Thus, plaintiff's justification for maintaining this lawsuit can find no basis in the CRCA. Nor – as discussed below -- can plaintiff escape this result by seeking an end-run around Article I through an invocation of the Fourteenth Amendment.

### 2. Plaintiff Cannot Prevail on its Claims Because the CRCA Cannot Pass Constitutional Muster under § 5 of the Fourteenth Amendment.

Based on prior pleadings, it is likely that plaintiff will tell this Court that the CRCA should be upheld in this case pursuant to § 5 of the Fourteenth Amendment. Plaintiff will have no authority for this proposition because there is none. No court

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1   has ever found that the CRCA survives constitutional scrutiny under § 5 of the

2   Fourteenth Amendment. Indeed, even the U.S. Copyright Office has rejected this

3   notion. *See* Statement of Marybeth Peters, the U.S. Registrar of Copyrights, in State

4   Sovereign Immunity and Protection of Intellectual Property (noting that considering

5   recent Supreme Court jurisprudence, "we believe the CRCA most likely is now bad

6   law.").

7       While it is true that Congress may abrogate state sovereign immunity only

8   through § 5 of the Fourteenth Amendment, the Supreme Court tightly constrained the

9   reach of Congress's § 5 powers and this Court should not attempt to expand it here.

10  *See City of Boerne v. Flores*, 521 U.S. 507 (1997). In *Boerne*, the Supreme Court

11  held that Congress validly acts pursuant to § 5 only when it crafts legislation that

12  enforces the provisions, and in particular, the Due Process Clause of the Fourteenth

13  Amendment. Id. at 519. Thus, the Court explained, Congress's power under § 5 is

14  purely remedial in that it is limited to remedying a record of past constitutional

15  violations, and in particular, violations of the Due Process Clause of the Fourteenth

16  Amendment. The Court further explained that Congress's § 5 power does not extend

17  to determining or changing constitutional rights. *Id.* Further, for any law passed

18  under § 5, "there must be a congruence and proportionality between the injury to be

19  prevented or remedied and the means adopted to that end," i.e., the law must be

20  narrowly tailored to prevent or remedy constitutional violations recognized by the

21  courts. *Boerne*, 521 U.S. at 520.

22      Applying these principles, § 5 of the Fourteenth Amendment cannot

23  resuscitate the CRCA and thus should not be used as justification for doing so.

24  There is no question that a copyright falls within the meaning of property as

25  contemplated by the Due Process of the Fourteenth Amendment, and thus, triggers

26  the protections of Amendment. However, contrary to the standard set forth in

27  *Boerne*, there does not exist a sufficient quantum of recognized state constitutional

28  violations with respect to copyrights so as to justify an application of § 5 to the

CRCA. That is, even though Congress heard testimony regarding copyright infringement by the states prior to enacting the CRCA, such incidents were sporadic and did not rise to the level of a "record of past constitutional violations." *See Chavez v. Arte Publico Press*, 204 F.3d 601, 605 (5th Cir. 2000); *see also* Statement of Marybeth Peters, the U.S. Registrar of Copyrights, in State Sovereign Immunity and Protection of Intellectual Property (noting that for Congress to abrogate sovereign immunity under § 5, "Congress must establish a strong record of infringement by States. If, as would be desirable, the legislation were to include patent and trademark, a record of infringement by States of those rights must be established as well. As noted above, this record is currently not available.").

In short, because Congress failed to identify a pervasive pattern of state constitutional violations concerning copyright, there is no evidence - and no court has ever held -- that the CRCA was not narrowly tailored to remedying such violations or that § 5 of the Fourteenth Amendment should apply.

In ruling on this issue – and in putting plaintiff's claims to rest – it may be instructive for this Court to consider the Supreme Court's treatment of other Congressional statutes that have purported to subject states to suit. Since *Boerne*, the Supreme Court has applied the holdings in *Boerne* and *Seminole Tribe* to such statutes on four occasions. Specifically, the Court has applied the *Boerne* and Seminole Tribe holdings in: (1) *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 507 (1999); (2) *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund*, 527 U.S. 666 (1999); (3) *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), and in *Alabama v. Garret*, 531 U.S. 356 (2001). In each instance, the Court found that the laws at issue exceeded Congress's power under § 5.

The holdings in *Florida* Prepaid and in *College Savings* are particularly instructive because they involved the invalidating of intellectual property "Remedy Clarification Acts" virtually identical to the CRCA. In *Florida Prepaid*, the Supreme

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1  Court invalidated the Patent and Plaint Protection Remedy Clarification Act under

2  both Congress's Article I powers and § 5 of the Fourteenth Amendment and in

3  *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund*

4  the Court invalidated the Trademark Remedy Clarification Act on the same basis.

5  Judicial consistency mandates that courts treat copyrights - and the CRCA -

6  similarly.

7  While not speaking to the intellectual property domains, *Kimel v. Florida*

8  *Board of Regents* and *Alabama v. Garret* further illustrate the Supreme Court's

9  current stance on the diminishing scope of § 5. In *Kimel*, the Court held that the Age

10  Discrimination and Employment Act, which permitted a plaintiff to sue a state, was

11  not a valid exercise of Congressional power under § 5 of the Fourteenth Amendment.

12  Similarly, in *Garret*, the Court held that Title I of the Americans with Disabilities

13  Act exceeded Congress's scope of power under § 5 of the Fourteenth Amendment

14  where it permitted an individual to sue the state for discrimination. In each of these

15  cases (as well as the two discussed above), the laws at issue were struck down

16  because Congress had failed to identify a clear and pervasive pattern of past

17  constitutional violations committed by the States. Thus, the Court found that

18  permitting states to be sued was not "proportionate" and "congruent" to injuries these

19  statutes sought to prevent.

20  Building upon these cases, at least one appellate court has consistently held

21  that a plaintiff simply cannot hold a state liable for copyright infringement. In

22  *Rodriguez v. Texas Commission* on the Arts, 199 F.3d 279 (5th Cir. 2000) and

23  *Chavez v. Arte Publico Press, supra,* 204 F.3d 601, the Fifth Circuit held that the

24  states may not be sued for copyright infringement under any constitutional grant of

25  power. *Rodriguez* is directly on point. At issue was whether Congress validly

26  abrogated state sovereign immunity pursuant to its Fourteenth Amendment power

27  when it enacted the CRCA. The court, in reliance on *Florida Prepaid*, noted that just

28  as the Patent and Plant Variety Protection Remedy Clarification Act "cannot be

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1  sustained as legislation enacted to enforce the guarantees of the Fourteenth

2  Amendment's Due Process Clause," the CRCA was likewise invalid. *Rodriguez*, 199

3  F.3d at 218. In reaching this decision, the court reasoned that the same result should

4  obtain with respect to copyright because the "interests Congress sought to protect in

5  each statute are substantially the same and the language and the language of the

6  respective abrogation provisions are virtually identical." *Id.*

7       Similarly, the *Chavez* court ruled that the because Congress had failed to

8  identify a pervasive pattern of copyright infringement by the states, the CRCA was

9  not a proportionate remedy and thus, exceeded the scope of Congress's § 5 powers.

10  In reaching this ruling, the court noted that "the legislative history of for the CRCA

11  documents a few more instances of copyright infringement than the PRCA legislative

12  history did of patent violations," the CRCA itself, "exhibits similar deficiencies."

13  *Chavez*, 204 F.3d at 605.

14       Finally, the rulings in *Rodriguez* and *Chavez* are not unique. A number of

15  United States District Courts have similarly recognized that a suit for copyright

16  infringement cannot be upheld against a state. *See Salerno v. City Univ. of N.Y.*, 191

17  F. Supp. 2d 352, 356 (S.D.N.Y. 2001); *Rainey v. Wayne State University*, 26 F. Supp.

18  2d 973, 976 (E.D. Mich. 1998). Certainly, from a policy perspective, this makes

19  senses given that the Supreme Court has already invalidated Congress's efforts to

20  subject states to suit for patent and trademark infringement, and the need for

21  consistency and uniformity in United States intellectual property system. *See*

22  *Florida Prepaid Postsecondary Education, supra* and *College Savings, supra*.

23       Therefore, even though the Ninth Circuit has yet to rule directly on this issue,

24  any argument that the CRCA passes constitutional muster must be rejected as

25  completely lacking in any authority. Accordingly, this Court should find that

26  plaintiff's copyright claim is barred by the principle of state sovereign immunity, and

27  thus must be dismissed.

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

**C.** **Plaintiff's supplemental state law claims are also barred by the Eleventh Amendment.**

**1.** **28 U.S.C. § 1367 Does Not Provide an Appropriate Basis to Assert State Law Claims Against the State in this Court.**

Supplemental state law claims under 28 U.S.C. § 1367 may not be levied against a state in federal court. To this effect, the Ninth Circuit's decision in *Stanley v. Trustees of the California State University*, 433 F.3d 1129 (9th Cir. 2006) is dispositive. The issue in *Stanley* was whether Congress had abrogated sovereign immunity by authorizing supplemental jurisdiction. In affirming the district court's dismissal of Stanley's state law claims, the appellate court took note of the Supreme Court's holding in *Kimel v. Fla. Bd. of Regents*. That case provides that "'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute.'" *Id.* at 1133 (quoting *Kimel*, 528 U.S. 62, 73 (2000)).

The *Stanley* Court also looked to the language of the 28 U.S.C. § 1367 - which is silent as to sovereign immunity - to determine whether it subjected states to suit, and found that § 1367 was a "far cry from the unmistakably clear language required for abrogation." *Id.* at 1133. Finally, the Court looked to whether Congress had exercised any other power that would allow a state to be sued when enacting section 28 U.S.C. § 1367. It concluded that Congress had not, and thus held that "28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims." *Stanley*, 433 F.3d at 1133-34.

As in *Stanley*, MIM asserts several state law claims pursuant to 28 U.S.C.§ 1367(a). Specifically, these are claims of conversion, misappropriation, and a parasitic claim of unfair business practices under Cal. Bus. & Prof. Code §§ 17200 et seq. The Ninth Circuit, however, has pulled the rug out from under these claims: according to the holding in *Stanley*, it is impermissible to assert such claims against

1  an arm of the state, *i.e.* the Trustees, pursuant to 28 U.S.C.§ 1367(a). Therefore,

2  MIM's state law claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

3       **2.     Supplemental State Law Claims May Not Be Brought Against**

4            **a State Officers for Actions Performed in Their Official**

5            **Capacity.**

6       The Supreme Court has held that Federal Courts are barred from enjoining

7  state officers, acting within the scope of their employment, from violations of state

8  law by the Eleventh Amendment. *Pennhurst*, 465 U.S. 89, 121 (1984); *see also*

9  Erwin Chemerinksy, Constitutional Law, Principles and Policies, § 2.10. The Ninth

10 Circuit has expressly recognized this limit and held that supplemental claims asserted

11 against non-consenting state defendants are barred by the Eleventh Amendment.

12 *Cholla Ready Mix, Inc. v. Civish*, 382, F.3d 969, 973-74 (9th Cir. 2004).

13      Here, MIM asserts three state law claims against Rauch, *i.e.* conversion,

14 misappropriation, and a claim for unfair business practices under Cal. Bus. & Prof.

15 Code §§ 17200 et seq. These state law claims are duplicative of those asserted

16 against the Trustees (and are based on the same facts giving rise to plaintiff's claim

17 for copyright infringement). Moreover, as set forth above, Rauch was working in his

18 official capacity when engaging in the conduct giving rise to this lawsuit. (Rauch

19 Decl., ¶¶ 2, 3, 4; LaMaster Decl., ¶¶ 2, 3.) Even though MIM sues Rauch in his

20 individual capacity (and as a public employee), plaintiff fails to identify any conduct

21 Rauch undertook in his individual capacity. Logic dictates that MIM cannot

22 maintain Rauch committed precisely the same act in both an individual and official

23 capacity (especially while simultaneously alleging that those same acts were

24 committed by the Trustees). Simply put, the allegedly wrongful conduct occurred –

25 if at all – in the course Rauch's employment as Director when acting for the benefit

26 of the Trustees. Thus, plaintiff's state law claims against him are barred by the

27 Eleventh Amendment pursuant to the holdings in *Pennhurst* and *Cholla*.

28 Accordingly, they must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

**III.  MIM'S STATE LAW CLAIMS MUST BE DISMISSED BECAUSE**
1

2     **THEY ARE PREEMPTED BY FEDERAL COPYRIGHT LAW.**

3          In addition to the foregoing, MIM's state law claims must be dismissed

4     because they are preempted by § 301(a) of the Copyright Act.  17 U.S.C. § 301(a)

5     provides, in pertinent part, that "all legal or equitable rights that are equivalent to any

6     of the exclusive rights within the general scope of copyright as specified by section

7     106 . . . and come within the subject matter of copyright as specified by section 102

8     and 103 . . . are governed exclusively by this title. . . . [N]o person is entitled to any

9     such right or equivalent right in any such work under the common law or statutes of

10    any state."

11         Here, MIM's state law claims for conversion and misappropriation fall within

12    the purview of § 301 because, as alleged, they involve copyright subject matter as

13    defined by the Copyright Act.  Specifically, MIM's claims for conversion and

14    misappropriation involve the misappropriation of ideas contained in the 2003

15    Survey.  For example, MIM's claim for conversion alleges that the Trustees

16    "interfered with Plaintiff's....intangible ideas" by using the 2003 Survey to create the

17    2004 Survey.  (FAC, ¶¶ 58-59.)  MIM's misappropriation claim similarly alleges

18    that, in creating the 2004 Survey, the Trustees misappropriated MIM's "confidential,

19    proprietary, and trade secret information" that was not "expressly incorporated into

20    the economic impact reports prepared by Plaintiff."  (FAC ¶ 64.)

21         These allegations are similar to those giving rise to the Fourth Circuit's ruling

22    in *U.S. Ex Rel. Berge vs. Trustees of the University of Alabama*, 104 F.3d 1453 (4th

23    Cir. 1997) (cited with approval in *Edemol Entertainment vs. 20th Television*, 48

24    USPQ 2d.1524, 1526 (C.D. Cal. 1998)).  In *Berge*, the plaintiff alleged, under state

25    law, that the defendants had unlawfully converted "ideas" from her doctoral

26    dissertation.  Id. at 1463.  The Court held that "ideas," which are specifically

27    excluded from Copyright Act protection under 17 U.S.C. § 102(a), nonetheless fall

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200

1    under the scope of copyright subject matter and are therefore "clearly preempted by

2    Federal Copyright Law." *Id.*

3        The *Berge* Court dismissed plaintiff's argument to the contrary as resting "on a

4    fallacious interpretation of the Copyright Act." 104 F.3d 1463. The Court said that

5    even though the ideas embodied in a work covered by the Copyright Act fall outside

6    copyright protection, they do not fall outside the Act's scope for preemption

7    purposes. "[S]cope and protection are not synonyms. Moreover, the shadow actually

8    cast by the Act's preemption is notably broader than the wing of its protection." *Id.*;

9    *see also Endemol, supra*, 48 USPQ 2d at 1526 ("The *Berge* holding follows the

10   purpose of § 301(a), which is designed to accomplish the general federal policy of

11   creating a uniform method for protecting and enforcing certain rights in intellectual

12   property by preempting other claims").

13       Here, as in *Berge*, MIM attempts to take two bites of the apple by alleging

14   infringement of the expression contained in the 2003 Survey, and state law claims

15   based on the theft of the ideas, text and concepts giving rise to that expression.

16   Under the *Berge* holding, these allegations fall squarely within the ambit of the

17   Copyright Act, and are thus preempted by 17 U.S.C. § 301(a). They do here as well.

18   Plaintiff has alleged state law claims that do nothing more than redress their

19   prohibited copyright claims. This is prohibited under Section 301(a), and should not

20   be permitted by this Court. While plaintiff may feel "wronged," that does not justify

21   its attempts to circumvent established legal authority. Accordingly, MIM's state law

22   claims must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

# IV. CONCLUSION

Based on the foregoing, defendants the Trustees and Rauch respectfully request that this Court dismiss MIM's First Amended Complaint in its entirety.

DATED:  November 20, 2006          Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By_____
Jonathan Pink
Member of Lewis Brisbois Bisgaard & Smith LLP
Attorneys for Defendant Board of Trustees of
the California State University and
Robert A. Rauch

LEWIS BRISBOIS BISGAARD & SMITH LLP
650 TOWN CENTER DRIVE, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 545-9200