Gregory P. Goonan (Cal. Bar #119821)
**The Affinity Law Group APC**
600 West Broadway, Suite 400
San Diego, CA  92101
Tel:  619-702-4335
Fax:  619-243-0088

Attorneys for Plaintiff
Marketing Information Masters, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marketing Information Masters, Inc., a California corporation,<br><br>          Plaintiff,<br><br>   vs.<br><br>The Board of Trustees of the California State University System, a public entity acting through its subdivision San Diego State University; and Robert A. Rauch, an individual,<br><br>          Defendants. | Case No.  06 CV 1682 JAH (JMA)<br><br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br><br>Date:  January 18, 2007<br>Time:  3:00 p.m.<br>Court:  11  (Hon. John A. Houston) |

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT*

Dockets.Justia.com

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . 6

II.     FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      This Motion Should Be Denied Because SDSU Is Not Immune
                From Being Sued For Copyright Infringement In This Court . . . . . . . . . . . . . . . 12

                        1. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                        2. The Applicable Analytical Framework . . . . . . . . . . . . . . . . . . . . . . . . . 14

                        3. Congress Expressed in "Unmistakably Clear"
                        Language that the CRCA Abrogated State Immunity
                        Under the Eleventh Amendment for Copyright
                        Infringement Lawsuits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                        4. The CRCA is a Constitutional Exercise of
                        Congress' Authority Pursuant to the Enforcement
                        Clause of the Fourteenth Amendment . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 17

                                a. The CRCA was enacted in response
                                to substantial evidence of copyright
                                infringement by the States and
                                their instrumentalities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

                                b. Congress determined there were no
                                available state remedies for copyright
                                infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

                                c. Congress tailored the remedy to be
                                provided by the CRCA to the magnitude
                                of the harm to be prevented . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5. The Supreme Court Decision in *Florida Prepaid*
Does Not Support a Finding that the CRCA
is Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.   Rauch Is Not Entitled To Any Relief By This Motion . . . . . . . . . . . . . . . . . . . . . 22

1. The Declarations Submitted By Rauch Cannot Be
Considered In Connection With This Motion And Should
Be Stricken From The Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2. Rauch Does Not Enjoy Any Immunity From Suit . . . . . . . . . . . . . . . . . . . . . . . 23

3. MIMI's State Law Claims Against Rauch Are Not Preempted . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

Cases:

*American Tobacco Co. v. Werckmeister*, 207 U.S. 284 (1907) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) . . . . . . . . . . . . . . . . . 25

*Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Boerne v. Flores*, 521 U.S. 507 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,18

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

*Florida Prepaid Postsecondary Educational Expense Bd. v. College Savings Bank*,
527 U.S. 627 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Katzenbach v. Morgan*, 384 U.S. 641 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

*Kentucky v. Graham*, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lambert v. City of Kenner*, 1993 WL 99188 (E.D. La. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*New Kids on the Block v. News America Publishing, Inc.*,
971 F.2d 302 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Parks School of Business, Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . 22

*Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988) . . . . . . . . . . . . . . . . . .24

*Roth v. Pritikin*, 710 F.2d 934 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.*,
832 F. Supp. 790 (D.N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Constitution, Statutes and Rules:

U.S. CONST. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. CONST. amend. XIV, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

17 U.S.C. § 301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

17 U.S.C. § 501(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

17 U.S.C. § 511(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


Other Authorities:

5B Wright & Miller, *Federal Practice and Procedure*, § 1337 . . . . . . . . . . . . . . . . . . . . . . . . . 23

Defendants Board of Trustees of the California State University System, acting through and representing its subdivision San Diego State University (hereinafter "SDSU") and Robert A. Rauch ("Rauch") collectively have filed a motion to dismiss the first amended complaint (the "Complaint") of plaintiff Marketing Information Masters, Inc. ("MIMI") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. MIMI hereby respectfully submits this memorandum of points and authorities in opposition to Defendants' motion to dismiss.

I.  **PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT**

As the Court undoubtedly is aware from its own personal knowledge and experience, the use of materials protected by the intellectual property laws of the United States permeates the life of literally every American. Nowhere is this more true than in the academic environment. Indeed, it cannot be seriously disputed that academic institutions like SDSU are major users of materials protected by the US intellectual property laws – and especially the copyright laws.

Literally every day, academic institutions like defendant SDSU use myriad materials protected by copyright in their teaching, research, administrative and business activities. The most obvious example is the use by academic institutions of textbooks, journal articles, and other written and tangible materials as teaching materials in the classroom setting. But the use of copyrighted materials by academic institutions like SDSU goes far beyond just books and other written classroom materials. In this digital age, academic institutions now regularly use multimedia materials, computer materials, music, art and graphics in connection with the teaching, entertainment and recreation of their students. And the academic institutions also use myriad computer programs (such as operating systems, e-mail programs, spreadsheet and accounting programs, databases, etc.) to perform their day-to-day administrative functions.

Imagine a world (and a legal system) where certain academic institutions (like defendant SDSU here) could evade the limitations, protections and liability of the copyright laws that apply to every other business and entity in the United States (including the federal government and its

instrumentalities) simply because of the fortuity that such institutions happen to be state-run institutions. Under such a scenario, state-run academic institutions would be free to operate what are commonly-known as textbook "mills" whereby only one copy of a textbook and/or other written materials would be purchased and then photocopied for all students without the approval or compensation of the copyright owner. Or an institution could purchase one (or a few) copies of a needed computer program (for example, Microsoft Windows, Word, Excel, etc.) and then copy the program onto the computers of as many users as wanted to have access to the programs without obtaining the necessary number of licenses for such use of the computer programs. Or an institution could make unlimited and unrestricted use of artwork, music, sports logos, graphical materials and the like without regard for the copyright protection attached to such materials.

While on first reading the Court may perceive that the scenarios outlined above may be far-fetched, such scenarios describe exactly the danger and harm that would result if the immunity argument made by Defendants as their principal argument in support of the present motion were correct.[1] Under Defendants' view of the world, the states (and therefore their instrumentalities like defendant SDSU) are absolutely immune from liability or suit under the Copyright Act no matter how egregiously or outrageously SDSU might infringe another's copyright rights.[2]

Fortunately for plaintiff MIMI and other copyright owners, the United States Congress identified the specific problems that would result if states were provided with blanket immunity from copyright infringement liability and lawsuits, and enacted express and specific legislation to make crystal clear that the states and their instrumentalities are subject to copyright infringement liability just like any other person or entity who infringes a copyright. Acting pursuant to its authority under the Fourteenth Amendment to the United States Constitution – which authorizes

---

[1] As this Court knows, the federal courts have exclusive jurisdiction over copyright infringement suits so any and all such suits must be brought in federal court. So, in raising its claim of supposed sovereign immunity, SDSU essentially takes the position that it can engage in copyright infringement with impunity, yet never be sued for such infringement because it allegedly enjoys sovereign immunity.

[2] Defendants' immunity argument is especially egregious and hard to swallow when it is considered (as will be shown through the discovery in this case) that SDSU has not hesitated to file suit to protect its own intellectual property rights when SDSU believed infringement or misappropriation had occurred.

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT*

- 7 -

1    Congress to abrogate state immunity when necessary to prevent the taking of property without due

2    process of law (such as occurs in the case of a copyright infringement by a state) – Congress in

3    1990 enacted the "Copyright Remedy Clarification Act (the "CRCA").

4           Critically for purposes of the present motion, the CRCA modified and amended the

5    language of Section 501(a) of the Copyright Act (17 U.S.C. § 501(a)), the statute that creates a

6    federal cause of action for copyright infringement, to make express and absolutely clear that the

7    states and their instrumentalities were subject to federal court copyright infringement lawsuits just

8    like all other persons and entities in the United States.  Likewise, the CRCA added Section 511 to

9    the Copyright Act, which plainly and unambiguously provides that the States and their

10   instrumentalities are not immune from suit for copyright infringement under the Eleventh

11   Amendment.

12          The language of Sections 501(a) and 511 of the Copyright Act subjecting the states and

13   their instrumentalities like SDSU to copyright infringement lawsuits in federal court remains a

14   part of the statutory language of the Copyright Act as of the filing of this opposition.  Critically,

15   the amendments to the Copyright Act that resulted from enactment of the CRCA were expressly

16   approved by the United States Copyright Office and also were universally sought and approved by

17   myriad persons and entities engaged in businesses involving copyrighted materials.[3]

18          Nevertheless, by the present motion, SDSU asks this Court to take the extraordinary step

19   of overriding the will and legislative authority of the United States Congress and declaring

20   unconstitutional the relevant portions of Sections 501(a) and 511 of the Copyright Act.  But as will

21   be discussed below, there is no basis for this Court to override the considered judgment of the

22   legislative branch and declare the CRCA unconstitutional.  On the contrary, in enacting the

23   _____

24   [3]  For example, the following businesses and entities – literally running the gamut of the creative
     endeavors in the United States -- were among the many persons and entities who expressed

25   concern to the Congress about damage to their copyright rights by the states, so they presented
     evidence and testimony to Congress and sought the legislation that ultimately became the CRCA:

26   Association of American University Presses, Inc.; Association of American Publishers, Inc.;
     Software Publishers Association; Broadcast Music, Inc. (BMI); American Journal of Nursing;
     Motion Picture Association of America (MPAA); Harcourt Brace Jovanovich, Inc.; Information

27   Handling Services; Music Publishers Association of the United States; Songwriter's Guild of
     America; and the American Society of Composers, Authors and Publishers (ASCAP).

28

1  CRCA, Congress complied in full with the requirements for the abrogation of the States'

2  immunity under the Eleventh Amendment as explained in the well-settled Supreme Court

3  precedents preceding the CRCA.

4       Because passage of the CRCA was a valid and lawful exercise of Congress' legislative

5  authority, SDSU does not have any sovereign immunity from the present suit since such

6  immunity, to the extent it ever existed at all, has been plainly and expressly abrogated by Sections

7  501(a) and 511 of the Copyright Act.  SDSU's request for dismissal pursuant to FRCP 12(b)(6) on

8  the grounds of sovereign immunity consequently must be denied.

9       Defendant Rauch also seeks dismissal by this motion on the ground that he was an

10  employee of SDSU and thus allegedly is immune to the same extent as SDSU.  MIMI has sued

11  Rauch both in his individual capacity (making this lawsuit a so-called "personal capacity suit"

12  against Rauch) as well as in his potential role as a SDSU employee.  Because this is a 12(b)

13  motion, MIMI's allegations must be accepted as true and Rauch cannot introduce extrinsic

14  evidence in support of the motion.  Consequently, the two declarations submitted by Rauch in

15  support of this motion cannot be considered by the Court and should be stricken from the record.

16       As will be shown below, even if SDSU enjoys sovereign immunity which precludes this

17  suit, such immunity does not shield Rauch from liability for committing copyright infringement

18  himself or for inducing and aiding and abetting SDSU to commit copyright infringement.[4]

19  Likewise, as further discussed below, the state law claims asserted by MIMI against Rauch are not

20  preempted by the Copyright Act because such claims seek to vindicate rights different than rights

21  that can and are protected by copyright.  Consequently, Rauch is not entitled to any relief by this

22  motion.

23  **II.**     **FACTUAL AND PROCEDURAL BACKGROUND**

24       Because the present motion has been brought pursuant to FRCP 12(b)(6), the Court must

25  accept as true all material allegations in MIMI's Complaint, as well as all reasonable inferences

26  _____

[4]  Of course, even if SDSU is immune (which it is not), that does not mean SDSU did not infringe
27  MIMI's copyright.  All it means is that SDSU cannot be sued in federal court for such
     infringement.

28

therefrom. [*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).] The allegations of MIMI's Complaint establish the following facts:

This is an action for copyright infringement, conversion, misappropriation and unfair business practices under federal and California law. As alleged in MIMI's Complaint, for a number of years MIMI and its owner Michael Casinelli performed economic impact studies for the San Diego Holiday Bowl committee and provided the Holiday Bowl with written reports setting forth and discussing MIMI's analysis and conclusions about the Holiday Bowl's economic impact on the San Diego region. [Complaint ¶¶ 2-4; 25-26.]

The written report at issue in this case is MIMI's 2003 economic impact report (the "2003 Report"), which is a work registered under and protected by the copyright laws of the United States. [Complaint ¶ 29.] As alleged in MIMI's Complaint, as least for the 2004 Holiday Bowl (and possibly for subsequent games), the Holiday Bowl committee retained the Center for Hospitality and Tourism Research at SDSU (the "SDSU Center for Hospitality and Tourism Research") to conduct the study of the economic impact of the 2004 game. Defendant Rauch was the individual with primary responsibility for the project. [Complaint ¶¶ 7-9; 30-33.]

Unfortunately, Rauch and SDSU did not develop their own methodology, practices or analysis framework to conduct the 2004 study, analyze the data obtained therefrom, or reach conclusions from such data as they were required to do under the applicable laws. Instead, as explained in MIMI's complaint, Rauch and SDSU obtained a copy of the 2003 Report and then simply (and illegally) misappropriated MIMI's ideas, methodologies, practices and analytical framework to conduct the 2004 study. To further compound their wrongdoing, Rauch and SDSU blatantly and intentionally copied and plagiarized the copyrighted 2003 Report to generate a written report for the Holiday Bowl regarding the 2004 study. [Complaint ¶¶ 10-11; 34-39.]

The actions of Rauch and SDSU were intentional copyright infringement in the extreme, and also constituted the conversion and misappropriation of MIMI's property not covered by the copyright on the 2003 Report.[5] Indeed, as alleged in MIMI's Complaint, MIMI is informed and

---

[5] To make the wrongdoing of Rauch and SDSU even worse, the data and statistics presented by

believes that SDSU conducted an internal investigation about this matter and itself concluded that Rauch was guilty of plagiarism and copyright infringement.

After obtaining federal registration of the copyright in the 2003 Report and complying with the requirements of the California statutes regarding claims against governmental entities like SDSU, MIMI filed its original complaint in this matter on August 18, 2006. [Complaint ¶ 16.] Defendant SDSU responded by a motion to dismiss pursuant to FRCP 12(b). Rauch "joined" in such motion.

As the Court will recall, one of the principal arguments made by SDSU and Rauch in connection with their first motion to dismiss was that MIMI's complaint should be dismissed for lack of subject matter jurisdiction because MIMI had not yet obtained the formal registration certificate for the 2003 Report at the time it filed its original complaint. For the reasons explained in MIMI's opposition to Defendants' earlier motion to dismiss, such argument by Defendants was frivolous and bogus. Nevertheless, in order to resolve any questions about the Court's subject matter jurisdiction, MIMI filed its first amended complaint (the "Complaint") to provide the details of MIMI's copyright registration (which had been issued as of the date of MIMI's opposition to the earlier motion to dismiss).

Following the filing of MIMI's first amended complaint, the Court issued an order denying as moot the earlier motion to dismiss because of the filing of the first amended complaint. MIMI neither expected nor intended such result – it filed the first amended complaint for the sole purposes of eliminating the subject matter jurisdiction argument and dismissing the pendant state law claims against SDSU.

Defendants ultimately responded to the first amended complaint by filing the present

---

Rauch and the SDSU Center for Hospitality and Tourism Research to the Holiday Bowl were false, distorted and over-inflated, and did not accurately reflect the true economic impact of the 2004 Holiday Bowl on the San Diego community. [Complaint ¶ 11.] Such falsification and distortion of the economic data was caused in large part by the fact that Rauch and the SDSU Center for Hospitality and Tourism Research simply copied MIMI's 2003 Economic Impact Report rather than independently performing a legitimate economic impact study and then independently writing a report about such study. [Id.]

1  motion to dismiss, which is nothing but a rehash of the arguments made in the earlier motion to

2  dismiss (with the exception of the subject matter jurisdiction argument).  Unfortunately, however,

3  in rehashing their old arguments, Defendants choose to level accusations at MIMI that are, with

4  due respect, ridiculous.

5       Right from the outset of their memorandum, Defendants opine that the timing of MIMI's

6  first amended complaint "should raise some eyebrows" and accuse MIMI of "pure

7  gamesmanship."  Such accusations are as baseless as they are insulting.  Defendants do not make

8  any attempt to explain why the filing of the first amended complaint was "pure gamesmanship" or

9  should "raise some eyebrows."  The reason why Defendants have not offered any factual support

10  for their unseemly rhetoric is plain and obvious:  As noted, the first amended complaint was filed

11  solely to eliminate the subject matter jurisdiction argument and to benefit SDSU by dismissing the

12  pendant state claims against it.  Had Defendants not made their bogus subject matter jurisdiction

13  argument in the first place, the filing of a first amended complaint would not have been necessary

14  at all.  Certainly, Defendants should not now be complaining about the filing of a pleading that

15  was filed in response to Defendants' own frivolous argument.

16       In any event, the present motion now presents for decision the immunity and preemption

17  arguments that Defendants previously raised by their earlier motion to dismiss.  As discussed

18  below, neither the immunity argument nor the preemption argument has any merit, so this motion

19  should be denied in its entirety.

20  **III.**     <u>**ARGUMENT**</u>

21      A.     <u>This Motion Should Be Denied Because SDSU Is Not Immune From Being Sued</u>

22          <u>For Copyright Infringement In This Court</u>

23       SDSU seeks dismissal pursuant to FRCP 12(b)(6) on the grounds that it is immune

24  pursuant to the Eleventh Amendment from being sued for copyright infringement in federal courts

25  like this one.  As the Court might expect, the question of state sovereign immunity against

26  copyright infringement claims is a complicated issue of constitutional law to which MIMI easily

27  could devote 50 pages to brief.

28       Given the page limitations for briefs under the Court's local rules, MIMI will explain to

the Court as concisely as possible why SDSU in fact does not enjoy the immunity it asserts.

In further support of its opposition to Defendants' motion, MIMI also submits herewith various legislative and administrative materials as Exhibits A through C, which materials provide further detail and analysis why Defendants' immunity argument must fail. The documents submitted as Exhibit A are excerpts from the testimony and evidence submitted to the United States Senate in connection with the Senate's investigation and consideration of the CRCA. The documents submitted as Exhibit B similarly are excerpts from the testimony and evidence submitted to the United States House of Representatives in connection with the House's consideration of the CRCA. Finally, the documents submitted as Exhibit C are excerpts of the Comments submitted to the United States Copyright Office in connection with the Copyright Office's work with the Congress in connection with the CRCA.

If the Court believes that it requires more detailed briefing, MIMI stands ready upon notice from the Court to submit briefing and/or evidence that more extensively deals with the issue of state immunity from copyright infringement lawsuits.

1. Overview

Defendants urge in their moving papers that MIMI's Complaint supposedly "calls on this Court to ignore established authority and adopt a rule of law that permits [MIMI] to sue the State for infringement." Such a statement is inaccurate and turns the applicable analytical framework on its head. The Court does not need to "adopt a rule of law that permits [MIMI] to sue [Defendants] for infringement." In enacting the CRCA, Congress already has enacted and adopted such a rule. As a result of Congress' actions in enacting the CRCA, the plain and unambiguous language of Sections 501(a) and 511 of the Copyright Act expressly authorize MIMI's suit against Defendants.

To be sure, the issue of whether a state can be sued for copyright infringement is a matter of ongoing controversy in the federal courts. Neither the United States Supreme Court nor the Ninth Circuit has ever addressed such issue. Certainly, neither the Supreme Court nor the Ninth Circuit has ever declared the CRCA unconstitutional as Defendants now ask this Court to do.

As Defendants correctly note at pages 11-12 of its memorandum, the Fifth Circuit and a

few federal trial courts have found the CRCA unconstitutional. No other federal appellate court other than the Fifth Circuit has invalidated the CRCA. Equally important, other district courts that have addressed the viability of the CRCA have upheld the constitutionality of Congress' abrogation of state immunity by the CRCA. [*See Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 799 (D. N.J. 1993); *Lambert v. City of Kenner*, 1993 WL 99188 (E.D. La. 1993).]

The *Unix System* case decided by the District of New Jersey dealt with the issue of whether the plaintiff could proceed with copyright infringement claims against the Regents of the University of California. There is no legitimate distinction between the defendant in the *Unix System* case and SDSU here – both the UC system and SDSU are educational institutions operated by the State of California. Critically, the district court in the *Unix System* case found that the CRCA was a valid and constitutional exercise of Congress' power to abrogate state immunity under the Eleventh Amendment for copyright infringement claims, and accordingly allowed the plaintiff to proceed with copyright claims against the University of California that arose after the enactment of the CRCA.

For the reasons discussed below, the cases cited by Defendants in support of this motion were wrongly decided and should not be followed by this Court. Instead, just as the district court did in the *Unix System* case, this Court should reject SDSU's assertion of immunity under the Eleventh Amendment.

    2.    The Applicable Analytical Framework

There can be no dispute that, as a general proposition of law, states and their instrumentalities are immune from suit in federal courts unless there has been consent to suit. But such immunity is not absolute. On the contrary, the law is well-settled that Congress has the authority to abrogate state sovereign immunity by passing appropriate legislation so long as Congress satisfies two requirements. First, Congress must express in "unmistakably clear" language in the legislation itself its intention to abrogate the state's immunity. In addition, Congress must act pursuant to a constitutional grant of power authorizing it to enact the abrogating statute. [*See, e.g. Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *City of Boerne v. Flores*, 521 U.S.

507, 519-20 (1997); _Seminole Tribe of Florida v. Florida_, 517 U.S. 44, 55 (1995).]

In 1985, the Supreme Court issued its decision in _Atascadero State Hospital v. Scanlon_, 473 U.S. 234 (1985), by which the Supreme Court appeared to expand the situations where states could be found immune from suit in federal court. In the 100 years before the _Atascadero_ decision, there were only four published federal decisions in copyright infringement cases involving Eleventh Amendment immunity. However, in the three years following _Atascadero,_ six such suits arose and were all dismissed by the district courts on Eleventh Amendment grounds. In all such cases, the defendant state asserted complete immunity from damages under the federal copyright law, leaving the copyright holders without any remedy for the states' infringement given exclusive federal jurisdiction for copyright infringement cases. [_See_ Copyright Remedy Clarification Act and Copyright Office Report on Copyright Liability of States: Hearings on H.R. 1131 Before the Subcommittee on Courts, Intellectual Property and the Administration of Justice of the Committee on the Judiciary (the "House Hearings"), 101st Congress 51 (1989) (Exhibit B hereto).]

Given this untenable situation, Congress decided that remedial legislation was needed to make crystal clear that the states were in fact subject to copyright infringement lawsuits in federal courts and were not immune from such suits under the Eleventh Amendment. [_See_ The Copyright Clarification Act: Hearing on S. 497 Before the Subcommittee on Patents, Copyrights and Trademarks of the Committee on the Judiciary (the "Senate Hearing"), 101st Congress 1, 10, 52, 54, 61 (Exhibit A hereto.] The result was the passage in 1990 of the Copyright Remedy Clarification Act (the "CRCA"), P.L. 101-553, 104 Stat.2749.

Critically for purposes of the present motion, the CRCA modified and amended the language of Section 501(a) of the Copyright Act (17 U.S.C. § 501(a)), the statute that creates a federal cause of action for copyright infringement, to make express and absolutely clear that the States and their instrumentalities were subject to federal court copyright infringement lawsuits just like all other persons and entities in the United States. Likewise, the CRCA added Section 511 to the Copyright Act, which plainly and unambiguously provides that the States and their instrumentalities are not immune from suit for copyright infringement under the Eleventh

Amendment.

The language of Sections 501(a) and 511 of the Copyright Act subjecting the States and their instrumentalities like SDSU to copyright infringement lawsuits in federal court remains a part of the statutory language of the Copyright Act as of the filing of this opposition. So, in order to prevail on its FRCP 12(b)(6) motion, SDSU must convince this Court to override the will and legislative authority of the United States Congress and declare unconstitutional the relevant portions of Sections 501(a) and 511 of the Copyright Act.

As discussed herein, there is no basis for this Court to override the considered judgment of the legislative branch and declare the CRCA unconstitutional. On the contrary, in enacting the CRCA, Congress complied in full with the requirements for the abrogation of the States' immunity under the Eleventh Amendment as explained in the well-settled Supreme Court precedents preceding the CRCA. Congress clearly and expressly abrogated whatever immunity may have existed in favor of the States for copyright infringement lawsuits in federal court. Congress also validly acted pursuant to its power under the Enforcement Clause of the Fourteenth Amendment in enacting the CRCA.

Because passage of the CRCA was a valid and lawful exercise of Congress' legislative authority, SDSU does not have any sovereign immunity from the present suit since such immunity, to the extent it ever existed at all, has been plainly and expressly abrogated by Sections 501(a) and 511 of the Copyright Act. SDSU's request for dismissal pursuant to FRCP 12(b)(6) on the grounds of sovereign immunity consequently must be denied

> 3. Congress Expressed in "Unmistakably Clear" Language that the CRCA Abrogated State Immunity Under the Eleventh Amendment for Copyright Infringement Lawsuits.

As discussed above, the first step in the inquiry whether legislation passed by Congress abrogating state immunity is a constitutional exercise of Congressional power is whether Congress expressed in "unmistakably clear" language in the legislation itself its intention to abrogate the state's immunity. Here, there cannot be any question or legitimate dispute that the CRCA satisfies this prong of the constitutional inquiry. Section 501(a) of the Copyright Act has long provided

that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . ."  Section 501(b) provides the aggrieved copyright owner may commence a copyright infringement lawsuit against such copyright infringer.

In enacting the CRCA, Congress amended Section 501(a) of the Copyright Act to expressly provide that the term "anyone" in Section 501(a) includes any state and any instrumentality of the state, to the same extent as any nongovernmental entity.  Likewise, in enacting the CRCA, Congress added Section 511 to the Copyright Act.  To the extent that there may have been any doubt whether Congress' amendment of Section 501(a) abrogated state immunity, Section 511(a) expressly provides that the states and the instrumentalities of the state "shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity" from a copyright infringement lawsuit in federal court.

Given the foregoing, the key inquiry in the analysis of the constitutionality of the CRCA is whether Congress acted pursuant to a constitutional grant of power authorizing it to enact the CRCA.  As discussed below, Congress most certainly did so.

4.    The CRCA is a Constitutional Exercise of Congress' Authority Pursuant to the Enforcement Clause of the Fourteenth Amendment

As SDSU correctly explains in its moving papers, the Supreme Court held in _Seminole Tribe of Florida v. Florida_, 517 U.S. 44 (1995) that Congress does not have the power pursuant to Article I of the Constitution to abrogate state immunity.  But such argument completely misses the point, because the CRCA survives constitutional scrutiny as a valid exercise of Congress' power under the Enforcement Clause of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 5.

It has long been settled that Congress has the power under the Enforcement Clause to abrogate state immunity.  [_See_, _e.g._ _City of Boerne v. Flores_, 521 U.S. 507, 519-20 (1997) (Congress has "wide latitude" under Enforcement Clause to enact appropriate legislation to protect Fourteenth Amendment rights); _Katzenbach v. Morgan_, 384 U.S. 641, 651 (1966) (Enforcement Clause authorizes Congress to "exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment").]

Among the guarantees of the Fourteenth Amendment are that no State shall deprive any of its citizens of life, liberty or property without due process of law. The exclusive rights created by and protected under the Copyright Act are "property" rights. [*See American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 291 (1907); *Roth v. Pritikin*, 710 F.2d 934, 939 (2d Cir. 1983); *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992).][6] Consequently, Congress was empowered under the Enforcement Clause to enact the CRCA to protect copyright owners against the taking of their property, i.e., copyright infringement, by the States.

The Supreme Court decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997) is the critical case to the Court's analysis of whether the CRCA was a valid exercise of Congressional power under the Enforcement Clause. As the court explained in *Boerne*, Congress' power under the Enforcement Clause is "remedial" in nature, and Congress does not have the power under the Enforcement Clause to create new rights. [521 U.S. at 519.] But the court also recognized that "the line between measures that remedy . . . and measures that make a substantive change in the governing law is not easy to discern [so] Congress must be given wide latitude [under the Enforcement Clause]." [*Id.* at 519-20 (emphasis added).]

The *Boerne* decision sets forth the analytical framework that federal courts must employ to determine if a statute is sustainable under the Enforcement Clause. As the Supreme Court explained in *Boerne*, "there must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." [*Id.*] To apply this somewhat amorphous principle, the Supreme Court explained that for Congress to invoke the Enforcement Clause, it must identify conduct transgressing the Fourteenth Amendment's protections, and must tailor its legislative scheme to remedying or preventing such conduct. [*Id.*]

The Enforcement Clause analysis required under *Boerne* focuses on three particular issues: (1) the nature of the injury to be remedied; (2) whether there are adequate state remedies to

---

[6] Defendants do not dispute in their moving papers that a copyright is "property" for purposes of the Fourteenth Amendment analysis.

1  address the injury; and (3) the coverage of the legislation.  [*See* *Kimel v. Florida Board of*

2  *Regents*, 528 U.S. 62 (2000).]  As discussed below, the CRCA passes muster under all three of

3  these factors so the CRCA was a valid exercise of Congress' power under the Enforcement

4  Clause.

5                      a.      The CRCA was enacted in response to substantial evidence of

6                              copyright infringement by the States and their instrumentalities

7          As the Court might expect, Congress held substantial hearings regarding the need for and

8  scope of the CRCA before its passage.  The evidence presented to Congress during such hearings

9  unfortunately showed a widespread and growing trend of copyright infringement by the States and

10  their instrumentalities (like colleges and universities).  For example, one witness testified that

11  problems "are clearly widespread and they are clearly increasing."  [Senate Hearings at pp. 106,

12  109.]  A number of witnesses testified about the problems they had enforcing their copyrights

13  against state universities.  [Senate Hearings at pp. 82, 90-91 (addressing illegal copying of

14  copyrighted materials by universities and losses caused thereby); p. 109 (discussing devices

15  created by universities to override copy protections on computer products); House Hearings at p.

16  146 (discussing curious situation where universities typically do not buy multiple copies of

17  computer software as required by copyright law); Senate Hearing at p. 82; House Hearings at pp.

18  104, 106, 148 (discussing illegal university photocopying of copyrighted course books); Senate

19  Hearing at pp. 95, 102.).]

20          Witnesses also testified that copyright infringement problems by the states only increased

21  as the well-publicized budget problems of various states became more severe.  [See House

22  Hearings at p. 92.]  Congress also heard how state agencies increasingly were refusing to license

23  copyrighted works like software and performance works because of the States' perceived Eleventh

24  Amendment immunity.  [See Senate Hearing at pp. 69-70, 77; p. 152; pp. 95, 102.]  Even state

25  university representatives themselves admitted that the widespread evidence of state copyright

26  infringement and invalid assertions of Eleventh Amendment immunity as such circumstances

27  existed at the time of the hearings about the CRCA could justify abrogation.  [See Senate Hearing

28  at p. 131; House Hearings at p 179.]

In connection with its consideration of and deliberations about the CRCA, Congress also commissioned the Copyright Office to obtain information and comments about Eleventh Amendment immunity issues in the copyright field. The Copyright Office in turn issued a request for information to the copyright community to discuss state immunity and the problems that might be caused thereby. Excerpts of some of the comments and information submitted to the Copyright Office in response to its request are submitted herewith as Exhibit C. Such comments and information provide additional insightful and highly probative evidence of the need for the abrogation of state immunity for copyright claims that ultimately was brought about by the enactment of the CRCA.

Simply put, Congress had more than ample evidence of widespread and increasing copyright infringement and improper assertions of Eleventh Amendment immunity by the states that Congress believed needed to be remedied by the enactment of the CRCA. Congress accordingly more than amply satisfied the first *Boerne* factor in enacting the CRCA.

> b. Congress determined there were no available state remedies for copyright infringement

Congress also carefully considered the availability of state remedies for copyright infringement as part of its deliberations about the CRCA. Congress concluded that there was not a single state that had any remedy for copyright infringement. This is no surprising giving the fact that the federal courts have exclusive jurisdiction over copyright infringement lawsuits pursuant to 28 U.S.C. 1338(a). [See Senate Hearing at pp. 7, 66; House Hearings at p. 79.] Moreover, as previously discussed, following the Supreme Court's decision in *Atascadero Hospital*, there was an explosion of copyright litigation whereby states had infringed copyrights but attempted to avoid liability on the basis of alleged Eleventh Amendment immunity.

As can be seen, at the time it enacted the CRCA, Congress was faced with a situation where there was no remedy available whatsoever to copyright owners whose copyrights had been infringed by states or their instrumentalities. Congress consequently reasonably exercised its power under the Enforcement Clause to abrogate state immunity in order to create a remedy against states who deprive their citizens of their property without due process by engaging in

copyright infringement.

               c.        <u>Congress tailored the remedy to be provided by the CRCA to the</u>
<u>magnitude of the harm to be prevented</u>

      In enacting the CRCA, Congress did nothing more than extend the remedies already available under the Copyright Act against private and non-governmental parties to the states and their instrumentalities.  In enacting the CRCA, Congress did not create any type of new or enhanced right against the states or rights against the states that were different or greater than the rights against private parties.  Moreover, because of the nature of copyright infringement, i.e., the unlawful use of copyrighted materials, Congress did not create any remedy that was esoteric or difficult to understand.

      In summary, Congress, in the exercise of the discretion and wide latitude granted to it to enforce the protections of the Fourteenth Amendment, found that making damages remedies available against the States was necessary to remedy state copyright infringement.  [See H. Rep. No. 101-282(I) at pp. 8-9.]  Such exercise of its discretion was amply and fully supported by fact and the evidence adduced by Congress during its hearings on the CRCA, and is eminently constitutional.

              5.      The <u>Supreme Court Decision in *Florida Prepaid* Does Not Require a</u>
<u>Finding that the CRCA is Unconstitutional</u>

      In *<u>Florida Prepaid Postsecondary Educational Expense Bd. v. College Savings Bank</u>*, 527 U.S. 627 (1999), the Supreme Court found that an amendment to the Patent and Plant Variety Act called the "Patent Remedy Act" that was enacted by Congress to abrogate state immunity under such statute was not a valid exercise of Congress' authority under the Fourteenth Amendment. Such decision does not mandate that the Court likewise invalidate the CRCA and grant SDSU's motion to dismiss.

      This is so because, as discussed in detail above, in passing the CRCA Congress did everything that the *Florida Prepaid* court found lacking when it invalidated the Patent Remedy Act.  As discussed herein, unlike the situation with the Patent Remedy Act, Congress identified a widespread and increasing pattern of state copyright infringement.  Congress considered the

1    availability of recourse under state law (which, as discussed was totally non-existent), and it

2    tailored the CRCA to remedy the specific problem of state copyright infringement it identified.

3         Simply put, in enacting the CRCA, Congress acted at least as prudently and carefully – if

4    not more prudently and carefully – as it has in the past in enacting legislation ultimately found by

5    the Supreme Court to be valid exercises of Congress' power under the Enforcement Clause.  [*See,

6    e.g., Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Katzenbach v. Morgan*, 384 U.S. 641 (1966).]

7    Thus, the decision in *Florida Prepaid* does not provide any basis or reason for this Court to

8    invalidate the CRCA.[7]

9         B.    Rauch Is Not Entitled To Any Relief By This Motion

10        Rauch's motion to dismiss is made pursuant to FRCP 12(b)(6).  Because this is a FRCP

11   12(b) motion, the Court must accept as true all material allegations in MIMI's Complaint, as well

12   as all reasonable inferences therefrom.  [*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).]  The

13   Complaint must be construed in the light most favorable to MIMI, and dismissal may not be

14   granted unless it appears "beyond doubt" that MIMI can prove no set of facts in support of its

15   claims.  [*See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).]

16        Defendant Rauch seeks dismissal of the claims against him on two grounds: (1) that he

17   allegedly also enjoys immunity from suit under the Eleventh Amendment because he supposedly

18   was an employee of SDSU; and (2) MIMI's state law claims against Rauch supposedly are

19   preempted by the Copyright Act.  As discussed below, neither of Rauch's arguments has any

20   merit.  Even if SDSU is immune under the Eleventh Amendment, such immunity does not extend

21   to acts of copyright infringement done by Rauch individually.  Moreover, because MIMI's state

22   law claims seek to vindicate rights that are not within the scope of the Copyright Act, such claims

23   are not preempted. Rauch's motion for dismissal accordingly should be denied in its entirety.

24

25   _____
     [7]  Indeed, in his dissent in *Florida Prepaid,* Justice Stevens specifically commented that the
26   CRCA was different that the Patent Remedy Act at issue in *Florida Prepaid* because of the
     evidence adduced by Congress during its deliberations about the CRCA, and consequently
27   concluded that the CRCA was appropriate legislation under the Enforcement Clause.  [*See Florida
     Prepaid*, 527 U.S at 659 n.9 (Stevens, J., dissenting).]
28
     _____
     *PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT*

1           1.      The Declarations Submitted By Rauch Cannot Be Considered In

2                  Connection With This Motion And Should Be Stricken From The Record

An important aspect of practice under FRCP 12(b)(6) is that a court cannot rely upon extrinsic evidence (other than matters subject to judicial notice and matters of public record) in considering a FRCP 12(b)(6) motion.  [See 5B Wright & Miller, *Federal Practice and Procedure*, at section 1337.]  In direct violation of this fundamental rule of FRCP 12(b)(6) practice, Rauch has submitted two declarations in support of this motion, in what appears to be a blatant and improper attempt to circumvent the allegations of MIMI's Complaint and convert this motion into a thinly-disguised motion for summary adjudication.

Such tactic cannot and should not be countenanced.  Because the declarations filed by Rauch constitute extrinsic evidence that attempts to contradict the allegations of MIMI's Complaint, such declarations cannot be considered by the Court in connection with this motion and should be stricken from the record.

2.      Rauch Does Not Enjoy Any Immunity Here

MIMI has sued Rauch both in his individual capacity (making this lawsuit a so-called "personal capacity suit") as well as in his potential role as a SDSU employee.  [Complaint ¶ 21.] Because this is a 12(b)(6) motion, MIMI's allegations must be accepted as true and Rauch cannot introduce extrinsic evidence in support of the motion.  In other words, MIMI's allegations that Rauch acted in his individual capacity in infringing, and aiding and abetting and inducing the infringement of, MIMI's copyright must be accepted as true.

Even if SDSU enjoys sovereign immunity which precludes this suit against it (which it does not), such immunity does not shield Rauch from personal liability for committing copyright infringement himself or for inducing and aiding and abetting SDSU to commit copyright infringement.[8]

Personal capacity lawsuits like the present one against Rauch "seek to impose personal

_____

[8]  For the reasons discussed herein, SDSU is not immune from this suit.  Rauch consequently likewise enjoys no immunity for acts taken in his official capacity (if any) for the same reasons.

liability upon a governmental official for actions he takes under color of state law." [_Kentucky v._ _Graham_, 473 U.S. 159, 165 (1985).] Such suits do not violate the Eleventh Amendment. [_Id._] Simply put, the possible award of monetary damages for copyright infringement against Rauch – which there is no reason to assume he could not pay – does not implicate any Eleventh Amendment concerns that may apply to the claims against SDSU. [_Richard Anderson_ _Photography v. Brown_, 852 F.2d 114 (4th Cir. 1988).]

The Fourth Circuit decision in _Richard Anderson Photography_ is squarely on point in demonstrating that Rauch does not enjoy any Eleventh Amendment immunity regardless of whether SDSU has such immunity (which it does not).

In _Richard Anderson Photography_, the plaintiff sued Radford University, an educational instrumentality of the Commonwealth of Virginia, and Deborah Brown, Radford's director of public information and relations, for copyright infringement for making unauthorized use of the plaintiff's copyrighted photographs. Given that the lawsuit was filed before passage of the CRCA, the court found that Radford was entitled to immunity from such suit.

The claims against Brown were against her in her official capacity as well as in her individual capacity. The court found that Brown was not entitled to any immunity for acts of copyright infringement taken in her individual capacity, even if such copyright infringement was done in the course and scope of Brown's employment. [_See_ 852 F.2d at 122.] In so holding, the Fourth Circuit explained, in language squarely on point here, that "the mere fact that [Brown's] conduct was undertaken in the course of her state employment does not of course relieve her of individual liability, even if her employer could not be sued for it [because of immunity]. A state may no more than an individual principal give its agent authority to commit torts without civil recourse . . . Brown is therefore amenable to suit in her individual capacity for the claimed copyright violation." [_Id._ (emphasis added).]

Just as was true in _Richard Anderson Photography_, Rauch cannot claim and is not entitled to any immunity for acts of copyright infringement taken in his individual capacity, even if such acts of copyright infringement were done in the course of Rauch's employment by SDSU. MIMI's Complaint specifically and expressly alleges claims against Rauch against Rauch in his

1  individual capacity.  [Complaint ¶ 21.]  Consequently, just as was done in _Richard Anderson_

2  _Photography_, this Court should reject any claim of immunity by Rauch.

3           2.    MIMI's State Law Claims Against Rauch Are Not Preempted.

4           The preemption argument made by Rauch is based on a fundamental misinterpretation of

5  the nature and basis of MIMI's state law claims.[9]  Preemption exists only as state law claims based

6  upon rights that are the equivalent to the exclusive copyright rights protected under the Copyright

7  Act.  [17 U.S.C. § 301(a).]  Section 301(a) preempts a state law claim only when (1) the particular

8  materials or work addressed by the state law claim fall within the type of works protected by the

9  Copyright Act under Sections 102 and 103 of the Copyright Act (the so-called "subject matter"

10 requirement); and (2) the state law claim seeks to vindicate legal or equitable rights that are

11 equivalent to rights already protected by copyright law under Section 106 of the Copyright Act

12 (the so-called "general scope" requirement).  [_See, e.g., Briarpatch Ltd. V. Phoenix Pictures, Inc._,

13 373 F.3d 296, 305 (2d Cir. 2004).]  The foregoing test is known as the "extra element" test – a

14 state law claim will not be preempted if it deals with subject matter not within the scope of the

15 Copyright Act or if it otherwise includes any "extra elements" that make it qualitatively different

16 from a copyright claim.  [_See id_.]

17          Here, MIMI's state law claims against Rauch are based on the misappropriation and

18 conversion by Rauch of things such as MIMI's methodologies for evaluating the economic impact

19 of sporting events, questionnaires developed by MIMI to evaluate the impact of the Holiday Bowl,

20 work papers generated by MIMI when it did economic impact studies for the Holiday Bowl, and

21 other intangible property and ideas.  [Complaint ¶¶ 58-60, 64-68, 74-79.]

22          So, reduced to their essence, MIMI's allegations are that Rauch stole two separate and

23 distinct types of property from MIMI.  First, Rauch pirated and misappropriated MIMI's

24 _____

25 [9]  It appears that SDSU also is seeking dismissal of MIMI's state law claims.  However, as MIMI
   indicated in its opposition to the earlier motion to dismiss, MIMI agrees that the state law claims
   against SDSU (but only against SDSU) can be dismissed, so long as such dismissal is without
26 prejudice.  MIMI believes it already effected the dismissal of its state law claims against SDSU
   when it filed the first amended complaint.  But if such dismissal is not clear, MIMI will agree to
27 file a further amended complaint to better clarify that SDSU is not a named defendant on the state
   law claims.

28

1  copyrighted 2003 Report to create the infringing 2004 economic impact study.  Such wrongful

2  conduct clearly falls within the exclusive jurisdiction of the Copyright Act and Is not addressed by

3  MIMI's state law claims.

4          But as alleged in MIMI's Complaint, Rauch also stole and misappropriated MIMI's

5  methodologies for evaluating the economic impact of sporting events, questionnaires developed

6  by MIMI to evaluate the impact of the Holiday Bowl, work papers generated by MIMI when it did

7  economic impact studies for the Holiday Bowl, and other intangible property and ideas.  None of

8  this property is the subject of copyright protection.  Indeed, unlike the situation in the _Berge_ case

9  cited in SDSU's motion, the property stolen and misappropriated by Rauch that is not covered by

10  copyright is not simply the "ideas" embodied in the copyrighted work, but actually property that is

11  separate and distinct from the copyrighted content in the 2003 Report.

12          Simply put, because the property that is the subject of MIMI's state law claims against

13  Rauch is not property that is the "equivalent" of rights protected under the Copyright Act, there is

14  no preemption.

15          It also must be remembered that Rauch is raising his preemption defense in the context

16  of a FRCP 12(b)(6) motion.  Obviously, the identity and nature of the property that is the subject

17  of MIMI's state law claims will be the subject of substantial discovery and proof by evidence.  At

18  this stage of this case, the Court must accept as true MIMI's characterization of the property that is

19  addressed by MIMI's state law claims.  If, after discovery, Rauch still believes preemption exists,

20  he can bring a summary judgment motion.  But for now, accepting the allegations of MIMI's

21  Complaint as true and drawing all favorable inferences from such allegations in favor of MIMI as

22  the Court must in the context of a FRCP 12(b)(6) motion, Rauch's preemption argument must be

23  rejected.

24

25

26

27

28

In the event the Court believes that MIMI's Compliant does not show clearly enough why the state law claims are not preempted, MIMI requests leave to file an amended complaint to provide more detailed allegations about the nature of the property addressed by the state law claims, and more detailed allegations showing why there is no preemption.

DATED: January 4, 2007                    THE AFFINITY LAW GROUP APC


                                          By:  _____*/s/ Gregory P. Goonan*_____
                                               Gregory P. Goonan
                                               Attorneys for Plaintiff
                                               Marketing Information Masters, Inc.


### Certificate of Service

The undersigned hereby certifies that on this 4th day of January 2007, a true and accurate copy of the attached document was electronically filed with the Court, to be served by operation of the Court's electronic filing system, upon the following:

          Jonathan S. Pink, Esq.
          Lewis Brisbois Bisgaard & Smith LLP
          650 Town Center Drive, Suite 1400
          Costa Mesa, CA  92626
          Attorneys for Defendants



                                          __*/s/ Gregory P. Goonan*__