copyright, even by a state agency.  82 Op. Att'y Gen. Fla. 148.[5/]

Not only have state Attorneys General consistently advised state agencies that they <u>are</u> subject to the copyright laws, but state governments have for years been paying royalties for their use of copyrighted materials.

However, following the United States Supreme Court's decision in <u>Atascadero State Hospital</u> v. <u>Scanlon</u>, 473 U.S. 234 (1985), which held that Congress must express its intent to abrogate states' Eleventh Amendment immunity expressly on the face of a statute, several district courts have denied copyright owners the damage remedy against the states afforded under the Copyright Act of 1976, 17 U.S.C. § 101 <u>et seq.</u>; <u>id</u>. § 504.[6/]  NMPA, MPA and SGA (as well as

---

5/    The Florida opinion cited <u>Mills Music</u> for the proposition that states may be sued for copyright infringement. The Attorney General of California has also cited <u>Mills Music</u> in advising that states can be held liable for damages to copyright holders.  64 Op. Att'y Gen. Cal. 186 (1981).

6/    There are currently four district courts which, citing the Eleventh Amendment, have found that states and state entities cannot be sued for damages under the Copyright Act.  <u>BV Eng'g</u> v. <u>University of California</u>, 657 F. Supp. 1246 (C.D. Cal. 1987); <u>Richard Anderson Photography, Inc.</u> v. <u>Radford Univ.</u>, 633 F. Supp. 1154 (W.D. Va. 1986); <u>Woelffer</u> v. <u>Happy States of Am., Inc.</u>, 626 F. Supp. 499 (N.D. Ill. 1985); <u>Mihalek Corp.</u> v. <u>Michigan</u>, 595 F. Supp. 903 (E.D. Mich. 1984), <u>aff'd on</u>
(Continued)

numerous other _amici_ _curiae_) have argued on appeal of these cases that Congress _has_ expressed its intent to subject the states to copyright infringement suits in the language of the statute. The Sixth Circuit, in _Mihalek_, did not reach the Eleventh Amendment question,[7] and as of the time of this

---

(Continued)
  other grounds, 814 F.2d 290 (6th Cir.), cert. denied, 56 U.S.L.W. 3414 (1987). But see Johnson v. University of Virginia, 606 F. Supp. 321 (W.D. Va. 1985) (states subject to suit under 1976 Copyright Act) (before Atascadero). In addition, as noted in footnote 3, a Florida district court erroneously extended the Eleventh Amendment to bar a suit for injunctive relief against state officials. See Cardinal Industries, Inc. v. Anderson Parish Assoc., No. 83-1038, Slip Op. (M.D. Fla. Sept. 6, 1985), aff'd without opinion, 811 F.2d 609 (11th Cir.), cert. denied, 108 S. Ct. 88 (1987).

  The district court in BV Eng'g v. University of California felt that it was compelled to hold, however reluctantly, in light of Atascadero, that the state could not be sued pursuant to the Copyright Act.

    The court is reluctant to reach the conclusion that Mills Music no longer obtains. Were the Court free to do so, it would hold otherwise, since it believes the view expressed by Judge (now Chief Justice) Lucas in the Mills Music case to be sound. In the copyright, trademark, and patent area, it seems reasonable that an intention to bind the States should be implied, particularly in view of the circumstance that the federal courts are the only place where federal copyrights may be enforced (federal court jurisdiction being exclusive under 28 U.S.C. § 1338(a)).

  657 F. Supp. at 1250.

7/ Mihalek Corp. v. Michigan, 559 F. Supp. 903 (E.D. Mich. 1984), aff'd on other grounds, 814 F.2d 290 (6th Cir.), cert. denied, 56 U.S.L.W. 3414 (1987).

submission, the Fourth Circuit in <u>Richard Anderson Photog-
raphy</u> and the Ninth Circuit in <u>BV Eng'g</u> have yet to rule on
the issue.[8]

The legal trend represented by these cases would
allow government instrumentalities to utilize the creative
and scientific works of others -- from popular songs to
modern symphonies, from the latest movies to lengthy literary
manuscripts, from computer software to patented machinery --
all without having to fear a damage suit for failure to pay
royalties, as every other user would. If the trend of
adverse district court decisions continues and is upheld, the
states will stop paying royalties for their use of copyrighted
materials and copyright owners will be left without recourse
for damages against infringing states.

Because copyright suits can be brought <u>only</u> in
federal courts (28 U.S.C. § 1338(a)), the precise effect of
these recent rulings is to grant the states a sweeping
license to utilize all copyrighted works with impunity -- at
least until each copyright owner discovers ongoing infringe-
ment and can obtain an injunction against future use.[9] In

_____

8/ No appeal was filed in <u>Woelffer</u> v. <u>Happy States of Am.,
Inc.</u>, 626 F. Supp. 499 (N.D. Ill. 1985).

9/ 28 U.S.C. § 1338(a) provides that "[t]he district courts
(Continued)

these circumstances, an injunction is an imperfect remedy and one which, without the companion remedy of compensation in damages, does little to protect the economic interests of creative writers and musicians. (See _supra_ at pp. 6-8.)

## B. The Possibility of Express Waivers of Eleventh Amendment Immunity

The Supreme Court's Eleventh Amendment decisions recognize that the states may expressly waive their immunity in state legislation or constitutional provisions. See _Welch v. State Dep't of Highways and Transp.,_ ___ U.S. ___, 107 S. Ct. 2941 (1987); _Atascadero State Hospital_ v. _Scanlon,_ 473 U.S. 234 (1985). Thus, the exclusive jurisdiction provisions of the copyright scheme would not present the difficulties noted above if in fact the states had waived the claim of Eleventh Amendment immunity to copyright suits in federal court. In order to find that a state has waived its Eleventh Amendment immunity through constitutional or statutory authorization, the Supreme Court requires an "unequivocal indication" in the relevant state provision that such a waiver has been intended. _Atascadero,_ 473 U.S. at 238 n.1.

---

(Continued)
>   shall have original jurisdiction of any civil action arising under any act of Congress relating to patents . . . copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patents . . . and copyright cases."

But a state's consent to suit in its own courts is not a waiver of the state's Eleventh Amendment immunity, Great N. Life Ins. Co. v. Read, 322 U.S. 47, 54 (1944), nor can a waiver be found in a general declaration that a state entity may sue and be sued. Florida Dep't of Health and Rehabilitative Services v. Florida Nursing Home Ass'n, 450 U.S. 147, 149-50 (1981) (per curiam).

Applying these standards, only one state, Rhode Island, can be said to have expressly waived its Eleventh Amendment immunity to suit in federal court.[10] In contrast, fifteen states have expressly declared that any waiver of sovereign immunity on their part is not to be construed as a waiver of their Eleventh Amendment immunity.[11] Another

---

[10] R.I. Gen. Laws §9-31-1 (1951). On its face the provision does not satisfy the Atascadero test, as there is only a general waiver of sovereign immunity with no mention of an Eleventh Amendment waiver. The Rhode Island Supreme Court, however, in response to a question certified to it by the First Circuit, has interpreted the state's general waiver of immunity to be a waiver of Eleventh Amendment immunity as well. Della Grotta v. Rhode Island, 781 F.2d 343 (1st Cir. 1986). As the final arbiter of state law, the Rhode Island court's interpretation of the state's waiver provision must be accepted as conclusive.

[11] Florida, Fla. Sta. Ann. §768.28(15) (West 1986); Georgia, Ga. Const. art. 1, §2, para. IX; Indiana, Ind. Code § 34-4-16.5-5(d) (1986); Kansas, Kan. Stat. Ann § 75-6116(d) (1986); Maine, Me. Rev. Stat. Ann. tit. 14, § 8118 (1980); Maryland, Md. State Gov. Code Ann. §
(Continued)

fourteen states, while silent as to any specific retention of
Eleventh Amendment immunity, have provided that their state
courts or claim boards have exclusive jurisdiction to hear
claims against the state. 12/

Of the remaining twenty states, thirteen provide
simply that their own courts or claim boards have jurisdic-
tion over claims against the state, with no specific provi-
sion that such jurisdiction is exclusive, 13/ and seven,

(Continued)

> 12-103(2) (1984); Mississippi, Miss. Code Ann. §
> 11-46-5(4) (Supp. 1987); Nevada, Nev. Rev. Stat. §
> 41.031(3) (1986 & Supp. 1987); New Mexico, N.M. Stat.
> Ann § 41-4-4 F. (1978); Oklahoma, Okla. Stat. Ann tit.
> 51, § 152.1 B. (West Supp. 1988); Pennsylvania, 42 Pa.
> Cons. Stat. Ann § 8521(b) (Purdon 1982); South Carolina,
> S.C. Code Ann. § 15-78-20(e) (Law. Co-op. Supp. 1987);
> South Dakota, S.D. Codified Laws Ann. § 3-21-10 (Supp.
> 1987); Tennessee, Tenn. Code Ann. § 9-8-307(f) (1987);
> Texas, Tex. Civ. Prac. & Rem. Code Ann. §§101.102 (Supp.
> 1988), 107.002(a)(11) (Supp. 1988).

12/ Arkansas, Ark Stat. Ann § 19-10-204 (1987); Illinois,
Ill. Ann. Stat. ch. 37, para. 439.8 (Smith-Hurd 1972 &
Supp. 1987); Iowa, Iowa Code Ann. § 25A.4 (West 1978 &
Supp. 1987); Kentucky, Ky. Rev. Stat. Ann. § 44.073(8),
(12) (1986); Louisiana, La. Rev. Stat. Ann § 13:5106 A.
(West Supp. 1987); Michigan, Mich. Comp. Laws Ann §
600.6419(1) (West 1987); Nebraska, Neb. Rev. Stat. §
81-8,214 (1943 & Supp. 1986); New Hampshire, N.H. Rev.
Stat. Ann § 541-B:9 (Supp. 1986); Ohio, Ohio Rev. Code
Ann. § 2743.03 (Baldwin 1984 & Supp. 1987); Utah, Utah
Code Ann. § 63-30-16 (1986); Vermont, Vt. Stat. Ann.
tit. 12 § 5601 (1973); Virginia, Va. Code Ann. §
8.01-195.4 (Supp. 1987); West Virginia, W.VA. Code §
14-2-2 (1985); Wyoming, Wyo. Stat. § 1-39-117 (1987).

13/ Alabama, Ala. Code § 41-9-62 (1975 & Supp. 1987);
(Continued)

although authorizing claims against the state in various
circumstances, are completely silent with regard to the
forums in which such claims may properly be brought.[14]
Nevertheless, under the test of <u>Atascadero</u>, the waiver by
these twenty states of some portion of their sovereign
immunity cannot be construed as a waiver of their Eleventh
Amendment immunity, and in cases both before and after
<u>Atascadero</u>, federal courts have consistently declined to find
that these states have intended any such waiver.[15]

---

(Continued)
> Alaska, Alaska Stat. § 09.50.250 (1962 & Supp. 1987);
> California, Ca. Gov. Code § 955 et seq. (West 1980 &
> Supp. 1988); Connecticut, Conn. Gen. Stat. Ann. §
> 4-160(b) (West 1969 & Supp. 1987); Hawaii, Haw. Rev.
> Stat. §§ 661-1, 662-3 (1985); Idaho, Idaho Code § 6-901
> (1979 & Supp. 1987); Massachusetts, Mass. Ann. Laws ch.
> 258, § 3 (Law. Co-op. 1980 & Supp. 1987); Minnesota,
> Minn. Stat. Ann §§ 3.732(5), 3.736 subd.2 (West 1987);
> Montana, Mont. Code Ann. §§ 2-9-311, 25-2-126 (1987);
> New York, N.Y. Judiciary Code - Court Acts, Court of
> Claims Act. Art. II, § 8 (McKinney 1963); North
> Carolina, N.C. Gen. Stat § 143-291 et seq. (1987); North
> Dakota, N.D. Cent. Code § 32-12-02 (1976 & Supp. 1987);
> Washington, Wash. Rev. Code Ann. § 4.92.010 (Supp.
> 1987).

14/ Arizona, Ariz. Rev. Stat. Ann § 12-821 (Supp. 1987);
Colorado, Colo. Rev. Stat. § 24-10-101 et seq. (1982 &
Supp. 1987); Delaware, Del. Code Ann. tit. 18, § 6511,
and tit. 10, § 4001 (Supp. 1986); Missouri, Mo. Ann.
Stat. § 537.600 (Vernon Supp. 1988); New Jersey, N.J.
Stat. Ann § 59:1-1 et seq. (West 1982); Oregon, Or. Rev.
Stat. §§ 30.260, 30.320 (1985); Wisconsin, Wis. Stat. §
775.01 (1981).

15/ <u>Charley's Taxi Radio Dispatch</u> v. <u>SIDA of Hawaii</u>, (810
(Continued)

Clearly the states have little desire to appear as defendants in federal court. Express waiver of their Eleventh Amendment immunity, either generally or (if it exists) in copyright cases, is not likely. Rather, in recent years at least eleven states have adopted statutory or constitutional provisions expressly retaining their Eleventh Amendment immunity or providing that claims against them can be brought

(Continued)
> F.2d 869, 873-74 (9th Cir. 1987) (no waiver by Hawaii); Minotti v. Lensik, 798 F.2d 607 (2d Cir. 1986) (no waiver by Connecticut); Jones v. Smith, 784 F.2d 149 (2nd Cir. 1986) (no waiver by New York); Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982), cert. denied, 464 U.S. 932 (1983) (no waiver by Alabama); Markowitz v. U.S., 650 F.2d 205 (9th Cir. 1981) (no waiver by Arizona); Riggle v. California, 577 F.2d 579, 585-86 (9th Cir. 1978) (no waiver by California); Skokomish Indian Tribe v. France, 269 F.2d 555 (9th Cir. 1959) (no waiver by Washington); Degidio v. Perpich, 612 F. Supp. 1383, 1389 (D. Minn. 1985) (no waiver by Minnesota); Stewart v. Hunt, 598 F. Supp. 1342, 1351 (D.N.C. 1984) (no waiver by North Carolina); Valley Towing Serv. v. Missouri, 581 F. Supp. 1287 (D. Mo. 1984) (no waiver by Missouri); Pagano v. Hadley, 535 F. Supp. 92 (D. Del. 1982) (no waiver by Delaware); Verner v. Colorado, 533 F. Supp. 1109 (D. Colo. 1982), aff'd. 716 F. 2d 1352 (10th Cir. 1983) (no waiver by Colorado); Knox v. Regents of Univ. of Wisc., 385 F. Supp. 886 (E.D. Wisc. 1975) (no waiver by Wisconsin); Ritchie v. Cahall, 386 F. Supp. 1207 (D. N.J. 1974) (no waiver by New Jersey); Delong Corp. v. Or. State Highway Comm'n, 233 F. Supp. 7 (D. Or. 1964) (no waiver by Oregon). But c.f. Cole v. Alaska Dep't of Transp., 621 F. Supp. 3 (D. Alaska 1984) (Alaska waived Eleventh Amendment immunity for claims based on unseaworthiness), a decision that pre-dated Atascadero and would almost certainly come out the other way today.

only in their own courts.[16/]   It is thus apparent, because
copyright claims can be brought only in federal court, that
if federal copyright laws are to be fully enforceable in a
meaningful way against the states, it must be because Congress
expressly so intended and thus _abrogated_ the states' Eleventh
Amendment immunity in copyright cases.


C.   Congressional Abrogation of
     Eleventh Amendment Immunity

          The Supreme Court[17/] and the lower federal courts[18/]
have long recognized that Congress has the power to _abrogate_

---

16/  Florida (statute amended 1984); Georgia (constitution
     amended 1982); Mississippi (new state tort claim act.
     1984); Ohio (statute amended 1987); Oklahoma (statute
     amended 1984); Pennsylvania (new state tort claim act,
     1980); South Carolina (new state tort claim act, 1986);
     South Dakota (statute amended 1986); Texas (statute
     amended 1987); Virginia (statute amended 1987); Wyoming
     (statute amended 1987).

17/  Welch v. State Dep't of Highways and Pub. Transp.,
     U.S. ___, 55 U.S.L.W. 5046, 5048 (U.S. June 25, 1987);
     Atascadero State Hospital v. Scanlon, 473 U.S. 234
     (1985); Edelman v. Jordan, 415 U.S. 651 (1974);
     Employees v. Missouri Dep't of Pub. Health and Welfare,
     411 U.S. 279 (1973); Parden v. Terminal Ry. 377 U.S. 184
     (1964).

18/  McVey Trucking, Inc. v. Secretary, 812 F.2d 311 (7th
     Cir.), cert. denied, 108 S. Ct. 227 (1987); Gomez v.
     Illinois State Bd. of Educ., 811 F.2d 1030 (7th Cir.
     1987); Doe by Gonzales v. Maher, 793 F.2d 1470 (9th Cir.
     1986); David D. v. Dartmouth School Committee, 775 F.2d
     411 (9th Cir. 1985), cert. denied, 106 S. Ct. 1790
     (1986).

the states' Eleventh Amendment immunity, without their consent, in particular kinds of cases arising under federal law. The only requirement is that Congress' intention to do so be made clear "in unmistakable language in the statute itself." Atascadero, supra, 473 U.S. at 243. As we show below -- and argued in greater detail in the amicus briefs filed in the Fourth and Ninth Circuits[19/] -- Congress has already abrogated the states' Eleventh Amendment immunity in copyright cases by "unmistakable language" in the 1976 Copyright Act. That Act and its legislative history make it plain that Congress clearly intended states to be subject to suit for copyright infringement and made that intent plain on the face of the statute.

Chapter Five of the Copyright Act of 1976 defines "an infringer of the copyright" as "[a]nyone who violates any of the exclusive rights of the copyright owner," and states that the "owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right." 17 U.S.C. §§ 501(a) and (b) (emphasis added). Among the remedies expressly granted to the copyright proprietor against "anyone" who infringes is an action to recover either:

---

19/ See Appendix.

          (1)   the copyright owner's actual damages and any
               additional profits of the infringer . . . or

          (2)   statutory damages. . . .

17 U.S.C. § 504(a).  Thus, as a starting point, it is clear
that Congress has created a remedy against a class of persons
which "literally includes States."  See Edelman v. Jordan,
415 U.S. 651, 672-74 (1974).

         These remedy provisions are not, however, the sum
total of the "language of the statute" which must be scruti-
nized for evidence of congressional intent to abrogate the
states' immunity.  The Supreme Court has only recently
emphasized that "'[i]n expounding a statute, we must not be
guided by a single sentence or a member of a sentence, but
look to the provisions of the whole law.'"  Kelly v. Robinson, -
_____ U.S. _____, 107 S. Ct. 353, 358 (1986) (quoting Offshore
Logistics, Inc. v. Tallentire, 106 S. Ct. 2485, 2494 (1986));
see also McVey Trucking, Inc. v. Secretary, 812 F.2d 311 (7th
Cir.) ("[I]n seeking to construe a statute, we do not view
any provision in isolation.  Rather we seek to understand a
given provision by determining how it fits into the larger
statute of which it is a part.") (emphasis added), cert.
denied, 108 S. Ct. 227 (1987).  In the case of the Copyright
Act, that means looking not only at the remedies sections,
bt also the unmistakable language of the various exceptions
to copyright liability, applicable solely or principally to

state governments, that clearly demonstrate a congressional intent to permit federal court suit against infringing states in the absence of those express exceptions.

Examination of the "statutory language" of these specific exemptions shows clearly that Congress intended states to be otherwise liable for copyright infringement:

• An exemption of particular relevance to NMPA, MPA and SGA is Section 110(6) of the Act, which was debated by Congress at length before enactment.[20/] That section exempts from liability public "performance of a nondramatic musical work by a governmental body" during a fair "conducted by such body." 17 U.S.C. § 110(6). This "state fair exemption" also exempts the states from vicarious liability for copyright infringement by private concessionaires, business establishments, or other persons at state fairs (but does not exempt the actual private infringer from liability).

• Section 601 of the Act exempted from liability for copyright infringement importers of English language books imported "under the authority or for the use, other

---

20/ See, e.g., Hearings on S.597 Subcomm. on Patents, Trademarks and Copyrights of the Committee on the Judiciary, 90th Cong., 1st Sess. (1967), at 31, 625-27, 632-36, 1337-38.

than in schools, of the Government of . . . any State or political subdivision of a State." 17 U.S.C. § 601(b)(3).[21]

•   Likewise, Section 602 explicitly exempts copies which are to be used by a "State or political subdivision of a State" from the general rule that forbids the unauthorized import of copyrighted materials acquired outside the United States.   17 U.S.C. § 602(a)(1).

•   Performance of copyrighted works by teachers or students is immune from suit, if the performance is part of the systematic instructional activities of a governmental body, is done for educational purposes, and is received in a classroom, by the disabled, or by employees of a governmental body as part of their official duties.   17 U.S.C. § 110(2).

•   A "governmental body," entitled under section 110(8) of the Act to transmit copyrighted performances, may make up to ten copies of such performances (17 U.S.C. § 112(d)), as long as the copies are used for certain limited purposes (17 U.S.C. § 112(d)(2)) and no charge is made for any such use (17 U.S.C. § 112(d)(3)).

---

21/   Section 601(b)(3), the "manufacturing clause," by its terms was a temporary provision which terminated on July 13, 1982.   By an amendment on that date, Congress extended its effect until July 1, 1986.   However, the ninety-ninth Congress declined to renew this primarily trade-related exemption.

* A "governmental body" may reproduce certain copyrighted television broadcasts, but if the copies are not destroyed within seven days "<u>such body . . . . shall be deemed to have infringed</u>." 17 U.S.C. § 118(d)(3) (emphasis added).<u>22/</u>

If Congress had intended the states to be alto- gether immune from suit for every kind of infringement, as the court below held, then these carefully-worded -- and, in some cases, extensively debated -- specific exemptions would have been unnecessary.

Congress's intent to include the states among those amenable to damage suits is also "unequivocally express[ed]" (<u>Atascadero</u>, 473 U.S. at 243), in the jurisdictional provi- sion through which the Copyright Act is enforced. As already noted, 28 U.S.C. section 1338(a) gives federal courts <u>exclusive jurisdiction</u> over all copyright suits. Thus, unlike other Supreme Court cases in which Eleventh Amendment immunity

---

<u>22/</u>  The term "governmental bodies" was clearly understood during the drafting and debate of the Copyright Act to include the states and state entities. (<u>See</u> House Comm. on the Judiciary, <u>Copyright Law Revision</u>, "Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law,") 87th Cong., 1st Sess. at 129 (Comm. Print July 1961), expressly noting that the law contained "nothing to prevent <u>governmental bodies, at least of the States</u>, from securing copyright . . . ." (emphasis added)); <u>see also</u> <u>Fitzpatrick</u> v. <u>Bitzer</u>, 427 U.S. 445, 449 and n.2 (1976) (phrase governmental bodies includes States under Title VII).

shielded states from liability -- none of which involved acts
of Congress creating remedies enforceable exclusively in
federal court -- the result of upholding Eleventh Amendment
immunity in copyright cases is to deny the damage remedy
entirely.

Furthermore, the legislative history of the Copy-
right Act reinforces the conclusion that Congress intended to
abrogate the states' immunity.$\underline{23}$/  The legislative history of
the Copyright Act of 1976 is replete with instances in which
Congress focused on the extent to which states and their
agencies utilize copyrighted works and should be liable for
infringement -- as well as the reasons why states should, in
limited instances, be exempt from such liability.  For
example, Senate subcommittee testimony outlined the pervasive
use of copyrighted music at state fairs, and requested that a
specific provision be narrowly tailored to permit this

---

23/ As with any issue of statutory construction, the precise
meaning of language on the face of a statute can and
should be discerned with the aid of legislative history.
To be sure, the statutory language must be
"unmistakable," but legislative history can still serve,
as the Seventh Circuit held in McVey Trucking, Inc. v.
Secretary, to resolve "any lingering uncertainty" that
Congress intended to create a cause of action against
the states.  See McVey, 812 F.2d 311, 324 (7th Cir.),
cert. denied, 108 S. Ct. 227 (1987)).

use.[24/] Neither the senators nor those presenting testimony had the least doubt that states would be fully liable for copyright infringement in these circumstances unless a "state fair" exemption was included in the Copyright Act. Similarly, there was extensive testimony before Congress indicating the need for exemptions permitting certain limited uses of copyrighted material by libraries -- including state institutional libraries,[25/] and by public radio and television stations -- including those owned and operated by state

---

[24/] Copyright Law Revision, Hearings on S. 597, Subcomm. on Patent, Trademarks and Copyrights, Comm. on the Judiciary, 90th Cong., 1st Sess. (1967) (letter of Sen. Frank J. Lausche) at 31; id. (statement of William B. Hartsfield, President, Southeastern Fair Ass'n) at 625; id. (statement of William T. Collins, President, Outdoor Amusement Business Ass'n, Inc.) at 632; id. (letter from Sen. Jennings Randolph at 1337); id. (letter from C. T. Sydenstricker, Secretary-Manager, State Fair of West Virginia) at 1338.

[25/] Copyright Law Revision, Hearings on H.R. 4347, Subcomm. No. 3, House Comm. on the Judiciary, 89th Cong., 1st Sess. (1965) (statement of Dr. Charles F. Gosnell, Chairman, Comm. on Copyright Issues, Am. Library Ass'n) at 459); Copyright Law Revision, Hearings on S. 1361, Subcomm. on Patents, Trademarks and Copyrights, Senate Comm. on the Judiciary, 93rd Cong., 1st Sess. (1973) (statement of Stephen A. McCarthy, Exec. Dir., Ass'n of Research Libraries) at 97; id. (statement of Dr. Edmon Low, Chairman, Copyright Subcomm. of Am. Library Ass'n) at 101; Copyright Law Revision, Hearings on H.R. 2223, Subcomm. on Courts, Civil Liberties and the Admin. of Justice, House Comm. on the Judiciary, 94th Cong., 1st Sess. (1975) (statement of Frank McKenna, Exec. Director, Special Libraries Ass'n) at 213.

institutions.[26/]  Again, there was never any doubt expressed
that, without the exemptions, state instrumentalities operat-
ing in these areas would be otherwise fully liable for
infringement under the Act.  Taken as a whole, the legisla-
tive history removes "any lingering uncertainty" that Congress
intended the states to be amendable to federal court copyright
suits and subject to the full range of remedies available
under the Copyright Act, except where specifically exempted.

One final issue that must be laid to rest is
whether Congress has constitutional authority to abrogate the
states' Eleventh Amendment immunity by acting pursuant to
Article I of the Constitution.  The district court in Richard
Anderson Photography, Inc. v. Radford University, 633 F. Supp.
1154 (W.D. Va. 1986), concluded that "Congress does not have
the power to abrogate the States' Eleventh Amendment immunity
without their consent unless it acts pursuant to § 5 of the
Fourteenth Amendment."  Anderson, 633 F. Supp. at 1158 (W.D.

---

26/  Meeting on Preliminary Draft for Revised U.S. Copyright
Law, House Comm. on the Judiciary, 87th Cong., 1st Sess.
(1963) (statement of Eugene N. Aleinkoff, Nat. Educ.
Television and Radio Center) at 144; Copyright Law
Revision, Hearings on S. 597, Subcomm. on Patent,
Trademarks and Copyrights, Comm. on the Judiciary, 90th
Cong., 1st Sess. (1967) (statement of Edwin G. Cohen,
Exec. Dir., Nat'l Center for School and College
Television) at 991-92; id. (statement of Chalmers H.
Marquis, Exec. Dir., Educ. Television Stations, Nat'l
Ass'n of Educ. Broadcasters) at 1013.

Va. 1986). The Copyright Act was enacted under the Patent and Copyright Clause in Article I. But the Supreme Court has never restricted the abrogation exception to laws enacted under the Fourteenth Amendment; indeed, the Anderson court's assumption is inconsistent with the analysis employed by the Supreme Court in its recent Eleventh Amendment decisions.

In Atascadero, the Court expressly asked whether, if the Rehabilitation Act had been enacted pursuant to Congress' Article I powers, there would be sufficient evidence of Congressional intent to overcome Eleventh Amendment immunity. 473 U.S. at 246-47. Although the Court found no such clear indication, that the question was asked at all demonstrates the Court's belief that Congress may abrogate the states' Eleventh Amendment immunity under its Article I powers. Six months later, in Green v. Mansour, __ U.S. __, 106 S. Ct. 423 (1985), far from suggesting that the abrogation test was restricted to statutes enacted pursuant to Congress' Fourteenth Amendment powers, the Court stated simply that Congress must act "pursuant to a valid exercise of power." Id. at 425. And, most recently, in Welch v. State Dep't of Highways and Pub. Transp., the Court assumed, without deciding, that Congress could abrogate under its Article I powers. __ U.S. __, 55 U.S.L.W. 5046, 5048 (U.S. June 25, 1987) (No. 85-1716). Moreover, in Welch the Court expressly declared that it was not questioning the validity

of its prior holding in <u>Parden</u> v. <u>Terminal Ry.</u>, 377 U.S. 184 (1964), that "Congress has the power to abrogate the States' Eleventh Amendment immunity under the Commerce Clause [U.S. Const., art. I, § 8, cl. 3]." <u>Id.</u> at 5049 n.8.

In <u>McVey Trucking, Inc.</u> v. <u>Secretary</u>, 812 F.2d 311, 323 (7th Cir.), <u>cert. denied</u>, 108 S. Ct. 227 (1987), the Seventh Circuit, after an exhaustive analysis, discerned no intention on the part of the Supreme Court to restrict Congress' abrogation power solely to legislation enacted pursuant to the Fourteenth Amendment. The Seventh Circuit therefore concluded that Congress is empowered to abrogate by legislating under the Bankruptcy Clause of the Constitution, Article I, § 8, cl. 4. $\frac{27}{}$ Likewise, in <u>BV Eng'g</u> v. <u>University of California</u>, 657 F. Supp. 1246, 1248 (C.D. Cal. 1987), the district court agreed with the <u>McVey</u> conclusion that Congress can abrogate state immunity pursuant to any of its plenary powers. <u>See</u> <u>also</u> <u>United States</u> v. <u>Union Gas Co.</u>, 832 F.2d 1343 (3d Cir. 1987) (Congress may abrogate under its Article I commerce clause power).

_____

27/ The <u>McVey</u> court found further support for its conclusion from the fact that Congress vested exclusive jurisdiction in bankruptcy cases in the federal courts -- just as it has in the Copyright Act. <u>See</u> 812 F.2d at 321 n.5.

In the final analysis, there is no sound reason for
limiting Congress' abrogation powers to Fourteenth Amendment
legislation; its original powers under Article I are at least
as critical to the framework of our federal system as its
Fourteenth Amendment powers. As Professor Tribe has noted:

> it remains true after the eleventh amendment . . . that
> Congress, acting in accordance with its Article I powers
> as augmented by the necessary and proper clause, . . .
> can effectuate the valid substantive purposes of federal
> law by . . . compelling states to submit to adjudication
> in federal courts. . . .

Tribe, Intergovernmental Immunities in Litigation, Taxation,
and Regulation: Separation of Powers Issues in Controversies
About Federalism, 89 Harv. L. Rev. 682, 694 (1976). Indeed,
without this power, Congress would remain utterly unable to
implement in a consistent and uniform fashion the very
legislative responsibilities delegated to it under Article I.
Thus, as the Supreme Court itself has previously observed, if
the Eleventh Amendment were construed to bar private suits
seeking to enforce Article I restrictions on state power,
these restrictions would become "nullified and made of no
effect"; Prout v. Starr, 188 U.S. 537, 543 (1903). That is
especially true, as noted, of the uniform national system of
copyrights, with its exclusive federal court jurisdiction.
Accordingly, Congress may abrogate the states' Eleventh
Amendment immunity under its Article I powers. And, as shown
above and in the attached amicus briefs to the Fourth and

Ninth Circuits (4th Cir. Br., pp. 11-25; 9th Cir. Br.,
pp. 10-23), Congress has acted to abrogate that immunity in
suits brought under the Copyright Act of 1976.

## D.    The Future Role of Congress

While we believe that the arguments set forth above
demand reversal of the district court trend, it is possible
that the appellate courts may conclude that Atascadero
requires a more explicit statement of Congressional intent to
abrogate states' immunity than now appears on the face of the
Copyright Act.  That would leave to Congress the problem of
preventing the states from enjoying royalty-free licenses
simply by virtue of the inability of copyright proprietors to
sue them for damages.

There are two legislative solutions which are
theoretically possible -- but only one of which is really
satisfactory and consistent with the history and purpose of
the Copyright Act.  Theoretically, Congress could amend the
Act to remove the exclusive jurisdiction of the federal
courts in copyright suits and thus permit such suits in state
courts where the Eleventh Amendment is no bar.  Or, it could
follow the dictates of Atascadero (as the courts may construe
that decision in the copyright context) by inserting more
"unmistakable language" into the 1976 Act.  For the following

reasons, only the latter solution should be considered in the event that Congress must act to solve the problem.

The exclusive jurisdiction of the federal courts over copyright suits has both constitutional and public policy underpinnings. In order to fulfill the dictates of the Patent and Copyright Clause of the Constitution, Congress, in 1948, granted exclusive jurisdiction to the federal courts over patent and copyright suits. 28 U.S.C. § 1338(a) (as amended Dec. 24, 1970). As the Supreme Court has noted in Goldstein v. California, 412 U.S. 546 (1973), the Patent and Copyright Clause established Congress' exclusive power to provide for a uniform national system of patent and copyright protection. As the Court there recognized, "the objective of the Copyright Clause was clearly to facilitate the granting of rights national in scope," 412 U.S. at 555.

A cornerstone of this uniform system of copyright and patent rights and remedies has been Congress' grant to the federal courts of exclusive jurisdiction over copyright and patent cases. The objective was to keep state courts out of the lawmaking process in these critical spheres. See, e.g., Sears, Roebuck & Co. v. Stiffel & Co., 376 U.S. 225, 231 (1964). Congress has further emphasized its commitment to a uniform national system of copyright protection by enacting section 301 of the Copyright Act, which preempts all state laws covering copyrighted matter eligible for protec-

tion under the Act. 17 U.S.C. §301. Through this Section
and the grant of exclusive jurisdiction, Congress intended to
establish a "single federal system" that "would greatly
improve the operation of the copyright law and would be much
more effective in carrying out the basic constitutional aims
of uniformity and the promotion of writing and scholar-
ship."[28/] Congress wished to "avoid the development of any
vague borderline areas between state and federal protec-
tion."[29/] Thus, the entire structure of the copyright laws
seeks to provide a natural, uniform system of copyright
protection upon which copyright owners depend, see Lemelson
v. Ampex Corp., 372 F. Supp. 708, 711-12 (N.D. Ill. 1974),
and which encourages "people to devote themselves to
intellectual and artistic creation." Goldstein v. Califor-
nia, 412 U.S. 546, 555 (1973). Federal judicial as well as
Congressional control over copyrights is essential to promot-
ing our system of intellectual and creative freedom and
protection.

---

28/  Abrams, Copyright, and Preemption: Constitutional and
     Statutory Limits of State Law Protection, The Supreme
     Court Review 509, 512 (1984) (quoting H.R. Rep. No.
     1476, 94th Cong., 2d Sess. 129 (1976); S. Rep. No. 473,
     94th Cong., 1st Sess. 113 (1975)).

29/  Abrams, supra note 19 (quoting H. Rep. No. 1476, 94th
     Cong. 2d Sess. 130 (1976); S. Rep. No. 473, 94th Cong.,
     1st Sess. 114 (1975)).

Even setting aside for the moment the adverse effects on the development of a uniform body of national copyright law, it is unlikely that if Congress eliminates exclusive federal court jurisdiction, many states would permit claims of copyright infringement to be brought against them even in their own courts. At least nine states have effected only limited waivers of their sovereign immunity, for certain specific claims, and the statutory language of the limited waivers is so narrow that any suits against these states for copyright infringement would be unequivocally barred in their own courts.[30/] Another five states have waived their sovereign immunity in certain circumstances,

---

[30/] Colorado, Colo. Rev. Stat. § 24-10-106 (1982 & Supp. 1987); Delaware, Del. Code Ann. tit. 10, § 4012 (Supp. 1986); Maine, Me. Rev. Stat. Ann. tit. 14, § 8104 (1980); Maryland, Md. State Gov. Code Ann. § 12-104 (1984); Missouri, Mo. Ann. Stat. § 537.600 (Vernon Supp. 1988); New Mexico, N.M. Stat. Ann. § 41-4-4 A. (1978); North Dakota, N.D. Cent. Code §§ 32-12-02, 32-12.1-03 (4.) (1976 & Supp. 1987); Wisconsin, Wis. Stat. § 775.01 (1981); Wyoming, Wyo. Stat. § 1-39-104(a) (1987).

For eight of the states, liability is limited to damages for personal injuries, death, or property damage caused by various specifically enumerated state activities, such as the operation of state vehicles, the maintenance of state highways, etc. The ninth, Wisconsin, has not waived any sovereign immunity for tort claims against the state. Boldt. v. Wisconsin, 101 Wis. 2d 566, 305 N.W.2d 133 (1981) (the Wisconsin waiver statute is a limited waiver, and does not include general tort liability).

but only to the extent of permitting suit understate law;[31]/ since copyright infringement is a claim arising under federal law, it is problematic whether such a claim could be brought against these states in their own courts. Lastly, a number of states provide that claims against them are to be brought not in courts at all, at least in the first instance, but instead in state claims commissions of one sort or another.[32]/ The members of these commissions are often not judges, nor do the commissions necessarily operate under the constraints of state rules of civil procedure, and hence it is highly uncertain whether they are equipped to deal with federal copyright claims and the body of highly specialized law that must be applied in the adjudication of these claims.

---

31/ Florida, Fla. Sta. Ann. § 768.28(1) (West 1986); Idaho, Idaho Code § 6-903 (1979 & Supp. 1987); Kansas, Kan. Stat. Ann. § 75-6103(a) (1986); Oklahoma, Okla. Stat. Ann. tit. 51, § 153 (West Supp. 1988); Texas, Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B) (1986).

32/ See, e.g., Alabama, Ala. Code § 41-9-61 (1975 & Supp. 1987) (Board of Adjustment); Arkansas, Ark. Stat. Ann. § 19-10-201 (1987) (State Claims Commission); Connecticut, Conn. Gen. Stat. Ann. § 4-142 (West 1969 & Supp. 1987) (Commission on Claims); Kentucky, Ky. Rev. Stat. Ann. § 44.070 (1986) (Board of Claims); North Carolina, N.C. Gen. Stat. § 143-291 (1987) (North Carolina Industrial Commission); Tennessee, Tenn. Code Ann. §§ 9-8-101 (1987) (Board of Claims), 9-8-301 (1987) (Tennessee Claims Commission).

All in all, providing state courts with concurrent jurisdiction over copyright suits creates more problems than it solves, and is no answer to the Eleventh Amendment problems posed by the exclusive federal jurisdiction scheme of our national copyright laws.

Thus, the only solution that would be both effective in enforcing a copyright proprietor's rights and consistent with the history and purpose of the Copyright Act is the amendment that we propose, making absolutely clear Congress' intent to abrogate Eleventh Amendment immunity in copyright cases. That would be accomplished by writing into "the face of the statute" a specific provision that unequivocally provides that states are subject to damages suit. To accomplish this, the following language should be added to Section 101 -- the definitional section of the Copyright Act:

> "Anyone" includes all State and local governments and any agency, entity or instrumentality thereof.

In addition, in order to end any dispute about this issue, we suggest that Congress include the following preamble to the enactment amending Copyright Act:

> It is the intention of Congress that State and local governments shall be subject to all provisions of this Act in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including, without limitation, amenability to suit in federal courts for money damages under Chapter 5 of this title, except where specifically exempted by this Act.

Similar language was held to expressly abrogate the
states' Eleventh Amendment immunity under the Comprehensive
Environmental Response Compensational Liability Act (CERCLA).
In that case, the Third Circuit held that CERCLA, as a result
of 1986 congressional amendments, now provides the unmistakably
clear language necessary under Atascadero to enable a plain-
tiff to assert a claim against a state for money damages.
See United States v. Union Gas Co., 832 F.2d 1345 (3rd
Cir. 1987).

## CONCLUSION

While we believe that the current district court
trend of exempting states from copyright liability pursuant
to the Eleventh Amendment cannot withstand legal scrutiny, it
is possible that courts will feel, although incorrectly, that
they have no choice but to follow this disturbing legal
trend. If that should happen, we respectfully submit that,
in order to preserve Congress' intention in the Copyright Act

of 1976 to subject states to liability for damages, Congress

consider amending that Act to affirm explicitly the full

amenability of the states to suit in federal court for

copyright infringement.

Respectfully submitted,

NATIONAL MUSIC PUBLISHERS'
ASSOCIATION, INC.

By _____

Steven B. Rosenfeld, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, New York   10019
(212) 373-3000

Peter L. Felcher
Steven B. Rosenfeld
Marjorie L. Van Dercook

Of Counsel

MUSIC PUBLISHERS' ASSOCIATION OF THE
UNITED STATES, INC.

By _____

Howard L. Wattenberg, Esq.
MARSHALL MORRIS GLINERT POWELL
WATTENBERG & PERLSTEIN
130 West 57th Street
New York, New York 10019
(212) 582-1122

THE SONGWRITERS GUILD OF AMERICA

By _____

Lewis M. Bachman
The Songwriters Guild of America
276 Fifth Avenue, Room 316
New York, New York 10001
(212) 686-6820



American Society of Composers, Authors & Publishers

**Bernard Korman**
GENERAL COUNSEL

(212) 870-7510



GENERAL COUNSEL
OF COPYRIGHT

FEB 0 4 1988

RECEIVED



FEB 01 1988
Comment Letter

RM  8 7 - 5

No. 23

January 29, 1988

Office of the General Counsel
Copyright Office
Library of Congress
Department 100
Washington, DC 20559

> Re:  Request for Information,
>      Eleventh Amendment
>      (Docket No. RI 87-5)

Dear Ms. Schraeder:

Enclosed are ten copies of ASCAP's written comments in the above matter.

Sincerely,

Bernard Korman

BK:t
Encl.

FEDERAL EXPRESS

FEB 01 1988

GENERAL COUNSEL
OF COPYRIGHT

FEB 0 4 1988

RECEIVED

Comment Letter.

RM  87-5

No. 23

Before the
UNITED STATES COPYRIGHT OFFICE
Washington, D.C.

_____
                              )
In the Matter of:             )
                              )
                              )
    REQUEST FOR INFORMATION,   )    Docket No. RI 87-5
    ELEVENTH AMENDMENT         )
                              )
_____)

### COMMENTS OF THE
### AMERICAN SOCIETY OF COMPOSERS,
### AUTHORS AND PUBLISHERS

The American Society of Composers, Authors and
Publishers ("ASCAP") files these comments in response to the
Copyright Office's Request for Information concerning the issue
of states' Eleventh Amendment immunity from suit for money
damages in copyright infringement cases.  52 Fed. Reg. 42,045
(November 2, 1987).

### INTRODUCTION

We believe that sound public policy and the 1976
Copyright Act both support the concept of full state liability
for money damages for copyright infringement, to the same extent
as all other infringers of copyrights are liable.[1]

_____
[1] We recognize, of course, that the 1976 Copyright Act contains
exemptions and compulsory licenses for certain state uses of
copyrighted works.  See, e.g., 17 U.S.C. §110(6) (exemption for
state fairs); §118 (compulsory license for public broadcasting
                                        (footnote continued)

The Copyright Office asked for comments in three
specific areas:

1. "The practical problems relative to the
enforcement of copyright against state governments";

2. "The presence, if any, of unfair copyright or
business practices vis a vis state governments with respect to
copyright issues"; and

3. "The legal interpretation of Eleventh Amendment
immunity in copyright infringement cases."

As to the third area, ASCAP has filed amicus briefs
with other interested parties, in several of the recent cases
mentioned in the Request for Information. One of the parties
with whom we joined, the National Music Publishers Association
("NMPA"), is filing comments specifically addressing the legal
interpretation of Eleventh Amendment immunity in copyright
infringement cases. NMPA's comments reiterate the legal position
set forth in our joint amicus briefs. We support those comments
and, to avoid duplication, refrain from stating them here.

We shall address the first two issues raised by the
Request for Information from the perspective of ASCAP's
experience in licensing state uses of copyrighted music. First,
a brief description, for the record, of ASCAP and its licensing

(footnote continued from previous page)
entities). While we do not believe that such exemptions or
compulsory licenses can be justified as matters of public policy,
Congress has decided otherwise and we do not argue here against
them. Our comments are confined solely to the issue of Eleventh
Amendment immunity.

operations is in order, although we know that this is very
familiar ground for the Copyright Office.

## ASCAP AND ITS LICENSING OPERATIONS

ASCAP is an unincorporated membership association of
approximately 40,000 writers and publishers of copyrighted music.
On behalf of its members, ASCAP licenses the right of nondramatic
public performance of their copyrighted music. ASCAP does so
through nonexclusive, blanket license agreements. All the
license fees collected by virtue of these licenses are
distributed to the members, after deduction of operating expenses
and payments to affiliated foreign performing rights societies.
Distributions are based on a scientifically designed survey of
performances. For a fuller description, see, BMI v. CBS, 441
U.S. 1 (1979).

ASCAP licenses all of the many different types of
nondramatic public performances of copyrighted musical
compositions. Licensed users include radio and television
broadcasters, cable services, bars, grills, taverns, restaurants,
nightclubs, hotels and motels, background music operators and
their subscribers, colleges and universities, skating rinks,
concert promoters and halls, public and private recreational
facilities, theme and amusement parks, and many others.

In many cases, license agreements are negotiated with
representatives of the user industry being licensed (e.g., trade
associations). In every case, ASCAP does not have the final word

in establishing a license fee. Rather, under the terms of the Amended Final Judgment in United States v. ASCAP, Civ. Action No. 13-95 (S.D.N.Y. March 14, 1950), any user who believes the fee quoted by ASCAP is unreasonable may petition the Court for a determination of reasonable license fees. Further, under that Judgment, ASCAP may not discriminate in license fees, terms or conditions, among users who are similarly situated.

## ASCAP'S LICENSING OF STATES

ASCAP has licensed public performances of its members' copyrighted music by states for many years. These performances fall into three groups:

### 1. Colleges and universities:

Following enactment of the 1976 Copyright Act, ASCAP negotiated terms of college and university license agreements with an Educational Task Force representing many college and university groups, and led by the American Council on Education; these agreements have been renegotiated several times over the past decade. There are three types of agreements, each designed for schools with different types of music use, and each of which is offered to all schools:

The one-tier license calls for payment of a single annual license fee based upon the number of full-time equivalent students enrolled. The two-tier license bases the fee on two factors: a per-student fee which is lower than that of the one-tier license, plus a fee for each concert presented where the

performers are paid more than a specified amount. (The fee for each such concert is based upon the seating capacity and highest ticket price.) The minimal user license prices the school's music uses at the same rates charged other, non-school users, for such uses.

Obviously, many colleges and universities are state-run. Approximately 2,100 colleges and universities hold ASCAP licenses.[2] Of these, according to the College Fact Book, approximately 870 licenses are with state institutions.

2. Public broadcasting entities:

Pursuant to 17 U.S.C §118, public broadcasting entities -- noncommercial educational television and radio broadcasting stations -- are entitled to a compulsory license for their nondramatic public performances of copyrighted music. In 1978, the Copyright Royalty Tribunal determined the license fees to be paid to ASCAP by these entities. 43 Fed. Reg. 25,068 (June 8, 1978). In 1982, and again in 1987, ASCAP reached a voluntary agreement with the Public Broadcasting Service ("PBS") and National Public Radio ("NPR") for performances by PBS, NPR and their member stations. In addition, the Tribunal has set compulsory license fees for certain very small, non-NPR noncommercial educational radio stations, to be paid to ASCAP for those stations' performances of works in the ASCAP repertory. 47 Fed. Reg. 57,923 (December 12, 1982); 52 Fed. Reg. 49,010 (December 29, 1987).

---

[2] In some circumstances, a single license with a school may cover several campuses.

Many of the noncommercial educational broadcasting stations covered by the ASCAP-PBS-NPR voluntary license are operated by state entities: For example, according to the Corporation for Public Broadcasting's 1985-1986 Public Broadcasting Directory, 117 noncommercial educational television broadcasting stations were licensed by the FCC to state entities; another 64 were licensed to state colleges or universities; thus, a total of 181 noncommercial educational television stations are run by states or state schools. Many noncommercial educational radio stations (whether NPR members or not) are also run by states or state schools.

3. General licenses:

Various other state entities also perform copyrighted music. These include: concert performances sponsored by state agencies; live and mechanical music at state park facilities; mechanical music used in state office facilities; and uses at state correctional facilities. When such users are found, ASCAP contacts the appropriate state agencies and attempts to license the performances in accordance with applicable license agreements and rate schedules. As is true of most users, it is rare that the user comes to ASCAP to request a license. Rather, ASCAP must seek out users and offer licenses. States are no exception to this rule.

*           *           *

ASCAP's licensing of performances by state colleges and universities, and other state entities, generates about $750

thousand annually. Because of the nature of our public broadcasting license agreement, which calls for a single fee for all uses by PBS, NPR and their member stations (the fee for the five year period 1988-1992 is $13 million), there is no way to ascribe a dollar value to the licensing of state public broadcasting entities.

### PRACTICAL PROBLEMS RELATIVE TO THE ENFORCEMENT OF COPYRIGHT AGAINST STATE GOVERNMENTS

Copyright being an intangible property right and public performances being evanescent, the licensing and enforcement of public performance rights is very difficult at best. Unlike print and recording rights in musical works, the performing right supplier furnishes no tangible "product" which can be withheld from an unlicensed user. The copyright owner of music cannot shut off the "supply" to those who perform without permission.

The only meaningful remedy available to the copyright owner of the pefoming right is the after-the-fact infringement action for monetary damages. It is just this sort of action which those arguing for Eleventh Amendment immunity seek to bar.

Although injunctive relief in suits against states remains available under the Eleventh Amendment in the absence of monetary damages, injunctive relief to protect the copyright in public performances of music would be complicated and costly. The utility and efficacy of licensing through ASCAP, for members and users alike, is premised on the collective, blanket licensing

of the entire repertory. ASCAP's members authorize ASCAP to bring infringement lawsuits in their names. ASCAP is not a party because it is not a copyright owner. ASCAP obtains evidence of infringement by monitoring the user's performances at a time that is, for all intents and purposes, chosen randomly. Thus, when an unlicensed user infringes and is required to pay monetary damages, the particular works involved in the lawsuit have appeared by happenstance: if the evidence of infringement which formed the basis for the lawsuit had been obtained at a different time, different works of different members would likely have been performed.

The monetary damages ASCAP recovers in such suits are not ascribed to the particular works or members involved; rather, the funds recovered go into ASCAP's general fund to defray the costs of licensing and litigating with infringers. When recoveries exceed these costs, the excess is distributed to the membership as a whole in accordance with ASCAP's distribution rules. In essence, then, each ASCAP member has authorized ASCAP to bring suit in his name, but for the benefit of the entire membership. When the infringing user pays monetary damages, those damages offset expenses and in part replace the licensing revenues the ASCAP membership as a whole has lost. The fact that monetary damages are recovered for the infringement of some songs rather than other songs, is fortuitous.

But if monetary damages cannot be recovered, and only injunctive relief is available, the situation changes radically.

-8-

The fact that particular works have been infringed, while the basis for the lawsuit, cannot be used to achieve the desired remedy: the court may award injunctive relief against future performances of only those particular works, or of only the works owned by the particular copyright owner, involved in the suit. To be certain of achieving the result of enjoining future performances of all works in the ASCAP repertory, a class action on behalf of all ASCAP members is necessary. ASCAP has, in appropriate instances, brought such class actions. They are, obviously, more complex procedurally, and hence more expensive to maintain.

Assuming that such injunctive relief were granted, enforcement would be more difficult than enforcing a judgment for monetary damages. When a judgment for monetary damages is ignored, execution is a simple matter. When an injunction is ignored, a motion for contempt would be necessary and would involve the additional expenses of proving performances after the injunction was granted.

In addition, it appears that the injunctive relief granted in such suits would be only against specific individuals, and not the state itself. There is therefore a further severe enforcement problem: if those specific individuals do not participate in further infringements by the state, the injunctive relief may be meaningless.

In sum, fulfilling Congressional intent in this area is relatively simple when monetary damages are available, but far

more complex and difficult when only injunctive relief is available. Experience teaches that if meaningful enforcement of copyright is not possible, licensing will fall by the wayside. It has been ASCAP's experience that the availability of monetary damages in an infringement action is a necessary condition for successful licensing.

THERE ARE NO UNFAIR COPYRIGHT
OR BUSINESS PRACTICES BY ASCAP
VIS A VIS STATE GOVERNMENTS
WITH RESPECT TO COPYRIGHT ISSUES

ASCAP has had no complaints by state users of any "unfair" copyright or business practices. To a significant degree, ASCAP's operations are by definition "fair," as they are governed by the Amended Final Judgment in United States v. ASCAP. The Judgment's mechanism for Court determination of reasonable license fees, and guarantee of non-discrimination, forestall any possible "unfairness" in these crucial areas.

ASCAP also has a history of working with licensees to smooth out any differences and take into account the particular needs of particular users. An example in our licensing of state colleges and universities is on point:

During the term (1978-1979) of the first license agreement negotiated between ASCAP and the Educational Task Force, many state schools asked for modifications of the license agreement which would incorporate into the license certain statutory requirements that state bodies could not enter into contracts which: 1) did not provide for nondiscrimination on the

basis of race, creed, color, or national origin; or 2) ran beyond
the fiscal year for which a state budget had been adopted.

To satisfy these state users' needs, ASCAP built into
the college and university license agreements a specific
provision which allowed for such modifications, and therefore not
only acceded to these state schools' requests, but alerted other
state schools to the issue.

No one can question the proposition that states ought
to pay for every type of property they use and that copyrighted
propety is no exception. We have seen that monetary damages are
an important inducement to compliance with the copyright law. It
follows that states should be liable for monetary damages for
copyright infringement.

## CONCLUSION

We submit that Congressional intent is both clear and based on sound public policy: states are fully liable for monetary damages for copyright infringement. The Copyright Office should report to Congress that no state immunity from monetary damages for copyright infringement under the Eleventh Amendment exists or should exist.

Respectfully submitted,

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

By: *Bernard Korman / BML*

Bernard Korman
General Counsel
ASCAP
One Lincoln Plaza
New York, NY   10023
(212) 870-7510

Of counsel: I. Fred Koenigsberg

Dated:   February 1, 1988