LEWIS BRISBOIS BISGAARD & SMITH LLP
JONATHAN PINK, SB# 179685
JUSTIN M. RIGHETTINI, SB# 245305
650 Town Center Drive
Suite 1400
Costa Mesa, California 92626
Telephone: (714) 545-9200
Facsimile: (714) 850-1030
Email: pink@lbbslaw.com
righettini@lbbslaw.com

Attorneys for Defendants, the Board of Trustees of the California, which is the State of California acting in its higher education capacity, and Robert A. Rauch, an individual

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETING INFORMATION MASTERS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA, WHICH IS THE STATE OF CALIFORNIA ACTING IN ITS HIGHER EDUCATION CAPACITY (erroneously sued herein as THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY SYSTEM, a public entity acting through its subdivision SAN DIEGO STATE UNIVERSITY); and ROBERT A RAUCH, an individual,<br><br>Defendants. | CASE NO. 06CV 1682 JAH JMA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>ACTION FILED: 08/18/06<br><br>Hearing Date: 1/18/07<br>Time: 3:00 p.m.<br>Dept.: 11 |

Defendants, THE BOARD OF TRUSTEES OF THE CALIFORNIA, WHICH IS THE STATE OF CALIFORNIA ACTING IN ITS HIGHER EDUCATION CAPACITY ("Trustees") and ROBERT A. RAUCH ("Rauch") hereby submit this reply brief in support of their Motion to Dismiss the First Amended Complaint of MARKETING INFORMATION MASTERS, INC. ("MIM" or "Plaintiff").

4812-6940-5953.1                                    -1-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

While Plaintiff's Opposition calls for this Court to imagine a regretful world where State-operated academic institutions transgress copyright laws with complete impunity, such is an exercise in futility. For not only does the preceding fail to comport with reality, this dispute is decidedly not about positing what the law should be in light of a fantastical scenario, but rather, what the law is as it now stands. Based on the vast weight of that law, including ample federal decisional authority, and despite Congress's attempt to subject states to suit for copyright infringement, the Trustees and Rauch are entitled to sovereign immunity. Thus, Plaintiff's First Amended Complaint ("FAC") should be dismissed in its entirety.

## II. CONGRESS'S EFFORTS TO SUBJECT STATES TO COPYRIGHT INFRINGEMENT HAS BEEN NULLIFIED BY THE SUPREME COURT OF THE UNITED STATES.

There is simply no dispute that Congress amended the Copyright Act via the Copyright Remedy Clarification Act of 1990 ("CRCA") in an effort to subject the states to suit for copyright infringement. Further, there is no dispute that in compliance with the Supreme Court's holding in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985), Congress made its intention to subject the States to suit for copyright infringement "unmistakably clear" in the language of the CRCA. However, while Congress's efforts may have been valid for a short while, the Supreme Court's holding in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), decisively pulled the rug from beneath the CRCA and rendered it constitutionally infirm. The law is as it now stands does not subject the States to suit for copyright infringement. *See Id.*

In the Opposition, Plaintiff cites two cases in support of its position that the CRCA was valid a exercise of Congressional power: *Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790 (D.N.J. 1993) and *Lambert v.*

*City of Kenner*, 1993 WL 99188 (E.D. La. 1993). In both instances, the courts that heard those cases relied on the Supreme Court's holding in *Pennsylvania v. Union Gas Co*, 490 U.S. 1 (1989) in arriving at their decision. *See Unix*, 832 F. Supp at 798; *Lambert*, 1993 at WL 99188 at *3. Plaintiff curiously neglects to reveal to this Court that the precedent upon which both decisions were predicated was <u>overruled</u> and is no longer good law. The Supreme Court in *Seminole Tribe* expressly overruled *Union Gas Co.*, noting that *Union Gas* had "deviated sharply from [the Court's] established federalism jurisprudence." *Seminole Tribe*, 517 U.S. at 45. Plaintiff's tactic in this regard is both irresponsible and misleading. It must be emphasized that since *Seminole Tribe*, **not a single court in the country has held the CRCA to be a valid exercise of Congressional power**. This Court should not be the first.

## III. <u>THE CRCA DOES NOT SURVIVE CONSTITUTIONAL SCRUTINY UNDER THE ENFORCEMENT CLAUSE OF THE FOURTEENTH AMENDMENT.</u>

Despite Plaintiff's repeated recitations that the CRCA was passed pursuant to § 5 of the Fourteenth Amendment, that conclusion is completely devoid of any authority whatsoever. The reason for this is simple: no court would agree. And while the Supreme Court has not directly ruled on the constitutionality of the CRCA, there is every reason to believe that if confronted with the issue, it would invalidate the CRCA. The reason for this is four-fold.

First, the Supreme Court has already invalidated the efforts of Congress to subject the States to suit for patent and trademark infringement based on statutes nearly identical to the CRCA. *See Florida Prepaid Postsecondary Education Expense board v. College Savings Bank*, 527 U.S. 507 (1999); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund*, 527 U.S. 666 (1999).

Second, if confronted with the issue, the Supreme Court has intimated a ruling that the CRCA does not pass constitutional muster. In *University of Houston, Texas*

4812-6940-5953.1 -3-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*v. Chavez*, 517 U.S. 1184 (1996), the Supreme Court granted the petition for writ of certiorari to consider the Fifth Circuit's ruling in *Chavez v. Arte Publico Press*, 59 F.3d 539 (1995). That case held the CRCA to be valid exercise of Congressional power. The Supreme Court vacated the Fifth Circuit's judgment and remanded *Chavez* for consideration in light of *Seminole Tribe*. The resulting opinion, *Chavez v. Arte Publico Press*, 139 F.3d 504 (1998) held the CRCA <u>unconstitutional</u>. Thus, while the Supreme Court has not expressly held the CRCA to be unconstitutional, its view in this regard is very clear.

Third, the CRCA does not comply with the analytical framework as set forth in *City of Boerne v. Flores*, 521 U.S. 507 (1997). In *Boerne*, the Supreme Court held that Congress acts validly pursuant to § 5 of the Fourteenth Amendment only when it crafts legislation to enforce its provisions. *Id.* at 519. Further, the Court said that the means Congress chooses to enforce § 5 must be congruent and proportional to the injury to be remedied. *Id.* at 520.

The CRCA does not comply with *Boerne* because Congress has not identified a *pervasive* pattern of copyright infringement by the States. (Just because MIM says otherwise does not make it true.) Indeed, no court has found this to be the case. Further, while Plaintiff maintains that *Florida Prepaid* is inapposite on this issue because "in passing the CRCA Congress did everything that the Florida Prepaid court found lacking when it invalidated the [Patent and Plaint Variety Protection Remedy Clarification Act]," this conclusion is not grounded in law. It is not grounded in fact either as Plaintiff offers no *facts* whatsoever to differentiate the Congressional record for the CRCA from the one at issue in *Florida Prepaid*.

In addition, despite Plaintiff's contention that Congress "determined that there were no state remedies for copyright infringement," the Supreme Court in *Seminole Tribe* addressed this very same concern in a series of footnotes contained in the majority opinion. Specifically, the Court concluded that the states' compliance with federal laws can be ensured by the Federal Government bringing suit in federal court

against a State. *Seminole Tribe*, 517 U.S. at 71, n. 14. Further, the Court stated that the doctrine of *Ex Parte Young* remained a viable remedy for addressing violations of federal law.[1] *Id.* at 73, n. 16. In addition, the Court stated that States could always consent to suit. *Id.* at 71, n. 14.

Further, contrary to the *Borne* framework, the CRCA was not narrowly "tailored to the magnitude of the harm to be protected." Congress's § 5 power is purely remedial and does not contemplate expanding existing rights, or creating new ones. *Boerne*, 521 U.S. at 519. Thus, any law passed under § 5, must be narrowly tailored to prevent – or remedy – constitutional violations recognized by the courts. *Boerne*, 521 U.S. at 520. In enacting the CRCA, Congress identified no pervasive pattern of copyright infringement by the states. Therefore, because Congress identified no pervasive pattern of infringement by the states, and because other adequate remedies exist to address such infringement, the CRCA was not "proportionate and congruent," and thus does not pass muster under *Boerne*. *See Chavez v. Arte Publico Press*, 204 F.3d 601, 605 (5th Cir. 2000).

Fourth, in each instance since *Boerne* that the Supreme Court has confronted a law attempting to abrogate sovereign immunity under § 5 of the Fourteenth Amendment, the Supreme Court has <u>invalidated</u> the law at issue. *See Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 507 (1999); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund*, 527 U.S. 666 (1999); *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000); *Alabama v. Garret*, 531 U.S. 356 (2001). In other words, despite the "wide latitude" language that plaintiff continually refers to in *Boerne*, the reality is that the

---

[1] *Ex Parte Young* stands for the proposition that the Eleventh Amendment does not preclude suits against state officers to enjoin violations of federal law. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

scope of § 5 has been consistently limited in every instance since the Supreme Court's holding in that case. [2]

## IV. AT ALL TIME RELEVANT TO THIS LAWSUIT, RAUCH ACTED IN OFFICIAL CAPACITY AND IS THUS, ENTITLED TO SOVEREIGN IMMUNITY.

Under the Supreme Court's holding in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), "the Eleventh Amendment bars a suit against state officials when the state is the real, substantial party interest." *Id.* at 101. Further, the general rule is that relief nominally sought against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* Here, because Rauch was, at all times relevant to this lawsuit, an officer of the Trustees and further because the Trustees commissioned the work at issue, any relief under this suit would come from the state coffers. In other words, the relief nominally sought against Rauch is in fact against the Trustees because any decree by this Court would operate against the latter. Therefore, under *Pennhurst*, Rauch is entitled to sovereign immunity for the claims asserted in this case.

Plaintiff attempts to buttress its argument to the contrary solely on the ground that it sued Rauch in both an individual and official capacity. This makes no difference because MIM has offered no factual support whatsoever for its position that Rauch committed any act that is the subject of this dispute in his individual capacity. Indeed, the FAC admits that "Plaintiff does not know whether Mr. Rauch was an employee of San Diego State University or an outside consultant with whom San Diego State University contracted to perform services" on its behalf.[3] (FAC, ¶

---

[2] Given the current lineup on the Supreme Court, there is every reason to expect this trend to continue.

[3] "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Jackson v. County of Los Angeles*, 60 Cal.App. 4th 171, 181 (1997). "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite."

4812-6940-5953.1  -6-

20). Plaintiff goes on to state in that same pleading that "Mr. Rauch engaged in the wrongful acts alleged herein both in his individual and in his capacity as a public employee." (FAC, ¶ 21).

Plaintiff's allegations in this regard run afoul of the requirements as set forth in Fed. R. Civ. P. 11(b)(3), which states that in "presenting to the court a pleading, written motion, or other paper, an attorney . . . is certifying to the best of that person's knowledge, information, and *belief formed after an inquiry reasonable under the circumstances*, . . . the allegations and other factual contentions have evidentiary support. . . ." (Emphasis added). With respect to this same issue, Plaintiff's claim that the declarations attached to the Motion to Dismiss must be stricken because they constitute "extrinsic evidence" misses the point. While in most circumstances, extrinsic evidence may not be considered on the ruling of a 12(b)(6) motion, the declarations at issue here are simply an attempt to clarify Rauch's status with respect to the Trustees. In other words, they are offered to assist this Court in making its determination as to whether Rauch was acting in his official capacity at all times relevant to this lawsuit. Those declarations operate not as extrinsic evidence but as a substitute for the fact checking and background research that Plaintiff should have performed *itself* in light of the pleading requirements under Fed. R. Civ. P. 11(b).

Finally, MIM flippantly states that, for purposes of ruling on a 12(b)(6) motion, this Court must accept all of its allegations as true. The ruling standards on 12(b)(6) motions are not so austere as Plaintiff would suppose.[4] Certainly such standards do not provide a plaintiff with *carte blanche* to assert anything it wishes in a complaint. Indeed, "[t]he court need not accept as true conclusory allegations or

---

*Id.* (quotations and citations omitted).

[4] Essentially, Plaintiff's argument is as follows: Plaintiff may state anything in its complaint and no matter how unreasonable or far from the truth, the Court must categorically accept same as true for purposes of ruling on a 12(b)(6) motion.

4812-6940-5953.1                              -7-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

legal characterizations. Nor need it accept <u>unreasonable inferences or unwarranted deductions of fact</u>." *Transphase Systems Inc., v. Southern California Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (emphasis added). Here, Plaintiff has offered no facts whatsoever to support its unwarranted deduction that Rauch committed *any* act in his individual capacity. Plaintiff admits its ignorance of such facts in its own pleadings. Simply put, Plaintiff's allegations – which are severely wanting of factual support – do not strip Rauch of his immunity in this case as a matter of law.

## V. THE STATE LAW CLAIMS AGAINST RAUCH MUST BE DISMISSED BECAUSE THEY FALL WITHIN THE PURVIEW OF THE COPYRIGHT ACT AND ARE THUS, PREEMPTED.

A dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is warranted when it is "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Here, Plaintiff's FAC alleges three state law claims against Rauch. Not one of them states sufficient facts to remove them from the purview of the Copyright Act.

Specifically, despite, MIM's reference in its Opposition to the "extra element" test, Plaintiff's FAC states no state law claim that is <u>not</u> equivalent to the rights contemplated in the Copyright Act, *i.e.*, as pleaded these claims have <u>no extra element</u>. Further, Plaintiff's attempts to bolster the FAC by providing in its Opposition additional information that is supposed to undergird its state law claims is unavailing. The FAC is the operative document, and thus the problem with Plaintiff's approach is that a 12(b)(6) motion tests the sufficiency of a *complaint*, not of an Opposition to a motion to dismiss.

Equally problematic, the additional information Plaintiff provides in its Opposition does nothing to show how its state law claims are not preempted. Even after those additional facts, it is still unclear as to what Plaintiff claims the defendants took. Plaintiff mentions methodologies, but has taken care not to identify

4812-6940-5953.1 -8-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

any methodology that defendants wrongfully appropriated. Likewise, Plaintiff claims the defendants took "questionnaires . . . work papers . . . and other intangible property and ideas." However, the value of the questionnaires and work papers is what appears on them, not the physical product itself. That is, these documents embody – and are only valuable to the extent they contain – intellectual property subject to copyright law. As to the "intangible property and other ideas" mentioned in the Opposition, these same intangible items clearly fall within the subject matter of copyright under the Fourth Circuit's ruling in *U.S. Ex Re. Berge vs. Trustees of the University of Alabama*, 104 F.3d 1453 (4th Cir. 1997) (cited with approval in *Edomol Entertainment v. 20th Television*, 48 USPQ 2d. 1524, 1526 (C.D. Cal. 1998), and are thus preempted. In *Berge*, the Court held that "ideas," which are specifically excluded from Copyright Act protection under 17 U.S.C. § 102(a), nonetheless fall under the scope of copyright subject matter and are therefore "clearly preempted by Federal Copyright Law." *Id.*, 104 F.3d at 1463.

Finally, MIM asks this Court for leave to amend its First Amended Complaint to "provide more detailed allegations about the nature of the property addressed by the state law claims." Plaintiff's request should be denied as it has already filed an amended complaint, and thus has now had two opportunities to sufficiently state a claim. Plaintiff's sloppy pleading should not inure to its own benefit. Simply put, Plaintiff has twice failed to state any cognizable state law claims against Rauch and thus those claims should now be dismissed without a third bite at the apple.

///
///
///

## VI. CONCLUSION

For the reasons set forth above Plaintiff's First Amended Complaint should be dismissed with prejudice in its entirety.

DATED: January 10, 2007    Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By_____
Jonathan Pink
Justin M. Righettini
Lewis Brisbois Bisgaard & Smith LLP
Attorneys for Defendants, the Board of Trustees of the California, which is the State of California acting in its higher education capacity, and Robert A. Rauch, an individual