# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKETING INFORMATION MASTERS, INC., a California corporation,<br><br>    Plaintifff,<br>v.<br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY SYSTEM, et. al.,<br><br>    Defendants. | Civil No. 06cv1682 JAH (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Doc. No. 12]** |

On November 20, 2006, Defendant Board of Trustees of California State University ("Board of Trustees") and Defendant Robert A. Rauch (collectively "Defendants") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Marketing Information Masters, Inc. ("MIM") filed an opposition on January 4, 2007. Defendants filed a reply on January 10, 2007. After a thorough review of the parties' submissions, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

## INTRODUCTION

Plaintiff, a California corporation in the business of performing marketing research studies, filed a complaint on August 18, 2006, and an amended complaint ("FAC") on November 8, 2006, alleging copyright infringement, conversion, misappropriation and unfair business practices. The Board of Trustees and Robert A. Rauch, an affiliate with the San Diego State University Center for Hospitality and Tourism Research ("the Center"), were named as defendants. Plaintiff alleges it performed studies of the economic impact of the Holiday Bowl

06cv1682

on the San Diego community which it recorded in written reports protected under copyright laws and provided to the Holiday Bowl organization at fees below market rate. FAC ¶ 4 at 2. Plaintiff prepared a report of the impact of the 2003 Holiday Bowl and provided the report to the Holiday Bowl Committee in February 2004. Id. ¶ 6 at 2. After delivering the report, Michael Casinelli, owner of Marketing Information Masters, notified the organization it would need to pay market rates for any additional impact studies. Id. ¶ 7 at 2. Thereafter, the Holiday Bowl organization contracted with the Center to conduct the impact study for the 2004 Holiday Bowl. Id. ¶ 8 at 2 -3. Plaintiff alleges the Center copied and plagiarized Plaintiff's 2003 report to prepare the 2004 report. Id. ¶ 10 at 3.

## DISCUSSION

Defendants maintain they are entitled to sovereign immunity and seek dismissal of the action in its entirety and further argue the state law claims are preempted by the Federal Copyright Act. Plaintiff opposes Defendants' motion to dismiss on the grounds that state sovereign immunity is abrogated by the Copyright Clarification Act, Defendant Rauch is not entitled to state sovereign immunity, and Plaintiff's state law claims are not preempted by federal law.

**I.    Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under this rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Navarro</u>, 250 F.3d at 732. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>See</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. <u>Robertson</u>, 749 F.2d at 534.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth

of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1998); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

## II. Eleventh Amendment Immunity

### A. Copyright Infringement Claim

Defendants maintain the copyright claim must be dismissed, because they are entitled to Eleventh Amendment Immunity.

### 1. Legal Standard

The Eleventh Amendment provides a state immunity from suit unless the state consents to be sued or Congress validly overrides the state's immunity. See Green v. Mansour, 474 U.S. 64, 68 (1985). In order to determine whether a state's immunity has been validly overridden by Congress, the court looks to two factors: (1) whether Congress expressed a clear intent to override the state's immunity and (2) whether Congress acted pursuant to a constitutional grant of authority. See Blatchford v. Native Village, 501 U.S. 775, 786 (1991); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996) (citations omitted). Congress may not validly abrogate State immunity under Article I of the Constitution. See id. However, Congress does have the ability to abrogate state sovereign immunity under the enforcement clause of the Fourteenth Amendment. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Florida Prepaid v. College Savings Bank, 527 U.S. 627, 637(1999). Under §5 of the Fourteenth Amendment, Congress has the power of enforcement but not the power to deem an action a constitutional violation. The Supreme Court outlined a test for determining

whether an act constitutes a valid exercise of Congress's powers under § 5 of the Fourteenth Amendment in City of Boerne v. Flores, 521 U.S. 507 (1997), known as the "congruence and proportionality" test. The test was further clarified in Florida Prepaid. In order "to invoke §5, [Congress] must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and it must tailor its legislative scheme to remedying or preventing such conduct." Florida Prepaid, 527 at 639.

2. Analysis

The Copyright Remedy Clarification Act ("CRCA") was passed with the intent to subject states to liability for copyright infringement. The Copyright Clarification Act, Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Pla's Exh. A at 8 (Doc. No. 13). Pursuant to the CRCA, the Copyright Act was modified to state:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State ...shall not be immune, under the Eleventh Amendment ...from suit in Federal Court...for a violation of any of the exclusive rights of a copyright owner ...
> 17 U.S.C.A. section 511(a) (1994).

Defendants contend the CRCA was not passed pursuant to a constitutional grant of power, and therefore does not validly provide a waiver of Eleventh Amendment Immunity. Specifically, Defendants argue the CRCA was improperly passed by Congress based upon Article I of the Constitution. Furthermore, Defendants argue the CRCA fails as a Fourteenth Amendment enactment because Congress did not identify a pattern of copyright infringement by states, Congress did not limit the scope of the CRCA, and Congress did not consider alternative methods through which copyright holders may obtain relief.

Plaintiff argues that the CRCA is a valid abrogation of the state's sovereign immunity, because it was enacted pursuant to Congress's enforcement power under the Fourteenth Amendment.

Neither the Supreme Court, nor the Ninth Circuit has addressed the issue of whether the CRCA is a valid abrogation of state sovereign immunity. However, the Supreme Court struck down as unconstitutional two similar "remedy clarification" acts involving intellectual property rights; the Patent and Plant Remedy Clarification Act and the Trademark Remedy

4

Clarification Act. See Florida Prepaid 527 at 627; College Savings Bank v. Florida Prepaid Postsecondary Education Expense Fund, 527 U.S. 666 (1999). In Florida Prepaid, the Supreme Court found Congress identified no pattern of patent infringement by the states and barely considered availability of state remedies thus failing to support "the proposition that Congress sought to remedy a Fourteenth Amendment violation in enacting the Patent Remedy Act." 527 U.S. at 642-47. The Court in College Savings Bank, found the right to be free from a business competitor's false advertising and the right to be secure in one's business interests did not qualify as property rights protected by the due process clause, and therefore the Trademark Remedy Clarification Act, which was enacted to remedy those deprivations, was not a valid abrogation of Eleventh Amendment immunity. 527 U.S. at 672-75.

The Fifth Circuit, the only circuit court addressing the issue, has held that the CRCA is not a proper exercise of Congress' power under §5 of the Fourteenth Amendment, and therefore is not a valid abrogation of state sovereign immunity. Chavez v. Arte Publico Press, 204 F.3d 601,608 (5th Cir. 2000). Applying the analytical framework of Florida Prepaid, the court found that Congress, in its enactment of the CRCA, failed to uncover a pattern of constitutional violations by states regarding infringement of the copyright act, failed to consider alternative methods of obtaining relief, and failed to limit the reach of the CRCA in any manner. Id. at 605 - 608.

This Court agrees that the CRCA does not constitute a valid abrogation of state sovereign immunity. Based upon the clear language of the CRCA, this Court finds Congress intended to abrogate States' immunity through its enactment. The CRCA specifically states Eleventh Amendment immunity does not apply in cases of copyright infringement. See 17 U.S.C. § 511(a). However, this Court finds the CRCA was not passed pursuant to a valid exercise of Fourteenth Amendment enforcement powers.

According to the Fifth Circuit in Chavez, the relevant inquiry for determining whether the CRCA constitutes a valid exercise of Congress's Fourteenth Amendment powers is: (1) whether there is a pattern of copyright infringement by states; (2) whether adequate state remedies for copyright infringement exist; and (3) the coverage of the legislation. Chavez, 204

F.3d at 605 (citing <u>Florida Prepaid</u>, 527 U.S. at 640 - 645. This Court concurs with the Fifth Circuit's application of the analytical framework presented in <u>Florida Prepaid</u> to the CRCA. In its enactment of the CRCA, Congress considered several factors, including incidents of past infringement by states as well as anticipation of future infringement by states. Hearing Documents for the CRCA, Pla's Exh A-C (Doc. No. 13). Anecdotal evidence was considered along with eight recent cases involving state infringement of copyrights. <u>See</u> <u>id.</u>; Pla's Exh. A at 17. Witnesses also provided examples of states refusing to negotiate over licenses, photocopying copyrighted material, and copying parts of books where permission from the copyright owner was denied. Pla's Exh. A at 23, 27; Exh. B at 29. The testimony and evidence demonstrated at most sporadic violations, not widespread violations by states. Furthermore, the committee notes there was no evidence of "any significant number of wholesale takings of copyright rights by States and State entities." Kastenmeier Testimony, Pla's Exh. B at 6. Additionally, Ralph Oman, Register of Copyrights, reported during his testimony that states are "respectful of the copyright law" and he believes they will remain so. Pla's Exh. A at 8. As noted by the Fifth Circuit in <u>Chavez</u>, the reports and testimony do not demonstrate a pattern of unremedied copyright infringement by states. 204 F.3d at 606. Instead, the testimony describes the potential for violations by states if they were not held accountable for copyright infringement. As such, there is no evidence of a pattern of copyright infringement by the states.

Additionally, the evidence demonstrates the committee minimally considered adequacy of state remedies. There are references in the testimony to the exclusivity of jurisdiction over copyright actions in Federal court. <u>See</u> e.g. Oman Statement, Exh. A at 7.; Exh. A at 18, 26; Exh. B at 9; Comments of National Music Publisher's Association, Inc. Exh. C (Part 1) at 34; Exh. C (Part 2) at 2. However, the discussion regarding available remedies focuses primarily on the inadequacy of injunctive relief. There is minimal discussion of waivers by the state and, as noted by the Fifth Circuit, no discussion of other state remedies such as breach of contract claims.

Finally, the coverage of the CRCA is not sufficiently narrow to address conduct that

violates the due process clause of the Fourteenth Amendment. The Supreme Court in <u>Florida Prepaid</u> noted that a state's negligent act does not violate the due process clause and the legislative history of the Patent Remedy Act suggested Congress enacted the legislation "in response to a handful of instances of patent infringement that do not necessarily violate the Constitution." 527 U.S. at 645-56. The Court found the provisions of the Act, which did not require any showing of intent to infringe, were not sufficiently tailored to remedy unconstitutional behavior. <u>Id.</u> at 646. The discussion in <u>Florida Prepaid</u> teaches "that a deprivation, to fit the meaning of the due process clause, must be intentional.. ." <u>Chavez</u>, 204 F.3d at 607. Like patent infringement, copyright infringement does not require a showing of intent. <u>See</u> <u>Florida Prepaid</u> 527 U.S. at 645; <u>Chavez</u>, 204 F.3d at 607. Congress failed to limit the reach of the CRCA to infringement which violates the due process clause of the Fourteenth Amendment. As such, the CRCA is not proportionate to ends legitimate under § 5 of the Fourteenth Amendment.

This Court finds the CRCA fails to meet the "congruence and proportionality" test and is not a valid exercise of Congress's power under § 5 of the Fourteenth Amendment. Accordingly, Defendant Board of Trustees and Robert A. Rauch, in his official capacity, are entitled to immunity.

**3. Individual Capacity Suit Against Defendant Rauch**

**a. Legal Standard**

State sovereign immunity extends to government officials that are sued for damages in their official capacity. <u>Cary v. White</u>, 457 U.S. 85 (1982); <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974). An individual capacity suit against a government official is one that directly attaches that individual's assets and is one that will not lead to monetary liability of the state. <u>Kentucky v. Graham</u>, 473 U.S. 159, 168 (1985). The deciding factor for ascertaining whether a suit is an official capacity suit or an individual capacity suit is not how the suit is labeled by the plaintiff, but rather the nature of the suit. <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 714 (1948). Where the suit is in fact against the individual, the individual is not automatically immune from suit by virtue of the fact that the act was undertaken in the

course of his or her employment. Id. Based on this finding, the Fourth Circuit has held that a public relations director of a state university director may be held liable for committing copyright infringement in the course of her employment. See Richard Anderson Photography v. Brown, 852 F.2d 114 (4th Cir. 1988).

**b.     Analysis**

Plaintiff alleges that Defendant Rauch and the Center copied and plagiarized Plaintiff's survey without permission. FAC ¶ 10 at 3. At the time of the alleged copyright infringement, Defendant Rauch was the acting director of the Center and oversaw the preparation of the 2004 study and report. Id. ¶ 9 at 3, ¶ 33 at 7. Plaintiff further alleges Defendant Rauch was "affiliated" with the Center for Hospitality and Tourism, but admits it "does not know whether Mr. Rauch was an employee of San Diego State University or an outside consultant." Id. ¶ 20 at 5. According to the FAC, Rauch has "actively advertised and promoted [his] involvement in and preparation of the" 2004 study and has "generated contracts for further and additional work." Id. ¶ 44, 8. Plaintiff asserts Mr. Rauch engaged in the wrongful acts in both his individual and official capacity. Id. ¶ 20 at 5.

Defendants allege the FAC demonstrates the real defendant is the Trustees, not Rauch, as Plaintiff makes no distinction between Rauch's and the Trustees's acts and Plaintiff fails to allege when, where or how Rauch engaged in a wrongful act in his individual capacity. They further argue Defendant Rauch acted purely in his official capacity, and therefore is protected from suit by the Eleventh Amendment. Specifically, Defendants argue that the actions undertaken by Defendant Rauch were during the course of his employment, for the benefit of his employer, the state university, and therefore, the suit against Defendant Rauch is in his official capacity and is disallowed. Plaintiff argues that Defendant Rauch is subject to suit because Plaintiff is suing Defendant Rauch in his individual capacity, as well as his official capacity as demonstrated by the allegations he personally committed copyright infringement.

Based upon the FAC, which includes allegations that Rauch personally engaged in the infringing behavior, the Court finds Plaintiff seeks relief from Rauch in his individual capacity as well as official capacity. Accordingly, Rauch is not entitled to sovereign immunity from the

suit seeking relief against him in his individual capacity.

**B. State Law Claims**

Plaintiff asserts state law claims against Defendants pursuant to pendant or supplemental jurisdiction. Eleventh Amendment immunity extends to claims brought against a state in federal court under supplemental jurisdiction. See Raygor v. Regents of the University of Minnesota, 534 U.S. 533, 541-41 (2002). Absent a waiver, Defendants are entitled to immunity. Plaintiff fails to address this issue entirely, much less demonstrate a waiver. Accordingly, the state law claims shall be dismissed against the Board of Trustees and Defendant Rauch in his official capacity.

**II.   Preemption of State Law Claims**

Defendants contend that Plaintiff's conversion, misappropriation, and unfair business practices claims under state law are preempted by 17 U.S.C. § 301(a).

**A.   Legal Standard**

Section 301(a) states that all legal rights stemming from copyright ownership are to be governed by federal law. The Ninth Circuit employs a two-part test to determine whether a claim is preempted by the Copyright Act. Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134 (9th Cir. 2006); Kodadek v. MTV, 152 F.3d 1209 (9th Cir. 1998); Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973 (9th Cir. 1987) (overruled on other grounds). First, preemption will only occur if the work in question falls within the scope of the Copyright Act as set forth in 17 U.S.C. §§102, 103. Id. Second, the specific state law rights claimed must be commensurate to rights that are protected by the Copyright Act in 17 U.S.C. § 301(a). Id. "A 'right which is equivalent to copyright' is one which is infringed by the mere act of reproduction, performance, distribution, or display." Balboa v. Trans Global, 218 Cal.App.3d 1327(1990)(Quoting 1 *Nimmer on Copyright* §1.01[b] at pages 1-12). If the state law contains an element that is not present in the Copyright Act which materially changes the cause of action, the state law claim will not be preempted. Balboa, 218 Cal.App.3d 1327.

**B.   Analysis**

Plaintiff asserts claims for conversion, misappropriation, and unfair business practices

under California state law. With respect to Plaintiff's conversion claim, Plaintiff alleges it is the owner of "tangible materials and intangible ideas" created by Plaintiff in connection with the work on various economic impact studies and reports, including questionnaires and work papers. FAC ¶ 58 at 10. Plaintiff further alleges Defendants "interfered with Plaintiff's right, title, and interest" to the work and their acts constitute conversion. Id. ¶¶ 59, 60 at 10. With respect to Plaintiff's misappropriation claim, Plaintiff alleges the tangible and intangible property "not expressly incorporated into the economic impact reports prepared by Plaintiff constitutes confidential, proprietary and trade secret information owned by Plaintiff" and derives it value from not being known to the public. Id. ¶¶ 64, 65 at 11. Plaintiff alleges Defendant used the confidential and proprietary information and trade secrets in preparing the 2004 report, which constitutes misappropriation. Id. ¶¶ 67, 68 at 11. With respect to Plaintiff's unfair business practices claim, Plaintiff alleges Defendants received unjust enrichment through "unlawful and unfair business practices" pursuant to California Business and Professions Code § 17200 *et seq*. Complaint ¶ 77 - 81 at 12.

Defendant argues the conversion and misappropriation claims, as alleged, fall within the purview of section 301, because they involve copyright subject matter. Specifically, Defendant argues the claims seek relief for the ideas and concepts giving rise to the 2003 survey. Defendants maintain Plaintiff's state law claims which seek relief for theft of ideas, text and concepts giving rise to the 2003 survey fall within the scope of the Copyright Act and are therefore preempted.

Because Defendant completely fails to address the unfair competition claim, the motion is denied as to that claim.

Plaintiff maintains the preemption argument is based upon a misinterpretation of the nature of its state claims and explains the misappropriation and conversion claims seek relief for the theft of the methodologies for evaluation, the questionnaires developed by Plaintiff, work papers generated while conducting the impact studies and "other intangible property and ideas" not contained in the 2003 survey. This property, Plaintiff argues, is not just ideas in the 2003 survey, but is separate and distinct property.

In reply, Defendants contend Plaintiff's assertions in the opposition attempt to bolster the FAC are not relevant to a motion brought pursuant 12(b)(6) which tests the sufficiency of the complaint, not the opposition. Defendants further argue, even with the additional information, the state law claims are still preempted. Specifically, Defendants maintain the tangible property, questionnaires and work papers are only valuable to the extent they contain intellectual property subject to copyright law. Additionally, Defendants maintain the intangible property and ideas fall under the Copyright Act.

**1. The Scope of the Copyright Act**

Upon review of the FAC, Plaintiff seeks relief for the theft of "tangible materials," including questionnaires and work papers" and "intangible ideas." FAC ¶ 58. The Court finds, the tangible property which includes, questionnaires and work papers are "tangible works of authorship" within the scope of the Copyright Act. See Del Madera Properties; see also 17 U.S.C. §§ 101, 102. Furthermore, the questionnaires and work papers were created in connection with the copyrighted economic impact studies.

Although "ideas" are excluded from copyright protection, courts have determined "ideas" contained in copyrighted material are within the scope of the Copyright Act, because the scope of the Act is broader than the protection. See U.S. Ex. Rel. Berge v. Trustees of the University of Alabama, 104 F.3d 1453 (4th Cir. 1997) (finding state claim for conversion for "ideas" contained in copyrighted doctoral thesis is preempted by the Copyright Act); Entous v. Viacom Intern., Inc., 151 F.Supp.2d 1150 (C.D.Cal. 2001); Selby v. New Line Cinema Corp., 96 F.Supp.2d 1053 (C.D.Cal. 2001); Firoozye v. Earthlink Network, 153 F.Supp.2d 1115 (N.D.Cal. 2001). The Court finds the "intangible ideas" generated in connection with the impact studies, as alleged in the complaint, are also within the scope of the Copyright Act. Accordingly, the first prong of the test is met.

**2. Equivalent to Right Protected Under the Copyright Act**

Defendants fail to identify the elements of the claims they argue are preempted, and do not articulate how or why Plaintiff's conversion, and misappropriation of trade secrets, implicate rights that are equivalent to the rights federal copyright law protects. However, the

Court has reviewed the allegations and determines the claims are equivalent to the copyright claim.

To state a claim for conversion under California law, a plaintiff must establish: (1) the plaintiff's ownership or right to possession of certain property; (2) the defendant's conversion of the property by a wrongful act or disposition of property rights; and (3) damages. <u>Oakdale Village Group v. Fong</u>, 43 Cal.App.4th 539, 543-44 (1996). While conversion is generally immune from preemption because it involves tangible property, conversion actions seeking only damages for reproduction of the property - not return of tangible property - are preempted by the Copyright Act. <u>Firoozye v. Earthlink Network</u>, 153 F.Supp.2d 1115, 1130 (N.D.Cal. 2001). As alleged, Plaintiff is not seeking the return of property, but damages for its use. The rights asserted in the conversion claim are the same as those protected by the Copyright Act. As such, the second prong of the test is met and the conversion claim is preempted.

The tort of misappropriation under California law generally involves an issue of secrecy. Plaintiff does allege Defendant used its confidential, proprietary trade secret information in preparing its report. However, Plaintiff makes no allegation that Defendant disclosed the confidential information. Accordingly, Plaintiff's misappropriation of trade secret claim lacks the "'extra element' of 'disclosure' of a secret in contravention of a specific duty to keep that information confidential." <u>Idema v. Dreamworks, Inc.</u>, 162 F.Supp.2d 1129, 1195 (C.D.Cal. 2001). As such, the misappropriation claim, as alleged, is preempted by the Copyright Act.

**3. Amending the FAC**

Plaintiff requests leave to amend its complaint to assert sufficient allegations supporting its state law claims in the event the Court finds the claims are preempted. Defendant opposes the request, arguing Plaintiff should not be given a third bite at the apple.

//

The Court finds it appropriate to dismiss the preempted state law claims without prejudice and to provide Plaintiff an opportunity to amend.

## CONCLUSION AND ORDER

**IT IS HEREBY ORDERED**:

1. Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the claims against the Board of Trustees and Defendant Rauch in his official capacity, and the conversion claim and misappropriation claim. The motion is **DENIED** as to the claims against Defendant Rauch in his individual capacity and the unfair competition claim.
2. The Board of Trustees is **DISMISSED with prejudice**.
3. All claims against Defendant Rauch in his official capacity are **DISMISSED with prejudice**.
3. The conversion claim and the misappropriation claim against Defendant Rauch in his individual capacity are **DISMISSED without prejudice.**
4. Plaintiff's request for leave to amend to cure the deficiencies of his state law claims is **GRANTED**. Plaintiff shall file a second amended complaint **no later than February 25, 2008**.

DATED: February 5, 2008

JOHN A. HOUSTON
United States District Judge